# 24-2962

## United States Court of Appeals for the Second Circuit

AMIRKHANOV YERKYN,

*Plaintiff-Appellant,*

-against-

KLEBANOV ALEXANDR YAKOVLEVICH,
KAN SERGEY VLADIMIROVICH, NATIONAL SECURITY
COMMITTEE OF THE REPUBLIC OF KAZAKHSTAN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK

## JOINT APPENDIX

KIRSCH & NIEHAUS
*Attorneys for Defendants-Appellees*
*Klebanov Alexandr Yakovlevich*
*and Kan Sergey Vladimirovich*
950 Third Avenue, Suite 1900
New York, New York 10022
(646) 415-7541
craig.tarasoff@kirschniehaus.com

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
*Attorneys for Defendant-Appellee*
*National Security Committee of*
*the Republic of Kazakhstan*
101 Park Avenue, 35th Floor
New York, New York 10178
(212) 696-6196
jpizzurro@curtis.com

SHPIGEL LAW P.C.
*Attorneys for Plaintiff-Appellant*
1599 East 15th Street, 5th Floor
Brooklyn, New York 11230
(212) 390-1913
ishpigel@iselaw.com

**3020**


ELECTRONIC PARALEGAL

i

# TABLE OF CONTENTS

Docket Entries ........................................................................................A-001

Plaintiff's Notice of Appeal, Dated October 29, 2024
(ECF Document No. 59)...................................................................A-009

Judgment Denying Motion to Amend and Granting Defendant's
Motion to Dismiss Dated September 30, 2024
(ECF Document No. 58)...................................................................A-011

Plaintiff's Supporting Memorandum and Order of
Hon. LaShann DeArcy Hall, Dated September 30, 2024
(ECF Document No. 57)...................................................................A-012

Second Amended Complaint, Dated January 12, 2024
(ECF Document No. 44-3) ..............................................................A-021

Complaint for a Civil Case, Dated March 22, 2023
(ECF Document No. 1).....................................................................A-064

First Amended Complaint for a Civil Case, Dated April 21, 2023,
with Amended to the Statement of Claim
(ECF Document No. 6)......................................................................A-085

    Exhibit 1 to the First Amended Complaint -
    Yerkin Amirkhanov's Complaint to the Prosecutor
    General of the Republic of Kazakhstan, with Translation
    (ECF Document No. 6-1) ....................................................A-103

    Exhibit 2 to the First Amended Complaint -
    Resolution of the Department of Internatl Affairs Nur-Sultan,
    Dated August 6, 2022, with Translation
    (ECF Document No. 6-2) ....................................................A-120

    Exhibit 3 to the First Amended Complaint -
    Joint Affidavit of A. Amirkhanov and Sakhaeva D.D.
    (ECF Document No. 6-3) ....................................................A-142

Exhibit 4 to the First Amended Complaint -
Letters from the National Security Committee of the Republic of
Kazakhstan, Dated April 23, 2022
(ECF Document No. 6-4) ...................................................................A-146

National Security Committee's Pre-Motion to Dismiss Letter
from Joseph D. Pizzurro to Hon. LaShann DeArcy Hall,
Dated August 4, 2023
(ECF Document No. 15)...................................................................A-192

Klebanov and Kan's Pre-Motion to Dismiss Letter from
Paul R. Niehaus to Hon. LaShann DeArcy Hall,
Dated August 15, 2023
(ECF Document No. 21)...................................................................A-195

Affidavit of Service, Sworn to August 11, 2023, with Order Directing
Plaintiff To Respond to Letter-Motion to Dismiss
(ECF Document No. 19)...................................................................A-200

Affidavit of Service, Dated August 22, 2023, with
Scheduling Order for Defendant's Motion to Dismiss
(ECF Document No. 23)...................................................................A-204

Certificate of Service of Defendants' Omnibus Motion to Dismiss
Complaint, Dated September 22, 2023
(ECF Document No. 24)...................................................................A-208

Plaintiff's Letter Motion for Extension of Time to file Opposition to the
Motion to Dismiss from Yerkyn Amirkhanov to Hon. LaShann DeArcy Hall,
Dated October 17, 2023
(ECF Document No. 25)...................................................................A-210

Notice of Defendants' Omnibus Motion to Dismiss Plaintiff's
Amended Complaint, Dated September 22, 2023
(ECF Document No. 28)...................................................................A-212

Letter from Joseph D. Pizzurro to Hon. LaShann DeArcy Hall,
Dated November 17, 2023
(ECF Document No. 30)...................................................................A-214

Exhibit A to the Letter -
E-Mail from Yerkyn Amirkhanov to Paul Niehaus, Joseph
d. Pizzurro, Kevin A. Meehan and Yerkyn Amirkhan,
Dated October 16, 2023
(ECF Document No. 30-1) ................................................................A-216

Letter from Yerkyn Amirkhan to Hon. LaShann DeArcy Hall,
Dated October 16, 2023, with E-Mail
(ECF Document No. 30-1) ................................................................A-218

Letter from Irina Shpigel to Hon. LaShann DeArcy Hall,
Dated November 17, 2023, with Certificate of Service
(ECF Document No. 31 and 33) .......................................................A-221

Plaintiff's Pre-Motion Letter for Leave to File Second Amended
Complaint from Irina Shpigel to Hon. LaShann DeArcy Hall,
Dated November 24, 2023
(ECF Document No. 34).....................................................................A-224

Scheduling Order for Motion to Amend Complaint in
*Yerkyn v. Yakovlevich, et al.*, Case No. 1:23-cv-02399-LDH-CPL,
Dated December 01, 2023.................................................................A-227

Scheduling Order Modifying the Briefing Schedule for the
Motion to Amend the Complaint in *Yerkyn v. Yakovlevich, et al.*,
Case No. 1:23-cv-02399-LDH-CPL, Dated December 28, 2023.................A-228

Letter Seeking a Brief Extension of Time to File Motion to Amend from
Irina Shpigel to Hon. LaShann DeArcy Hall, Dated February 21, 2023
(ECF Document No. 39).....................................................................A-229

Plaintiff's Notice of Motion to Amend the Complaint,
Dated January 12, 2024
(ECF Document No. 43).....................................................................A-230

APPEAL,NPROSE,PROSENEF

# U.S. District Court
## Eastern District of New York (Brooklyn)
### CIVIL DOCKET FOR CASE #: 1:23-cv-02399-LDH-CLP

| | |
|---|---|
| Yerkyn v. Yakovlevich et al | Date Filed: 03/28/2023 |
| Assigned to: Judge LaShann DeArcy Hall | Date Terminated: 09/30/2024 |
| Referred to: Magistrate Judge Cheryl L. Pollak | Jury Demand: None |
| Cause: 42:1983 Civil Rights Act | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Amirkhanov Yerkyn**                represented by    **Irina Shpigel**
Shpigel Law P.C.
250 Greenwich Street
Ste 46th Floor
New York, NY 10007
212-390-1913
Fax: 646-355-0242
Email: ishpigel@iselaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Klebanov Alexandr Yakovlevich**                represented by    **Paul R. Niehaus**
Kirsch & Niehaus PLLC
950 3rd Avenue
Suite 1900
New York, NY 10022
212-631-0223
Fax: 212-624-0223
Email: paul.niehaus@kirschniehaus.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kan Sergey Vladimirovich**                represented by    **Paul R. Niehaus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**National Security Committee of**                represented by    **Joseph Pizzurro**
**Kazakhstan**                Curtis, Mallet-Prevost, Colt & Mosle, LLP

101 Park Avenue
Ste 35 Floor
New York, NY 10178
212-696-6196
Email: jpizzurro@curtis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Meehan**
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
212-696-6197
Fax: 917-366-8835
Email: kmeehan@curtis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Henry**
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Ave
New York, NY 10178
212-696-6000
Fax: 212-697-1559
Email: mhenry@curtis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/28/2023 | 1 | COMPLAINT against National Security Committee of Kazakhstan, Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich, filed by Amirkhanov Yerkyn. (Attachments: # 1 Civil Cover Sheet) (TPL) (Entered: 04/04/2023) |
| 03/28/2023 | 2 | FILING FEE: $ 402.00 paid on 3/28/23, receipt number 100005812. Payment processed 3/29/23. (TPL) (Entered: 04/04/2023) |
| 03/28/2023 | 4 | Summons Issued as to National Security Committee of Kazakhstan, Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich. (TPL) (Entered: 04/04/2023) |
| 04/04/2023 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.** (TPL) (Entered: 04/04/2023) |

| 04/20/2023 | 5 | ORDER: Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, plaintiff shall have 90 days from the date the Complaint was filed to serve the defendantsand file proof of service with the Court. If proper service is not made upon the defendants by June 26, 2023, or if plaintiff fails to show good cause why such service has not been effected by that date, the undersigned will recommend that the District Court dismiss this action without prejudice for failure to prosecute. So Ordered by Magistrate Judge Cheryl L. Pollak on 4/20/2023. (BL) (Entered: 04/20/2023) |
|---|---|---|
| 04/21/2023 | 6 | AMENDED COMPLAINT against National Security Committee of Kazakhstan, Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich, filed by Amirkhanov Yerkyn. (Attachments: # 1 Exhibit 1, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5-15. NOTE: Exhibit 2 is after Exhibit 15.) (EG) (Entered: 04/24/2023) |
| 04/21/2023 | 7 | AMENDED Summons Issued as to National Security Committee of Kazakhstan, Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich. (ML) (Entered: 04/24/2023) |
| 05/15/2023 | 8 | Pro Se Consent to Electronic Notification by Amirkhanov Yerkyn. (TLH) (Entered: 05/17/2023) |
| 05/23/2023 | | Email Notification Test - DO NOT REPLY (ML) (Entered: 05/23/2023) |
| 06/26/2023 | 9 | Letter MOTION for Extension of Time to File *(Sixty-Day Extension of Time For Service on parties )* filed by Amirkhanov Yerkyn. (ML) (Entered: 06/27/2023) |
| 06/26/2023 | 10 | SUMMONS Returned Executed by Amirkhanov Yerkyn. Kan Sergey Vladimirovich served on 6/1/2023, answer due 6/22/2023. (JC) (Entered: 06/28/2023) |
| 06/26/2023 | 11 | SUMMONS Returned Executed by Amirkhanov Yerkyn. National Security Committee of Kazakhstan served on 6/5/2023, answer due 6/26/2023. (JC) (Entered: 06/28/2023) |
| 07/06/2023 | 12 | ORDER granting 9 Motion for Extension of Time to File: Plaintiff is to serve defendant Yakovlevich by **August 8, 2023** and file proof of service on the docket. Plaintiff is also Ordered to serve a copy of this Order on all three defendants and file proof of service on the docket by August 8, 2023. So Ordered by Magistrate Judge Cheryl L. Pollak on 7/6/2023. (BL) (Entered: 07/06/2023) |
| 08/01/2023 | 16 | SUMMONS Returned Executed by Amirkhanov Yerkyn. Klebanov Alexandr Yakovlevich served on 7/24/2023, answer due 8/14/2023. (ML) (Entered: 08/04/2023) |
| 08/01/2023 | 17 | Letter dtd. 8/01/23 to Judge Pollak from plttf. Yerkyn Amirhkanov, regarding service of the summons as to deft. Klebanov Alexandr Yakovlevich and (proofs of) service as to deft. National Security Committee of the Republic of Kazakhstan regarding the Order dtd. July 6, 2023. (See Attachments 1-6(3)). (ML) (Entered: 08/04/2023) |
| 08/04/2023 | 13 | NOTICE of Appearance by Joseph Pizzurro on behalf of National Security Committee of Kazakhstan (aty to be noticed) (Pizzurro, Joseph) (Entered: 08/04/2023) |
| 08/04/2023 | 14 | NOTICE of Appearance by Kevin Meehan on behalf of National Security Committee of Kazakhstan (aty to be noticed) (Meehan, Kevin) (Entered: 08/04/2023) |
| 08/04/2023 | 15 | Letter *Advising of Intention To File Motion To Dismiss* by National Security Committee of Kazakhstan (Pizzurro, Joseph) (Entered: 08/04/2023) |
| 08/10/2023 | | ORDER: On or before August 15, 2023, pro se Plaintiff is directed to file a letter either opposing both Defendant National Security Committee of Kazakhstan's request 15 for pre-motion conference or advising the Court that it does not intend to oppose the |

| | | |
|---|---|---|
| | | motion. Any letter response must not exceed three (3) pages and must include a summary of the arguments to be set forth in opposition and contain sufficient legal authority. Defense counsel is respectfully directed to mail a copy of this order to pro se Plaintiff and file proof of service via ECF. Ordered by Judge LaShann DeArcy Hall on 8/10/2023. (CG) (Entered: 08/10/2023) |
| 08/10/2023 | 18 | Letter dtd. 8/07/23 to Judge Pollak from pltff. Yerkyn Amirhkanov, informing re attempt of service of the summons upon deft. Kan Sergey in compliance with the court's 7/6/23 order in the above action. Further advising he sent the document to his personal emails. (w/attachments (1-2) of service). (ML) (Entered: 08/11/2023) |
| 08/11/2023 | 19 | AFFIDAVIT of Service for Court's August 10, 2023 Order served on Plaintiff Amirkhanov Yerkyn on August 10, 2023, filed by National Security Committee of Kazakhstan. (Pizzurro, Joseph) (Entered: 08/11/2023) |
| 08/14/2023 | 20 | NOTICE of Appearance by Paul R. Niehaus on behalf of Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich (aty to be noticed) (Niehaus, Paul) (Entered: 08/14/2023) |
| 08/15/2023 | 21 | Letter *Requesting Pre-Motion Conference* by Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich (Niehaus, Paul) (Entered: 08/15/2023) |
| 08/16/2023 | 22 | Letter dtd. 8/15/23 from Pltff. Yerkyn Amirhanov to Judge DeArcy Hall, in opposition to deft. NSC's 15 submission advising of their intent of filing their motion of dismissal. (ML) (Entered: 08/16/2023) |
| 08/22/2023 | | SCHEDULING ORDER: Defendants' requests for a pre-motion conference 15 and 21 are DENIED. The parties shall brief Defendants' motion to dismiss in accordance with this Court's Individual Rules and Practices. Defendants shall serve Plaintiff with an omnibus motion to dismiss on or before September 22, 2023. Plaintiff shall serve Defendants with any opposition papers on or before October 20, 2023. Defendants shall serve any reply on or before November 17, 2023. The opening brief and opposition brief shall each be no more than 30 pages, and the reply shall be no more than 15 pages. As a courtesy, unless objected to by the parties, the Court asks that the parties file the motion only once it is fully briefed. Defendants shall provide the Court with a courtesy copy of the filed, stamped, fully briefed motion, within two business days of filing. Memoranda of law and courtesy copies shall comply with this Court's Individual Rules and Practices. Defense counsel is respectfully directed to mail a copy of this order to pro se Plaintiff and file proof of service via ECF. Ordered by Judge LaShann DeArcy Hall on 8/22/2023. (CG) (Entered: 08/22/2023) |
| 08/23/2023 | 23 | AFFIDAVIT of Service for Court's August 22, 2023 Scheduling Order served on Plaintiff Amirkhanov Yerkyn on August 23, 2023, filed by National Security Committee of Kazakhstan. (Pizzurro, Joseph) (Entered: 08/23/2023) |
| 09/22/2023 | 24 | CERTIFICATE OF SERVICE by National Security Committee of Kazakhstan *Regarding Service of Notice of Defendants' Omnibus Motion To Dismiss; Memorandum of Law In Support of Motion with Exhibit A; Unpublished Cases Cited in the Memorandum; and Cover Letter* (Meehan, Kevin) (Entered: 09/22/2023) |
| 10/18/2023 | 25 | Letter MOTION for Extension of Time to File Response/Reply *(Until 12/20/23, currently due on 10/20/23 And To Obtain Counsel), filed* by Amirkhanov Yerkyn. (MLR) (Entered: 10/18/2023) |
| | | |

| 10/19/2023 | 27 | AFFIDAVIT of Service for Letter Motion Requesting Extension of Time to file Reply/Response 25 , served on attorneys Paul R. Niehaus/Joseph Pizzurro on 10/18/23, filed by Amirkhanov Yerkyn. (MLR) (Entered: 10/23/2023) |
| --- | --- | --- |
| 10/20/2023 | 26 | RESPONSE in Opposition re 25 Letter MOTION for Extension of Time to File Response/Reply *(Until 12/20/23, currently due on 10/20/23 And To Obtain Counsel), filed* filed by Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich. (Niehaus, Paul) (Entered: 10/20/2023) |
| 11/17/2023 | 28 | Fully Briefed MOTION to Dismiss *Filed Jointly by Individual Defendants Yakovlevich and Vladimorovich and* by National Security Committee of Kazakhstan. (Pizzurro, Joseph) (Entered: 11/17/2023) |
| 11/17/2023 | 29 | MEMORANDUM in Support re 28 Fully Briefed MOTION to Dismiss *Filed Jointly by Individual Defendants Yakovlevich and Vladimorovich and Defendant National Security Committee of The Republic of Kazakhstan* filed by National Security Committee of Kazakhstan. (Attachments: # 1 Exhibit -A) (Pizzurro, Joseph) (Entered: 11/17/2023) |
| 11/17/2023 | 30 | REPLY in Support re 28 Fully Briefed MOTION to Dismiss *Filed Jointly by Individual Defendants Yakovlevich and Vladimorovich and Defendant National Security Committee of The Republic of Kazakhstan* filed by National Security Committee of Kazakhstan. (Attachments: # 1 Exhibit -A) (Pizzurro, Joseph) (Entered: 11/17/2023) |
| 11/17/2023 | 31 | CERTIFICATE OF SERVICE by National Security Committee of Kazakhstan re 30 Reply in Support, (Meehan, Kevin) (Entered: 11/17/2023) |
| 11/17/2023 | 32 | NOTICE of Appearance by Irina Shpigel on behalf of Amirkhanov Yerkyn (aty to be noticed) (Shpigel, Irina) (Entered: 11/17/2023) |
| 11/17/2023 | 33 | Letter MOTION to Amend/Correct/Supplement 6 Amended Complaint, *and conduct jurisdictional discovery* by Amirkhanov Yerkyn. (Shpigel, Irina) (Entered: 11/17/2023) |
| 11/24/2023 | 34 | Letter MOTION to Amend/Correct/Supplement 1 Complaint, 6 Amended Complaint, *and for Jurisdictional Discovery* by Amirkhanov Yerkyn. (Shpigel, Irina) (Entered: 11/24/2023) |
| 11/29/2023 | 35 | Letter *In Response to Plaintiff's Pre-Motion Letter Requesting Leave To File Motions To Further Amend Complaint and To Take Jurisdictional Discovery* by National Security Committee of Kazakhstan (Pizzurro, Joseph) (Entered: 11/29/2023) |
| 12/01/2023 | | ORDER: Plaintiff is directed to file his motion to amend the complaint on or before December 29, 2023. Plaintiff is further directed to provide both a red-lined and a clean version of the proposed amended complaint as an attachment to the motion. Defendants response, if any, shall be filed by January 26, 2024. Plaintiff shall file any reply on or before February 9, 2024. The opening brief and opposition brief shall each be no more than 25 pages, and the reply shall be no more than 10 pages. As a courtesy, unless objected to by the parties, the Court asks that the parties file the motion only once it is fully briefed. Plaintiff shall provide the Court with a courtesy copy of the filed, stamped, fully briefed motion, within two business days of filing. Memoranda of law and courtesy copies shall comply with this Court's Individual Rules and Practices. Ordered by Judge LaShann DeArcy Hall on 12/1/2023. (CG) (Entered: 12/01/2023) |
| 12/01/2023 | 36 | RESPONSE to Motion re 33 Letter MOTION to Amend/Correct/Supplement 6 Amended Complaint, *and conduct jurisdictional discovery*, 34 Letter MOTION to Amend/Correct/Supplement 1 Complaint, 6 Amended Complaint, *and for* |

| | | |
|---|---|---|
| | | *Jurisdictional Discovery* filed by Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich. (Niehaus, Paul) (Entered: 12/01/2023) |
| 12/26/2023 | 37 | Letter MOTION for Extension of Time to File *Motion to Amend Complaint* by Amirkhanov Yerkyn. (Attachments: # 1 Proposed Order) (Shpigel, Irina) (Entered: 12/26/2023) |
| 12/27/2023 | 38 | RESPONSE to Motion re 37 Letter MOTION for Extension of Time to File *Motion to Amend Complaint* filed by Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich. (Niehaus, Paul) (Entered: 12/27/2023) |
| 12/28/2023 | | ORDER: Plaintiff's motion 37 to extend the deadline to file his motion to amend his complaint is GRANTED. Plaintiff is directed to file his motion to amend the complaint on or before January 12, 2024. Plaintiff is further directed to provide both a red-lined and a clean version of the proposed amended complaint as an attachment to the motion. Defendants' opposition, if any, shall be filed on or before February 9, 2024. Plaintiff shall file any reply on or before February 23, 2024. The opening brief and opposition brief shall each be no more than 25 pages, and the reply shall be no more than 10 pages. As a courtesy, unless objected to by the parties, the Court asks that the parties file the motion only once it is fully briefed. Plaintiff shall provide the Court with a courtesy copy of the filed, stamped, fully briefed motion, within two business days of filing. Memoranda of law and courtesy copies shall comply with this Court's Individual Rules and Practices. Ordered by Judge LaShann DeArcy Hall on 12/28/2023. (MFW) (Entered: 12/28/2023) |
| 02/21/2024 | 39 | Letter MOTION for Extension of Time to File Response/Reply *to Defendants Opposition of Plaintiff's Motion to Amend* by Amirkhanov Yerkyn. (Shpigel, Irina) (Entered: 02/21/2024) |
| 02/21/2024 | 40 | RESPONSE to Motion re 39 Letter MOTION for Extension of Time to File Response/Reply *to Defendants Opposition of Plaintiff's Motion to Amend* filed by Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich. (Niehaus, Paul) (Entered: 02/21/2024) |
| 02/21/2024 | 41 | RESPONSE to Motion re 39 Letter MOTION for Extension of Time to File Response/Reply *to Defendants Opposition of Plaintiff's Motion to Amend* filed by National Security Committee of Kazakhstan. (Pizzurro, Joseph) (Entered: 02/21/2024) |
| 02/28/2024 | 42 | MOTION for Leave to File Excess Pages *of the Omnibus Reply, and leave to submit a late Reply for good cause* by Amirkhanov Yerkyn. (Attachments: # 1 Exhibit 1- Translation received on February 27, 2024) (Shpigel, Irina) (Entered: 02/28/2024) |
| 02/28/2024 | 43 | Fully Briefed MOTION to Amend/Correct/Supplement *the First Amended Complaint* by Amirkhanov Yerkyn. (Shpigel, Irina) (Entered: 02/28/2024) |
| 02/28/2024 | 44 | Fully Briefed MOTION to Amend/Correct/Supplement by Amirkhanov Yerkyn. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Irina Shpigel, # 3 Exhibit A, # 4 Exhibit B, # 5 Memorandum in Opposition NSC Opposition to Motion to Amend, # 6 Exhibit 1, # 7 Exhibit 2, # 8 Memorandum in Opposition Klebanov and Kan's Opposition, # 9 Exhibit A, # 10 Exhibit B, # 11 Exhibit C, # 12 Exhibit D, # 13 Exhibit E, # 14 Exhibit F, # 15 Exhibit G, # 16 Exhibit H, # 17 Exhibit I, # 18 Memorandum in Support Memorandum in Reply, # 19 Exhibit 1- Certified Translation of Witness Testimony, # 20 Exhibit Report on Kazakhstan's Judicial System, # 21 Exhibit Diagrams of Defendants' Nexus to the U.S. and Good Faith Basis for |

| | | Jurisdictional Discovery) (Shpigel, Irina) (Entered: 02/28/2024) |
|---|---|---|
| 02/29/2024 | 45 | MEMORANDUM in Opposition re 43 Fully Briefed MOTION to Amend/Correct/Supplement *the First Amended Complaint* filed by National Security Committee of Kazakhstan. (Pizzurro, Joseph) (Entered: 02/29/2024) |
| 02/29/2024 | 46 | Letter *Regarding Plaintiff's Failure To Comply with Court's December 28, 2023 Order* by National Security Committee of Kazakhstan (Pizzurro, Joseph) (Entered: 02/29/2024) |
| 02/29/2024 | 47 | NOTICE of Appearance by Matthew Henry on behalf of National Security Committee of Kazakhstan (aty to be noticed) (Henry, Matthew) (Entered: 02/29/2024) |
| 02/29/2024 | 48 | RESPONSE in Opposition re 43 Fully Briefed MOTION to Amend/Correct/Supplement *the First Amended Complaint Declaration of Paul R. Niehaus dated February 9, 2024, omitted from motion papers filed by Plaintiff*, filed by Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich. (Niehaus, Paul) (Entered: 02/29/2024) |
| 02/29/2024 | 49 | Letter MOTION to Strike 44 Fully Briefed MOTION to Amend/Correct/Supplement *; Request to Strike docket entry 44.18, the Reply Brief of Plaintiff* by Kan Sergey Vladimirovich, Klebanov Alexandr Yakovlevich. (Niehaus, Paul) (Entered: 02/29/2024) |
| 03/01/2024 | 50 | REPLY to Response to Motion re 44 Fully Briefed MOTION to Amend/Correct/Supplement *Declaration of Irina Shpigel* filed by Amirkhanov Yerkyn. (Shpigel, Irina) (Entered: 03/01/2024) |
| 03/01/2024 | 51 | Letter MOTION to Seal Document *filed at ECF 44-21 and in partial response to Defendants letters at ECF 46 and 49* by Amirkhanov Yerkyn. (Shpigel, Irina) (Entered: 03/01/2024) |
| 03/07/2024 | 52 | Letter MOTION for Leave to File Document *-Sur-Reply In Opposition to Plaintiff's Motion To Amend First Amended Complaint-* by National Security Committee of Kazakhstan. (Attachments: # 1 Exhibit -Proposed Sur-Reply) (Pizzurro, Joseph) (Entered: 03/07/2024) |
| 03/07/2024 | 53 | RESPONSE to Motion re 49 Letter MOTION to Strike 44 Fully Briefed MOTION to Amend/Correct/Supplement *; Request to Strike docket entry 44.18, the Reply Brief of Plaintiff* filed by Amirkhanov Yerkyn. (Shpigel, Irina) (Entered: 03/07/2024) |
| 03/07/2024 | 54 | Letter *in Response to NSC's letter requesting to strike or alternatively file a Sur-Reply at ECF 46* by Amirkhanov Yerkyn (Shpigel, Irina) (Entered: 03/07/2024) |
| 03/14/2024 | 55 | RESPONSE in Opposition re 52 Letter MOTION for Leave to File Document *-Sur-Reply In Opposition to Plaintiff's Motion To Amend First Amended Complaint-* filed by Amirkhanov Yerkyn. (Attachments: # 1 Exhibit Bilalov v. Gref opinion, # 2 Exhibit Yegiazaryan v. Smagin opinion) (Shpigel, Irina) (Entered: 03/14/2024) |
| 03/18/2024 | 56 | REPLY to Response to Motion re 52 Letter MOTION for Leave to File Document *-Sur-Reply In Opposition to Plaintiff's Motion To Amend First Amended Complaint-* filed by National Security Committee of Kazakhstan. (Pizzurro, Joseph) (Entered: 03/18/2024) |
| 09/30/2024 | 57 | MEMORANDUM AND ORDER: For the reasons stated in the attached memorandum and order, Defendants' motion to dismiss 28 the complaint for lack of subject matter jurisdiction is GRANTED. Plaintiff's motions to amend the complaint 33 , 34 , and 44 are DENIED. The Clerk of Court is respectfully directed to enter judgment and close |

| | | the case. Ordered by Judge LaShann DeArcy Hall on 9/30/2024. (CG) (Entered: 09/30/2024) |
|---|---|---|
| 09/30/2024 | | ORDER: In light of the Court's memorandum and order 57 , the motion for an extension of time 25 and 39 , the motion to amend 43 , the motion to strike 49 , and the motion to file a sur-reply 52 are DENIED as moot. The motion to file excess pages 42 and the motion to seal 51 are GRANTED. Ordered by Judge LaShann DeArcy Hall on 9/30/2024. (CG) (Entered: 09/30/2024) |
| 09/30/2024 | 58 | CLERK'S JUDGMENT: that Plaintiff's motion to amend his First Amended Complaint is denied; and that Defendants' motions to dismiss Plaintiff's First Amended Complaint are granted without prejudice to renew. Signed by Deputy Clerk, Jalitza Poveda, on behalf of Clerk of Court, Brenna B. Mahoney, on 9/30/2024. (copy of appeals packet and judgment mailed to pro se). (JP) (Entered: 09/30/2024) |
| 10/29/2024 | 59 | NOTICE OF APPEAL as to Order on Motion for Extension of Time to File Response/Reply,, Order on Motion for Leave to File Excess Pages,, Order on Motion to Amend/Correct/Supplement,, Order on Motion to Strike,, Order on Motion to Seal Document,,,,, 58 Clerk's Judgment, 57 Order on Motion to Amend/Correct/Supplement,,,, Order on Motion to Dismiss,,, by Amirkhanov Yerkyn. Filing fee $ 605, receipt number ANYEDC-18439556. Appeal Record due by 11/12/2024. (Shpigel, Irina) (Entered: 10/29/2024) |
| 10/29/2024 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 59 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 10/29/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/29/2024 13:40:42 | | | |
| PACER Login: | IrinaShpigel | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:23-cv-02399-LDH-CLP |
| Billable Pages: | 7 | Cost: | 0.70 |

**[A-9]**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

AMIRKHANOV YERKYN,

                                Plaintiff,                                    Docket #: 23-Civ-2399(LDH)(CLP)

    - against-

KLEBANOV ALEXANDR YAKOVLEVICH, KAN SERGEY
VLADIMIROVICH, and THE NATIONAL SECURITY
COMMITTEE OF THE REPUBLIC OF KAZAKHSTAN,

                                Defendants.

**NOTICE OF APPEAL**

    Notice is hereby given that Plaintiff, Yerkyn Amirkhanov, by and through undersigned
counsel, hereby appeals to the United States Court of Appeals for the Second Circuit from the
Memorandum and Order entered on September 30th, 2024, denying Plaintiff's motion to Amend
the First Amended Complaint and; granting Defendants' motion to dismiss.

    Dated: Brooklyn, New York
            October 29th, 2024

                                                            */s/Irina Shpigel*
                                                            Irina Shpigel

                                                            Shpigel Law, P.C.
                                                            *Attorneys for Plaintiff- Appellant*
                                                            1599 East 15th Street, 5th Fl
                                                            Brooklyn, New York 11229
                                                            E-mail: ishpigel@iselaw.com
                                                            T 212-390-1913
                                                            F 646-355-0242

Case 1:23-cv-02399-LDH-CLP     Document 59     Filed 10/29/24     Page 2 of 2 PageID #:
1015

## CERTIFICATE OF SERVICE

I hereby certify that on October 29th, 2024, I caused the foregoing Notice of Appeal to be served via the

Electronic Case Filing (ECF) system in the United States District Court for the Eastern District of New

York, on all parties registered for CM/ECF in the above captioned matter.

*/s/Irina Shpigel*
Irina Shpigel

Shpigel Law, P.C.
*Attorneys for Plaintiff- Appellant*
1599 East 15th Street, 5th Fl
Brooklyn, New York 11229
E-mail: ishpigel@iselaw.com
T 212-390-1913
F 646-355-0242

**[A-11]**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
AMIRKHANOV YERKYN,

                              Plaintiff,                JUDGMENT

      v.                                       23-CV-02399 (LDH) (CLP)

KLEBANOV ALEXANDR YAKOVLEVICH,
KAN SERGEY VLADIMIROVICH, and
NATIONAL SECURITY COMMITTEE OF
KAZAKHSTAN,

                              Defendants.
-------------------------------------------------------------X

        A Memorandum and Order of the Honorable LaShann DeArcy Hall, United States District

Judge, having been filed on September 30, 2024, denying Plaintiff's motion to amend his First

Amended Complaint; granting Defendants' motions to dismiss Plaintiff's First Amended

Complaint without prejudice to renew.; it is

        ORDERED and ADJUDGED that Plaintiff's motion to amend his First Amended

Complaint is denied; and that Defendants' motions to dismiss Plaintiff's First Amended

Complaint are granted without prejudice to renew.

Dated: Brooklyn, New York                Brenna B. Mahoney
       September 30, 2024             Clerk of Court

                                  By:     */s/Jalitza Poveda*
                                         Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMIRKHANOV YERKYN,

                    Plaintiff,

        -against-

KLEBANOV ALEXANDR YAKOVLEVICH,
KAN SERGEY VLADIMIROVICH, and
NATIONAL SECURITY COMMITTEE OF
KAZAKHSTAN,

                    Defendants.

---

**MEMORANDUM AND ORDER**
23-CV-02399 (LDH) (CLP)

Amirkhanov Yerkyn ("Plaintiff") brings the instant action against Defendants Klebanov
Alexandr Yakovlevich, Kan Sergey Vladimirovich ("Individual Defendants"), and the National
Security Committee of Kazakhstan ("NSC"), alleging violations of the Racketeer Influenced and
Corrupt Organizations Act ("RICO"), 18 U.S.C.§1962(c) and 18 U.S.C. § 1964(d), the Alien
Torts Statute ("ATS"),28 U.S.C.§ 1350), and state law claims of unjust enrichment and
conversion.  Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(1)–(2), (5), to
dismiss the complaint in its entirety.  Plaintiff moves, pursuant to Federal Rule of Civil
Procedure 15(a) for leave to file a second amended complaint.

## PROCEDURAL HISTORY

On March 28, 2023, Plaintiff filed a pro se complaint, (Compl., ECF No. 1), which he
amended on April 21, 2023, (Am. Compl., ECF No. 6).  On November 17, 2023, Defendants
filed a motion to dismiss the amended complaint.  (Def.'s Mot. to Dismiss, ECF No. 28.)

1

Shortly thereafter, Plaintiff obtained counsel.  Rather than respond to Defendants' motion to dismiss, Plaintiff requested leave to file an amended complaint.  (ECF Nos. 33, 34.)  On December 1, 2023, the Court set a briefing schedule to consider Plaintiff's motion for leave to file a second amended complaint.

## BACKGROUND[1]

Plaintiff Amirkhanov Yerkyn and his wife Artambayeva Yerkin,[2] along with Individual Defendants, were the sole shareholders of Central Asian Power-Energy Company ("CAPEC"), a Kazakhstan energy company.  (Proposed Second Amended Complaint ("Proposed SAC") ¶¶ 31, 33, ECF No. 44-3.)  Plaintiff and Individual Defendants were appointed as directors of CAPEC.  (Id. ¶ 36.)  In 2004, CAPEC acquired Eximbank, and Plaintiff served as the Chairman of the Management Board of Eximbank until 2009.  (Id. ¶¶ 41, 42.)  Eximbank maintained correspondent accounts at intermediary banks in New York City, which was chosen by Eximbank due to the New York Federal Reserve's role in global finance.  (Id. ¶¶ 43, 44.)

In 2009, Individual Defendants began transferring funds held in Eximbank's New York Federal Reserve account to Eximbank's correspondent accounts to pay back loans from various billionaires used to bribe public officials.  (Id. ¶¶ 51, 55.)  Once the funds were in the correspondent accounts, Individual Defendants moved the funds from these correspondent accounts to accounts owned by Forte Marketing LLC, a U.S. company, and Lodestar Holding

---

[1] The following facts are taken from the proposed Second Amended Complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

[2] Plaintiff's wife was not a plaintiff in the original complaint.  She is a proposed plaintiff in the Proposed SAC, but she will be referred to as Plaintiff's wife for ease of reference.

Limited, a company registered in Dubai and owned by Klebanov. (*Id.* ¶¶ 19, 51, 65.) Each of these transactions was disguised to look like a legitimate loan issued by Eximbank. (*Id.* ¶ 55.)

In July and August 2009, for example, Klebanov transferred $45.8 million to accounts controlled by him and by CAPEC in order to repay funds owed to Karim Massimov, the former prime minister of Kazakhstan who is currently serving a prison sentence for committing abuses of power. (*Id.* ¶ 21, 57–63.) Klebanov also transferred $25 million from Eximbank to a company controlled by him to repay a loan made to Forte Marketing LLC by Vasily Anisimov, a Russian businessman. (*Id.* ¶¶ 68–71.) This $25 million transfer was financed through a series of bonds, which began coming due in 2018. (*Id.* ¶¶ 71–74.)

By July 2017, Eximbank owed more than $116 million, and almost 80% of its loan portfolio was non-performing. (*Id.* ¶¶ 76–77.) It "became obvious" at that time that Eximbank was unable to fulfill its obligations to creditors. (*Id.* ¶ 76.) To cover up the embezzlement from Eximbank, Individual Defendants and Massimov, the head the of the NSC at the time, conspired to falsely incriminate Plaintiff and force him to assume responsibility for Eximbank's problems. (*Id.* ¶¶ 80–86.) On May 3, 2018, Plaintiff was arrested on false bribery charges, and for the next three months, he was incarcerated, interrogated, and "psychologically tortured". (*Id.* ¶¶ 88–89.) On July 23, 2018, NSC officials "forced" Plaintiff to sign agreements that transferred his shares in CAPEC to Individual Defendants, required him to assume all obligations of the now insolvent Eximbank in exchange for his release from custody, and required him to waive claims on loans and payments made for payments in favor of Lodestar Holding Limited. (*Id.* ¶¶ 99–110.) Individual Defendants also colluded with NSC to bring false criminal claims against Plaintiff's wife and coerced her into transferring her interest in CAPEC. (*Id.* ¶¶ 115–19.)

On August 27, 2018, by the decree of the National Bank of the Republic of Kazakhstan (NB RK), the Interim Administration was appointed to oversee Eximbank and Individual Defendants announced resigned from the Board of Directors of the Bank. (*Id.* ¶ 78.)

## STANDARD OF REVIEW

Rule 15 of the Federal Rules of Civil Procedure provides that when a party seeks to amend their pleading beyond the time period allowed for an amendment as a matter of course, that party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Thus, absent the opposing party's consent, the Rule requires a party seeking to amend its pleadings to obtain permission from the court before doing so. *Id.* Rule 15 expresses a strong presumption in favor of allowing amendment, providing that "[t]he court should freely give leave when justice so requires." *Id.*

The letter and spirit of Rule 15(a)(2) guide the courts in the exercise of their broad discretion in deciding a motion to amend, and thus "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) ); a*ccord McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007). The party opposing amendment bears the burden of demonstrating good reason to deny the motion. *Speedfit, LLC v. Woodway USA, Inc.*, No. 13 CV 1276, 2015 WL 6143697, at * A motion to amend is properly denied where the proposed amendment would be futile as a matter of law; futility is established where "the proposed amended complaint would fail to state a claim on which relief could be granted." *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir.

2002) ). An amendment is also futile where the Court would lack jurisdiction to determine the proposed claim. *See* Fed. R. Civ. P. 12(b)(1); *Smith v. Everson*, No. 06 CV 0791, 2008 WL 818512, at *4 (E.D.N.Y. Mar. 21, 2008).

"The court applies the same standard as that for a motion to dismiss under Rule 12(b)(6) [or 12(b)(1)] when deciding whether to grant leave to amend." *Konrad v. Epley*, No. 12 CV 4021, 2013 WL 6200009, at *20 (E.D.N.Y. Nov. 25, 2013); *accord Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d at 88. As such, a proposed amendment is futile if it does not "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). The proposed amendment must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In determining whether the proposed amended pleading would be futile, this Court must accept all well-pleaded allegations in the complaint as true and must construe the complaint liberally in the light most favorable to the plaintiff. *Konrad*, 2013 WL 6200009, at *20.

## DISCUSSION

Defendants argue that the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because the court lacks subject matter jurisdiction. (Def.'s Mot. to Dismiss at 23–25, ECF No. 29.) When a party moves for dismissal under Rule 12(b)(1) and on other grounds, courts consider the Rule 12(b)(1) challenge first. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). Plaintiff bears the burden of asserting subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

Plaintiff's claimed basis for subject matter jurisdiction in the amended complaint is diversity of citizenship. (Am. Compl. at 3.) Diversity jurisdiction is properly invoked when a

plaintiff presents a claim "between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006) (citing 28 U.S.C. § 1332). However, "the fact that alien parties [are] present on both sides [will] destroy complete diversity." *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980). That is the case even where, as here, a permanent resident alien sues a non-resident alien. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 125 (2d Cir. 2020) ("We hold that 28 U.S.C. § 1332(a)(2) does not confer diversity jurisdiction where a permanent resident alien sues a non-resident alien.")

In the instant case, there is no dispute as to whether the jurisdictional amount in controversy has been met. Rather, Defendants contend that Plaintiff cannot establish complete diversity because there are aliens on both sides of the action. (Def.'s Mot. to Dismiss at 24.) The Court agrees. Plaintiff is a Kazakh citizen living in New York. (Am. Compl. at 2.) Plaintiff brought this suit against Individual Defendants, who are also Kazakh citizens, and NSC, which is an agency of the Kazakh government. (*Id.* at 2.) Because Plaintiff and at least one defendant is an alien, the Court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

In an effort to establish the Court's jurisdiction on alternative grounds, Plaintiff asserts two additional bases for the Court's subject matter jurisdiction in his proposed SAC: the Alien Tort Statue, 28 U.S.C. § 1350, and the civil RICO statute, 18 U.S.C. § 1964(c). (Proposed SAC ¶ 23.) However, neither statute grants the Court jurisdiction.

The Alien Tort Statute confers district courts with "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Critically, "the presumption against extraterritoriality applies to claims under the ATS," and "relief for violations of the law of nations occurring outside the

United States is barred." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013). Here, each allegation in support of Plaintiff's Alien Tort Statute claim in the proposed SAC stems from Plaintiff's alleged detention and in-custody treatment by the NSC—all of which occurred in Kazakhstan. (*See* Proposed SAC ¶¶ 88–89, 99–110, 115–19.) "[I]f all the relevant conduct occurred abroad, that is simply the end of the matter under *Kiobel*." *Balintulo v. Daimler AG*, 727 F.3d 174, 190 (2d Cir. 2013).

Plaintiff's reliance on the civil RICO statute fares no better. "[A] private RICO plaintiff . . . must allege and prove a domestic injury to its business or property" for a court to have jurisdiction over the claim. *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 346 (2016). "[I]n assessing whether there is a domestic injury, courts should engage in a case-specific analysis that looks to the circumstances surrounding the injury." *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023). And, "[i]f those circumstances sufficiently ground the injury in the United States, such that it is clear the injury arose domestically, then the plaintiff has alleged a domestic injury." *Id.* (finding a domestic injury where an alleged RICO scheme thwarted the plaintiff's rights granted to him by a judgment he obtained against the defendant in California).

In *Bilalov*, for example, the district court dismissed RICO claims that failed to allege a domestic injury. 2022 WL 4225968 at *1. There, the plaintiff, a Russian citizen, sued a Russian state-affiliated bank, its Chairman Herman Gref, and its U.S. affiliate, alleging that they had conspired to seize his shares in a valuable company. *Id.* The plaintiff alleged that at meetings in Russia, Gref and an associate of his had threatened "violence, bodily harm, or death," if the plaintiff did not transfer all of his shares of the company to Gref and his affiliates. Id. at *2. The plaintiff complied, and alleged that assets belonging to him were laundered through the United States. The court dismissed the RICO claims, finding that the plaintiff could

7

not allege a domestic injury, as all injuries occurred in Russia. *Id.* Ultimately, the court reasoned that "a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one." *Id.* (citing *Bascunan v. Elsaca*, 874 F.3d 806, 819 (2d Cir. 2017)). So too here. Plaintiff alleges that Individual Defendants, in concert with the NSC and Massimov, forced him and his wife to transfer their shares of CAPEC in exchange for the debt obligations of Eximbank, two companies located in Kazakhstan, and to relinquish his right to bring a future suit related to that debt obligation. (*Id.* ¶¶ 115–19.) Plaintiff was in Kazakhstan when the shares were transferred. (*Id.*) These facts support the inference that Plaintiff suffered a foreign rather than domestic injury. And, as the court in *Bilav* found, Plaintiff's allegations that Individual Defendants committed acts of fraud in the United States to conceal their scheme do not transform Plaintiff's injury a domestic one.[3] *Cf. Antares Aircraft, L.P.*, 999 F.2d at 36 (holding that "the fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone," does not constitute a "direct effect in the United States" for purposes of FSIA commercial activity exception).

---

[3] Plaintiff also argues that 18 U.S.C § 201 prohibits the bribery of foreign officials establishes the Court's jurisdiction over his RICO claims because violations of § 201 are "subject to extraterritorial federal jurisdiction." (Pl.'s Reply at 14.) Thus, Plaintiff argues, the Court has jurisdiction over Defendants "since they are alleged to be involved in the conspiracy, bribery, and embezzlement." (*Id.*) Even if § 201 has extraterritorial effect, the Supreme Court has already foreclosed Plaintiff's argument. The question whether a civil RICO claim alleges a domestic injury does not turn on whether the underlying predicate statutes alleged to have been violated have extraterritorial application. *RJR Nabisco, Inc.*, 579 U.S. at 350 (rejecting the argument that "a RICO plaintiff may sue for foreign injury that was caused by the violation of a predicate statute that applies extraterritorially," because "[i]t is not enough to say that a private right of action must reach abroad because the underlying law governs conduct in foreign countries"). Instead, "Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property," *id.* at 354, which is "a context-specific inquiry that turns largely on the particular facts alleged in a complaint." *Yegiazaryan*, 599 U.S. at 543.

Plaintiff's claims against Defendants in the proposed SAC are therefore futile. Because the Court lacks subject matter jurisdiction, it must dismiss Plaintiff's complaint without considering Defendants' motions to dismiss for failure to state a claim. *See Rhulen Agency, Inc.*, 896 F.2d at 678 ("[I]f [a court] must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend his First Amened Complaint is DENIED. Defendants' motions to dismiss Plaintiff's First Amended Complaint are GRANTED without prejudice to renew.

SO ORDERED.

Dated: Brooklyn, New York
     September 30, 2024

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

Irina Shpigel
Shpigel Law, P.C.
*Attorneys for Plaintiff*
1599 East 15th St, 5th Floor
Brooklyn, New York 11230
E-mail: ishpigel@iselaw.com
T 212-390-1913
F 646-355-0242

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YERKYN AMIRKHANOV, an individual, and GULNARA ARTAMBAYEVA, an individual, | Civil Action #: 23-CV 2399(LDH)(CLP) |
| Plaintiff, | |
| - against- | **[PROPOSED] SECOND AMENDED COMPLAINT** |
| ALEXANDR KLEBANOV, SERGEY KAN, LODESTAR HOLDING LIMITED, FORTE MARKETING LLC, KARIM MASSIMOV, THE NATIONAL SECURITY COMMITTEE OF THE REPUBLIC OF KAZAKHSTAN, and JOHN DOES 1-25. | |
| Defendants. | |

Plaintiffs, YERKYN AMIRKHANOV (hereinafter "Plaintiff" or "Amirkhanov"), AND GULNARA ARTAMBAYEVA (hereinafter "Artambayeva") by and through undersigned counsel, alleges upon information and belief the following against Defendants ALEXANDR KLEBANOV (hereinafter "Klebanov"), SERGEY KAN (hereinafter referred to as "Kan"), LODESTAR HOLDING LIMITED (hereinafter "Lodestar"), FORTE MARKETING LLC (hereinafter "Forte Marketing"), KARIM MASIMOV (hereinafter "Massimov"), THE

1

NATIONAL SECURITY COMMITTEE OF THE REPUBLIC OF KAZAKHSTAN (hereinafter referred to as "NSC") and JOHN DOES 1-25.

### NATURE OF THE ACTION

1. Central-Asian Power Energy Company JSC was established on June 11th of 1997. The Company consolidates the enterprises of the different economy sectors including the financial industry and electrical energy industry in Kazakhstan.

2. In 2004, CAPEC, by means of a consortium of affiliated entities, acquired ownership of "Eximbank of Kazakhstan" JSC ("Eximbank" or the "Bank").

3. Plaintiff along with Gulnara Artambayeva and Defendants Alexander Klebanov and Sergey Kan are or were shareholders of Central Asian Power-Energy Company (hereinafter "CAPEC"), and Eximbank.

4. Beginning from 2009 Klebanov used Eximbank to embezzle and launder and assist various top Kazakh Government officials including Massimov and Nazarbayev to launder over one hundred million dollars disguised as fictitious loans issued by Eximbank to various front corporations and offshore accounts controlled by Klebanov or his proxies to appear as legitimate transactions. Part of the funds Klebanov embezzled were raised from the placement of bond loans in the pension funds of the Republic of Kazakhstan.

5. To accomplish this, Klebanov and Kan aligned with co-conspirators in the U.S., and the United Arab Emirates, most importantly, Eximbank, a bank in Kazakhstan which is owned by CAPEC, also had correspondent bank accounts at intermediary banks in New York City. The conspirators used Eximbank's New York City correspondent accounts to receive the fraudulent transfers from the New York Fed via the New York Fed's Fedwire system, which was developed and is maintained by the Federal Reserve System and

2

almost instantaneously transfers large-dollar payments.

6.  Use of the Fedwire system in New York was critical to the conspiracy, as it allowed the Defendants to quickly transfer the funds to the intermediary banks. From there, the intermediary banks, through Eximbank's correspondent accounts, quickly transferred the embezzled funds to US accounts and companies including Forte Marketing LLC., a Delaware limited liability company, which upon information and belief does business in New York and maintains bank accounts in New York and Delaware; and further transfer the funds out of New York City and the United States to Lodestar, a company owned and controlled by Klebanov.

7.  The due date for repayment of the Eximbank loans began to accrue as early as August 31, 2018. However, even before the loans reached maturity, Eximbank was being forced to classify the loans as non-performing loans ("NPLs") on Eximbank's books because these fictitious loans, as later discovered, were actually just a vehicle to make these transactions appear legitimate.

8.  Eventually Eximbank's non-performing loan portfolio exceeded $100,000,000 which directly led to Eximbank's insolvency and created a liquidity gap that made it impossible for Eximbank to operate.

9.  This situation constituted a violation of prudent banking standards that triggered a revocation of Eximbank's license to operate, and subsequent liquidation proceedings that led to a tainted investigation of the Banks activities including the "non-performing" fictitious loans that formed the heart of the money laundering operation for Klebanov, Kan, Massimov and Nazarbayev (the former president of Kazahkstan).

10. Fearing that the public will discover the Defendants scheme to embezzle money from

Eximbank and to launder money offshore, the oligarchs Klebanov and Kan enlisted their long-term Business Partner Massimov, who at the time, was the head of the National Security Committee of the Republic of Kazakhstan ("NSC") and fostered a scheme to shift responsibility for the collapse of Eximbank onto Amirkhanov.

11. In May of 2018, Klebanov, Kan, and Massimov as the head of the National Security Committee of the Republic of Kazakhstan ("NSC") conspired to arrest Mr. Amirkhanov under false charges. NSC detained Mr. Amirkhanov for three months and used duress and intimidation to coerce him to sign a series of unconscionable agreements (while imprisoned) by which he assumed the ownership of Eximbank and took purported responsibility for its collapse. Defendants also coerced the Plaintiffs to transfer their combined 38% interest in CAPEC (valued at around $100 million dollars), to Klebanov and Kan.

12. As a result of Defendants' wrongful and criminal conduct, Plaintiffs seek to recover damages in an amount to be determined at trial, together with attorneys' fees and costs incurred in bringing this action.

13. The Defendants actions constitute a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Specifically, these violations are rooted in practices involving coercion, fraud, and the illegitimate use and laundering of funds, in the U.S. with a corrupt origin. These activities entail collaboration with representatives of the highest state authorities, engagement with offshore companies, and the intentional use of misleading and deceptive methods to misappropriate funds for unlawful purposes.

## THE PARTIES

### A. The Original Parties

14. Plaintiff Yerkyn Amirkhanov ("Amirkhanov") is an individual currently residing in New York. Mr. Amirkhanov is a founding member and shareholder of JSC "Central Asian Power Energy Company" (hereinafter - "CAPEC"). Amirkhanov was the former Chairman of CAPEC and was forced under duress to transfer his 31% stake in CAPEC on July 23, 2018, in order to be released from NSC captivity. Amirkhanov's wife Gulnara Artambayeva (Ms. Artambayeva), was a 7% shareholder of CAPEC and also forced to transfer her shares.

15. Upon information and belief, Defendant Alexandr Klebanov ("Klebanov") is a Kazakhstani oligarch, a world citizen, with a Forbes estimated net worth of $398 million dollars, is engaged in extensive international dealings with significant businesses, assets, property, family and real estate and meaningful connections to New York and the United States through the use of proxies, nominees, and shell companies. Klebanov is the current chairman of the Board of directors of CAPEC. Klebanov originally owned 31% of CAPEC, but after the unlawful embezzling Amirkhanov's and Artambayeva's shares became a 50% shareholder in CAPEC and his net worth multiplied. Klebanov owns and is tied to a sophisticated network of shell companies[1] around the world, controlling billions of dollars, and engaging in illegal money laundering operations the

---

[1] Klebanov's network of known ownership in companies outside of Kazakhstan, includes but is not limited to: Paradide Worls F-900, Inc (USA), Paradise World F-757, Inc (USA), Forte Marketing LLC (USA), Keisecker S.A.R.L.(Luxembourg), A-318 Investment S.A.R.L (Luxembourg), Fresinvest (Belgium) Sobrio Limited (UK), Degevol UK LTD, Gexior UK LTD (UK), Bodam BV (Netherlands), Deran Services BV (Netherlands), Bronera Limited (UAE), Lodestar Holding ltd (UAE), Seldick Finance LTD (BVI), Engleton Finance Ltd (BVI), Roldan Ltd (BVI).

schematics and jurisdictions of which will come out through discovery.

16. Upon information and belief, Defendant Sergey Kan ("Kan") is a Kazakhstani oligarch, a world citizen, according to Forbes has a net worth of $418 million dollars, owns significant businesses around the world, engages in extensive international dealings though the use of proxies and nominees, has businesses, assets, property, and meaningful connections to New York, has all of his children going to school and residing in the United States, frequently travels to the US and NY, owns real estate and may have domicile in the US, also was one of the founders and originally a 31% shareholder of CAPEC, owns of the largest companies in the Kazakhstan, and after the unlawful raiding the shares of Amirkhanov and Artambayeva, became a 50% shareholder in CAPEC, and essentially multiplied his net worth over night. Kan also owns and is tied to a sophisticated network of international companies[2] around the world, controlling billions of dollars, and may have been connected to illegal money laundering.

17. Upon information and belief, The National Security Committee of The Republic of Kazakhstan ("NSC") is an intelligence service in Kazakhstan that was headed by the now incarcerated Karim Massimov. The NSC was complicit in the crimes against the Plaintiffs and was an instrumentality on the payroll of Klebanov and Kan and at all relevant times acted outside of its lawful authority.

B. **The Proposed New Plaintiffs**

---

[2] Companies known to be connected to Sergey Kan include but are not limited to: Central-Asian Power-Energy Company, JSC, Central-Asian Electric Power Corporation JSC, Circle Maritime Invest JSC, Aksa Group LLP, Prime Business LLP, Solis ltd LLP, Teniz Star LLP, Legacy LLP, Global Advisors LLP, Astana Aviation Services LLP

18. Gulnara Artambayeva ("Artambayeva") is Yerkyn Amirkhanov's wife, and was the former President of CAPEC JSC and a 7% shareholder of CAPEC JSC until forced under duress to transfer her shares to her former partners Kan and Klebanov. Artambayeva resides in New York and is seeking asylum in the United States for her unlawful treatment and persecution in Kazakhstan.

**B. The Proposed New Defendants**

19. Upon information and belief, Lodestar Holding Limited ("Lodestar") is an international company registered in Dubai AEU, with possibly billions of dollars USD in assets and holdings, which is owned by Klebanov, and has been used in money laundering operations, and is one of a number of secret shell companies owned by Klebanov around the world, and company that has significant ties and business dealings in the State of New York.

20. Upon information and belief, Forte Marketing LLC. ("Forte Marketing") was a Delaware Corporation, with possibly billions of dollars USD in assets, property and holding in New York and throughout the United States that was used for money laundering, that had connections and significant ties to the former President Nazarbayev and had business dealings to New York and the United States, and the company is the alter ego of the Defendants and is currently active under different entity names that will be revealed through discovery and replaced with the John Doe entities to be named.

21. Upon information and belief, Karim Massimov ("Massimov") is an individual domiciled in Kazakhstan, that is currently incarcerated in Kazakhstan on charges of corruption. On April 24th 2023, former Chairman of the NSC, Massimov was sentenced in Kazakhstan to 18 years in prison for high treason, forcible seizure of power, abuse of power and official authority under the Criminal Code of Republic of Kazakhstan, with

confiscation of property, with a life-long ban to hold positions in the civil service.[3] He has ties to a number of US companies that will be revealed through discovery and that have been involved in money laundering operations.

22. John Doe 1-25 ("Doe") are individuals and entities, presently unknown, that participated and aided in the scheme described in the Complaint and are domiciled and operate in New York and in other States in the United States.

## JURISDICTION

23. This Court has subject matter jurisdiction under 28 U.S.C. §1350, 28 U.S.C. § 1331(a) and 18 U.S.C. § 1964(c) over the First, Second and Third Claims for Relief of this Complaint for violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. and for conspiracy to violate RICO. The Fourth and Fifth Claims for Relief allege violations of state law and of federal common law. This Court has pendent jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a) because those claims are joined with substantially related claims under RICO and because those claims are so related to the RICO claims in the action that they form part of the same case or controversy under Article III of the United States Constitution and arise from a common nucleus of operative facts.

24. Venue is proper in this District and before this Court pursuant to 28 U.S.C. § 1391(b)(2)

---

[3] MASSIMOV's former deputies at the NSC, Sadykulov A. Yergozhin D. and Osipov M. have also been sentenced to 16, 15 and three years, respectively. See: Reuters, April 24th 2023, https://www.reuters.com/world/asia-pacific/former-kazakh-security-boss-jailed-18-yrs-over-role-attempted-coup-2023-04-24/ (See also https://kaztag.info/en/news/karim-masimov-sentenced-to-18-years-in-prison; Later, on July 17th 2023 Masimov K., Sadyqulov A. and Erghozhin D. have been added to the Central Asian  list of sponsors of terrorism by Kazakhstan's Agency of Financial Monitoring. (see RFE/RL's Kazakh Service, June 23rd,2023,https://www.rferl.org/a/kazakhstan-masimov-knb-terrorism-sponsor/32508449.html). Samat Abish – the first deputy of Chairmen of NSC and nephew of former President of RK Nazarbayev N. is also currently under the investigation.

because events giving rise to Plaintiff's claims occurred in this District, including, among other things, Defendants' contractual relationship with Forte Marketing, a U.S. Company that does business in New York, to embezzle $25,000,000 in New York, under the guise of a legitimate loan, and subsequent laundering of the funds to accounts controlled by Defendants Klebanov in the United Arab Emirates via Lodestar Holdings, as well as other companies operating in the United States that are yet to be disclosed but upon information and belief are connected with the Defendants.

25. Upon information and belief, the court also has personal jurisdiction over the Defendants Klebanov, Kan and Massimov because they have shell companies and assets in New York.

26. This Court has personal jurisdiction over the Defendants, which engaged in a multi-national conspiracy to embezzle nearly $25,000,000 USD from Eximbank in the State of New York in New York City at the New York Fed, via U.S. Company Forte Marketing and subsequently extorting the Plaintiffs to assume responsibility for Eximbank's insolvency. In doing so, the Defendants struck at the heart of the global financial system by forming and carrying out a conspiracy and criminal enterprise that reached into the United States and robbed assets that had been located in New York via the New York Fed, the very hub of the United States' participation in the international financial markets and community.

27. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the bank account at the New York Fed that was at the heart of this scheme (in addition to SWIFT, by using the Fedwire system that is maintained and run by the Federal Reserve), the property that was stolen, the intermediary banks with which Eximbank had correspondent accounts through which the embezzled funds were routed and balances may be maintained, and the damages that occurred were all located in the Southern and Eastern Districts of New York, in which

this Court sits.

28. The Court has personal jurisdiction pursuant to 18 U.S.C. § 1965 because it has jurisdiction

over at least one defendant and the ends of justice require that other parties residing in other

districts be brought before the Court.

29. Venue is also proper under 18 U.S.C. § 1965 because Defendants are believed to have

business and conducted significant business actives in the district.

30. Moreover, the act of directing a subsidiary's actions towards New York constitute contacts

with New York for the purpose of a personal jurisdiction analysis, the Plaintiffs may also

use Lodestar Holding Limited unity with and control of Forte Marketing LLC., to establish

Lodestar's own minimum contacts with New York.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

## BACKGROUND

31. Yerkyn Amirkhanov is one of the founders and former shareholder of JSC "Central Asian

Power-Energy Company" (hereinafter - "CAPEC"). From its inception until forced under

duress to surrender its shares, Yerkyn Amirkhanov owned 31%, Sergey Kan owned 31%,

Alexandr Klebanov owned 31% and Gulnara Artambayeva owned 7%.

32. CAPEC was established on June 10, 1997 initially as "CCL Oil Refinery" LLP. In fact, the

Company was created as subsidiary of "CCL Oil Refinery Limited" (Bahamas), which in

turn was subsidiary special purpose vehicle (SPV) of "CCL OIL Ltd", USA, which

carried out a project on the concession of the Pavlodar oil refinery plant, the city of

Pavlodar, Republic of Kazakhstan in 1997- 2000.

33. In the late 1990s to the first half of the 2000s, as a result of privatization, as well as open

sales transactions, mergers and acquisitions, CAPEC consolidated production and

distribution assets of the energy sector in the cities of Pavlodar and Ekibastuz (Pavlodar region), Petropavlovsk city (North Kazakhstan region), Akmola region and Astana city in the Republic of Kazakhstan. Enterprises, controlled by CAPEC currently are providing utilities for almost the entire north Kazakhstan, as well as the capital of the republic - the city of Astana (in total, about 7.3% of the total market utilities of Kazakhstan).

34. CAPEC consolidated energy production and distribution assets in Pavlodar, Ekibastuz (Pavlodar region), Petropavlovsk (North-Kazakhstan region), Akmola region and in Astana through its subsidiary JSC "Central Asian Electric-Power Corporation" ("CAEPC"). CAPEC also owns a 60% stake in Caustic JSC, the producer of caustic soda and chlorine.

35. At the beginning of 2018, the holding's equity capital of CAPEC was estimated at more than 148 billion tenge (approximately $450 million US dollars).

36. Pursuant to the stipulations outlined in the agreements among the shareholders of CAPEC, Amirkhanov, Kan, And Klebanov were appointed as directors of CAPEC. Amirkhanov undertook the responsibility of overseeing general operational activities. Defendant Klebanov assumed duties related to Public Relations, Government Relations, and engagements with law enforcement agencies. Kan actively advocated for construction projects, closely coordinating with the operational initiatives of the Bank. Kan also played an active role in facilitating the progress of construction projects, closely aligning with the operational objectives of the Bank.

37. In recent years Klebanov has been investigated in several jurisdiction for his corrupt activities including in Engalnd.

38. On February 3rd 2022 Member of the UK Parliament Dame Margaret Hodge called for the British government to 'impose sanctions on the Kazakh oligarchs, who have systematically robbed their people to line their own pockets', naming around 30 members of Kazakhstan's elite who could be considered.  In her speech she said :

   "…The country ("Kazakhstan" ) is ruled by a kleptocratic elite that has grown rich off the back of money stolen from its people. Until 2019, its autocratic dictator was Nursultan Nazarbayev. In Kazakhstan, just 162 people own 55% of the wealth—mostly members of Nazarbayev's family or close associates. The country has a poor human rights record and little media freedom"[1]    She stressed: "…The Government have put in place a new regime of anti-corruption sanctions to complement our Magnitsky sanctions. They allow us to designate foreign, corrupt actors, freeze their UK assets, stop them entering Britain and limit their access to our financial or legal enablers….Today, I am calling for action from the UK to designate anti-corruption sanctions against the following individuals, whom I shall name, all of whom are allegedly involved in asset seizure and bribery."

39. Then she indicated the persons who should be sanctioned, in relation to Klebanov A. and his son Klebanov Ya. she said:  "….Then there is Alexander Klebanov and his son Yakov. Alexander has an estimated wealth of $374 million and chairs the Central Asian Electric Power Corporation. The two act as financial proxies for the former president's family, and are thought to have helped Dariga Nazarbayeva to avoid the unexplained wealth order".

40. This action involves money-laundering and bribe that were orchestrated by Klebanov and his associates.


**THE HISTORY OF EXIMBANK AND ITS CUSTODIAL ACCOUNT AT THE NEW YORK FED IN NEW YORK CITY**

---

[1] **Kazakhstan: Anti-corruption Sanctions**, Volume 708: debated on Thursday 3 February 2022, Feb 3, 2022, Hansard, UK Parliament  (https://hansard.parliament.uk/commons/2022-02-03/debates/41000B02-86AB-499E-8547-0F5AA84611B0/KazakhstanAnti-CorruptionSanction?

41. In 2004, CAPEC, by means of a consortium of affiliated entities, acquired ownership of "Eximbank of Kazakhstan" JSC ("EXIMBANK" or the "Bank").

42. From 2004 until 2009 Amirkhanov was the Chairman of the Management Board of Eximbank.

43. Eximbank had correspondent accounts with various foreign banks of various countries, including banks in the US. The payments to Lodestar Holding Limited (UAE) made through correspondent accounts in US banks which had its headquarters in New York City, NY, USA.

44. Eximbank chose the New York Fed for its account because of the New York Fed's central role in the worldwide financial system. It provides banking and financial services to approximately 250 other foreign banks, governments and official international institutions, such as the International Monetary Fund.

45. The New York Fed, along with the eleven other Regional Reserve Banks, the Federal Reserve Board of Governors and the Federal Open Market Committee, form the Federal Reserve System, which serves as the central bank of the United States. It works with key public and private stakeholders "to foster the safety, soundness and vitality of our economic and financial systems.[4]"

46. Collectively, the Federal Reserve system fulfills four overriding purposes including conducting the nation's monetary policy, supervising and regulating banking institutions, maintaining the stability of financial systems and markets, and providing financial services to major financial actors. However, each Reserve Bank within the system has independent mandates and responsibilities, and have independent corporate

---

[4] (Federal Reserve Bank of New York, What We Do, https://www.newyorkfed.org/aboutthefed/whatwedo.html.)

structures.

47. The New York Fed is unique among the Reserve Banks. It is the largest of the Regional Reserve Banks in terms of assets and volume of activity, and it intervenes in foreign exchange markets and stores monetary gold for foreign central banks, governments and international agencies.

48. One of its key missions involves the "international operations" of the Federal Reserve System. The New York Fed "intervene[s] in foreign exchange markets to achieve dollar exchange rate policy objectives and to counter disorderly conditions in foreign exchange markets," and it "acts as the primary contact with other foreign central banks." *Id.*

49. Indeed, virtually all U.S. dollar global foreign exchange transactions involving the United States government and its agencies, foreign central banks and monetary authorities with accounts at the New York Fed, and the Federal Reserve System are essentially routed through New York, and the New York Fed. This fact is critical to the New York Fed's role in maintaining the foreign exchange markets, effectuating its exchange rate policy objectives, and supporting the U.S. dollar as a global currency.

50. The New York Fed also operates Fedwire, which is developed and maintained by the Federal Reserve System and used to transfer large-dollar payments among Federal Reserve offices, depository institutions and federal government agencies. The New York Fed handles the majority of Fedwire transfers within the Federal Reserve System.

51. The Defendants and their collaborators unlawfully accessed the Fedwire system to misappropriate funds from the Eximbank's account at the New York Fed. They achieved this by transferring the funds to correspondent accounts held by Eximbank at

14

intermediary banks in New York City. Subsequently, the stolen funds were moved from these correspondent accounts to accounts owned by Forte Marketing and Lodestar Holdings.

52. The perpetrators exploited specific features of the Fedwire system, including its same-day and often instantaneous transfers. This allowed them to execute their scheme effectively, taking advantage of the immediacy and finality of fund transfers through the Fedwire system.

53. In essence, the conspirators leveraged the New York Fed's role as a depository for the Bank's international reserves and utilized the Fedwire funds transfer system as a crucial element of their illicit plan. Given the significance of the New York Fed in both domestic and foreign monetary policy and markets, the misappropriation of Eximbank's funds from its New York Fed account carries significant and potentially far-reaching consequences in the United States.

**DEFENDANTS 'S EMBEZZELMENT AND MONEY'LAUNDERING SCHEME**

**(Fictitious Loans to CAPEC subsidiaries and holding companies)**

54. In 2001 the shareholders of CAPEC, Amirkhanov, Kan and Klebanov established Malgrey Enterprises Ltd. which is an off-shore British Virgin Islands (BVI) company. Malgray Enterprises Ltd. handled CAPEC operations outside of Kazakhstan.

55. On or about 2008 Defendant Klebanov facilitated a transaction that he believed would replenish the working capital of Eximbank via loans/capital from a "Russian Associate", who could not be disclosed on public records. The funds would be transferred from offshore entities as loans with a three-year repayment schedule. However, these loans were fictitious because the payment of the funds were actually

bribes to public officials, which was hidden behind a legitimate loan issued by Eximbank to a holding company. The holding company would then later transfer the funds to Lodestar and ultimately to Massimov and other corrupt Government officials.

56. Later, Klebanov disclosed that the offshore entities were owned and controlled by Massimov, during the time that he was the Prime Minister of the Republic of Kazakhstan and was later was appointed as Chairman of the NSC.

57. Massimov wired $58.8 million U.S. dollars to Malgray Enterprises LTD from several off-shore companies including GlobalCo Financiers Ltd, registered in Tortola, BVI and Equinox Petroleum Ltd. between August 8, 2008 to October 20, 2008.

58. Of those funds, Klebanov transferred only $38 million USD to Eximbank, and transferred the remainder of the funds to his various offshore holding companies as a kickback.

59. In or about May 2009, Klebanov represented that Massimov demanded the return of the loan with 10% interest.

60. Klebanov repaid the loans through a scheme involving Eximbank and its correspondent New York accounts.

61. Part of the funds were sent to Malgray as a return of the previous fictitious loans, and then transferred to Klebanov's company Lodestar.

62. The remainder of the money was transferred to Massimov, through fictitious companies controlled by Klebanov and CAPEC owned subsidiaries. Klebanov directed Eximbank to issue loans to companies controlled by Klebanov and CAPEC. Eximbank then disbursed the fictitious loans, through New York correspondent accounts via Wachovia Bank in New York:

| Date | Company – Money Sender | Amount, USD | Document |
|---|---|---|---|
| 17.07.2009 | INVESTMENT TECHNOLOGY, LLP | 5 870 000,00 | SWIFT |
| 17.07.2009 | IMPULS-R, LLP | 3 600 000,00 | SWIFT |
| 21.07.2009 | TRASTTECHNOINVEST, LLP | 3 200 000,00 | SWIFT |
| 21.07.2009 | ERTYS-ORDA LLP | 3 050 000,00 | SWIFT |
| 21.07.2009 | ERTYS-ORDA LLP | 2 960 000,00 | SWIFT |
| 12.08.2009 | TSENTRSTROYENERGO, LLP | 6 500 000,00 | SWIFT |
| 12.08.2009 | INVESTMENT TECHNOLOGY, LLP | 6 000 000,00 | SWIFT |
| 12.08.2009 | STROIINSERVICE, LLP | 4 883 333,00 | SWIFT |
| 12.08.2009 | EKIBASTUZSKOE TEPLO, LLP | 3 871 000,00 | SWIFT |
| 12.08.2009 | AVELON COMPANY, LLP | 2 285 000,00 | SWIFT |
| 12.08.2009 | ERTYS-ORDA LLP | 1 940 000,00 | SWIFT |
| 12.08.2009 | INVESTMENT TECHNOLOGY, LLP | 1 700 000,00 | SWIFT |
| | **TOTAL** | **45 809 000,00** | |

63. Subsequently, Klebanov directed each of the CAPEC controlled companies to transfer the funds to Lodestar. Upon information and belief then transferred the funds to Massimov. After embezzling and laundering the funds, the Bank was forced to write-off the fictitious loans as "non-performing" on Eximbank's books.

64. In total Eximbank transferred no less than $98 million USD to Loderstar. Most of the transfers went through Eximbank's New York Correspondent accounts in Wachovia Bank and the Bank of New York Mellon.

**Money Laundering through Forte Marketing LLC.**

65. Forte Marking Ltd LLC is a Delaware limited liability corporation.

66. On or about 2009, Klebanov initiated a large payment of $25 million US dollars to Forte Marketing, under the guise that it is necessary in order to continue to operate CAPEC and

Eximbank.

67. Klebanov arranged a meeting in the Bank's offices which was attended by Aliya Nazarbayeva, the Kazakh Presidents' daughter, Klebanov, Dmitry Prikhozhan (who would later become Chairman of Eximbank and Nazarbayeva's confidant Malik Ishmuratov. Upon information and belief, this was a payment of a bribe to Nazarbayev, who was the President of Kazakhstan at that time.

68. Since Eximbank did not have enough liquid assets to transfer the funds to Forte Marketing, Klebanov borrowed the money from Vasily Anisimov, a Russian billionaire businessman.

69. Between March 18th and March 26th, 2009 Smeaton Co. and Farley Co, companies controlled by Vasily Anisimov transferred $33 million U.S. dollars to Lewis Holding, Ltd, a subsidiary of CAPEC located in Belize and which is managed by Dmitry Roscha.

70. On March 26th, 2009 Lewis Holding Ltd., transferred $25 million US Dollars to Forte Marketing.

71. To repay Vasily Anisimov for the Lewis Holding, Ltd loan, Klebanov transferred $25,000,000 from Eximbank's working capital to his company Lodestar Holdings. The Bank paid the funds by placing three issues of 10 billion tenge (over $200,000,000 USD) each of long-term bonds among the Accumulative Pension Funds of the Republic of Kazakhstan for 5, 7 and 10 years. In order to cover up the nature of this transaction, Klebanov categorized the disbursements as loans to CAPEC affiliated companies, however, at the time all the parties understood that the funds were meant to be payment of a bribe. The creation of the loan documents, were intended to cover up the nature of the transaction. Therefore, the transactions categorized as loans and their attendant documents were fictitious (hereinafter "fictitious loans" or "bad loans").

72. Klebanov knew at all times, and intended for the loans to remain unpaid because all of the

Case 1:23-cv-02399-LDH-CLP    Document 44-3    Filed 02/28/24    Page 19 of 43 PageID #: 462

money with respect to this transaction was deposited in his Lodestar account through various CAPEC subsidiaries and shell companies.

73. At all times Klebanov knew that pursuant to Eximbank procedure, the unpaid loans would be automatically categorized in the Bank's portfolio as "non-performing loans" (NPL).

74. When the fraudulent loans began to reach their maturity in 2018, Eximbank was forced to transfer the loans to other companies and made a partial write-off of principal and interest of which Klebanov was aware. All these loans remained unpaid and were categorized in the Bank's portfolio as "non-performing loans" (NPL), the deficit caused by the default directly led to the revocation of the Bank's license.

75. Klebanov, at all relevant times, was the Chairman of the Board of Directors of CAPEC and Eximbank, and used his official leadership position, to manipulate the employees of the Bank and CAPEC for his own personal purposes. All of these employees, misguided and being in a subordinate position, executed financial loan agreements between Lodestar and the companies controlled by CAPEC at Klebanov's behest. Knowing about significant amounts of governmental resources managed by the Bank, and even personally conducting negotiations on deposits from a number of state and quasi-state companies, Klebanov deliberately embezzled public funds and paid bribes to officials. The long-term withdrawal of funds by Klebanov to his offshore accounts exhausted Eximbank and became one of the main reasons for its collapse.

76. As of July 2017, the debt of Eximbank to state and quasi-state structures, and other depositors amounted to more than 37 billion tenge ($116,000,000 USD).

77. By the fall of 2017, it became obvious that Eximbank was unable to fulfill its obligations to creditors, since almost 80% of the Bank's loan portfolio consisted of non-performing loans.

78. On August 27, 2018, by the decree of the National Bank of the Republic of Kazakhstan (NB RK), the Interim Administration was appointed to oversee Eximbank and a few hours before that Klebanov and Kan announced their resignation from the Board of Directors of the Bank.

79. On November 28, 2018, the Court ordered to liquidate Eximbank Kazakhstan JSC, effective on December 28, 2018.

## THE SCHEME BY MASSIMOV AND THE NATIONAL SECURITY COMMITTEE OF THE REPUBLIC OF KAZAKHSTAN

80. In the Autumn of 2017, Klebanov and Kan became aware that the money laundering operation connected to Eximbank was at risk of being exposed because of the Bank's impending insolvency. In response, they conspired to shift the responsibility for the bank's issues onto Plaintiff Amirkhanov.

81. Klebanov a long-time business partner of Massimov was the Prime Minister of the Republic of Kazakhstan in 2008, and the Chairman of the NCS from September 2016 until January 2022.

82. Klebanov had a long-term trusting business relationship with Massimov, who had significant funds abroad. Massimov colluded with Klebanov and laundered money through Eximbank.

83. Upon information and belief Klebanov paid Massimov hundreds of thousands of US dollars every month as kickbacks and bribes for various legal and political services.

84. Massimov was aware of the financial problems of Eximbank, which he created along with Klebanov, and Kan, when they plundered the capital of the Bank by transferring its funds under various pretexts.

85. Massimov had a personal interest in preventing the exposure of dubious transactions involving him and other political figures, which were likely to be uncovered with the impending insolvency of Eximbank.

86. Massimov plotted with Klebanov and Kan to falsely incriminate Mr. Amirkhanov and to coerce him into assuming responsibility for Eximbank's problems. This scheme involved leveraging the extensive enforcement capabilities of the NSC to compel the Plaintiff to enter into a series of unfair agreements under duress.

87. Klebanov, Kan and Massimov enlisted Yevgeniy Tsoi, who purportedly "came forward" to the NSC and falsely accused, Plaintiff Amirkhanov of taking a bribe. Later Mr. Tsoi retracted his statement after Mr. Amirkhanov agreed, under duress, to take responsibility for Eximbank and transferred his and his wife's CAPEC shares to Defendants Kan and Klebanov.

88. On May 3, 2018, based on Mr. Tsoi's false statement, the chief investigator of the Investigative Department of the NSC, Igoshin Yu. opened a criminal case against Mr. Amirkhanov under Part 6 of Art. 253 of the Criminal Code of the RK (hereafter referred as "CC RK") "Commercial Bribery".

89. On May 5, 2018, the residence of the Plaintiffs', along with the residence of his parents and former wife were raided by the NSC. The same day Mr. Amirkhanov was arrested and placed in a pre-trial detention center of NSC, where he was incarcerated, interrogated and psychologically tortured for three months.

90. From the beginning it was clear that the NSC was acting outside the scope of its authority.

91. For example, the NSC was acting outside of its jurisdiction with respect to this investigation because the crime alleged wasn't related to the matters of security and sovereignty of the state.

92. Due to Massimov's influence over the NSC and his political connections, the case stayed within NSC's jurisdiction. Massimov then appointed a team of eighteen members to investigate the matter, with Colonel Y. Igoshin, who is Massimov's top investigator, to lead the case.

93. The criminal complaint against Plaintiff Amirkhanov alleged that as the chairman of the procurement committee of JSC Tsentrkazenergomontazh ("TSKEM"), he used his official position to secure an equipment supply agreement between TSKEM and Kazenergomash LLP for which Tsoi allegedly paid a kickback of 80 Million tenge (around $250k US dollars). The allegation was never substantiated by documentary proof and Mr. Amirkhanov unequivocally denied having received any remuneration either directly or indirectly.

94. Nonetheless the NSC detained Mr. Amirkhanov for three months during which he endured brutal interrogations by high-ranking members of the NSC, under the direction of Massimov, and other members including NSC Major lieutenant General Samat Abish, the nephew of then-President Nursultn Nazarbayev.   The NSC exerted excessive force, extreme psychological torture, humiliation, sleep deprivation, threats of severe bodily harm, threats and force against Mr. Amirkhanov.

95. In July 2018, following days of psychological torture, Plaintiff Amirkhanov was brought to Investigator Igoshin Y.'s office, where Defendant Kan was personally present for the "negotiations", which is highly unusual since Kan was a private citizen unrelated to this case. An NSC agent, Iskakov and Defendant Kan threatened Mr. Amirkhanov with additional false charges, imprisonment of at least 12 years, and confiscation of property unless he complied with Kan's demands.

96. For several weeks following that period, Plaintiff Amirkhanov remained handcuffed and

faced constant pressure from NSC enforcement personnel to relinquish his CAPEC shares. He endured ongoing psychological torture and interrogations conducted within the closed and restricted environment of the Investigative Department of the NSC.

97. Under psychological torture, Plaintiff Amirkhanov was forced to write a statement addressed to Massimov in which he promised to pledge his shares of CAPEC.

98. While still in custody and under duress on July 23, 2018, Plaintiff Amirkhanov was compelled to sign a series of unfair agreements under duress and under threat of torture. The condition for signing was his release from incarceration and the termination of criminal proceedings against him.

99. On July 23, 2018, at around 11:40 p.m., in the office of NSC investigator Yu. Igoshin, Plaintiff was forced to sign four contracts and two agreements, that effectively resulted in the transfer of Mr. Amirkhanov's 31% shares (worth over $90 million USD) in CAPEC to Klebanov and Kan, in exchange for 23.8% shares of Eximbank Kazakhstan JSC (EXIMBANK), which was insolvent, and to assume all the obligations of the Bank.

100.      The agreements were notarized in NSC's offices in the late evening on July 23, 2018.

101.  Later the notary testified under oath during another Court proceeding that before she was brought to the investigative department of the National Security Committee of the Republic of Kazakhstan for notarial actions, she was informed that the signing of contracts on sale-purchase of shares and agreements on the acceptance of Eximbank debts were the condition of Yerkyn Amirkhanov's release from detention and termination of the criminal case.

102.      At the time of signing, Plaintiff was under deep psychological torture and pressure,

under sleep deprivation, psychological torture and in a state of fear, panic, and desperation.

103.      The Plaintiff, facing severe duress, was presented with an ultimatum: either sign all documents to secure his release, or endure indefinite incarceration for crimes he did not commit.

104.      The Defendants threatened the Plaintiff with catastrophic problems and threatened harm to him and his family if he did not comply. Expert reports by the Center for Expert Research later confirmed that Plaintiff was under duress when he signed the agreements.

105.      The agreement was procured under duress, and fraud and is void as a matter of law.

106.      The NSC's actions were not legitimate and outside of NSC's authority.

107.      For example, the NSC overstepped its authority by compelling the Plaintiff to "transfer" his primary asset, 31% of shares in CAPEC JSC, to Klebanov and Kan. Article 253 (part b) of the Criminal Code of the Republic of Kazakhstan specifically empowers the NSC to freeze assets, not force transfers. The NSC acted beyond its authorized powers by compelling the Plaintiff to transfer his shares.

108.      Massimov and the NSC engaged in activities under the color of legal authority with the aim of securing commercial advantage to further the personal and financial interests of Massimov, Klebanov, and Kan.

109.      For example, the Defendants compelled the Plaintiff to assume responsibility for the obligations of the entire Board of Directors and the Management Board of the Bank. This is despite the fact that Klebanov and Kan were members of the Board of Directors, and Klebanov served as its permanent chairman throughout the relevant periods. Notably, all non-performing loans issued by the bank during Klebanov's tenure as Chairman of the Board of Directors were executed based on his directives, and the funds from these loans ultimately

ended up in companies under Klebanov's control.

110.     In addition, the most absurd condition of the agreement was that the Plaintiff was forced to waive all claims against any organizations, any employees of the CAPEC group of companies, "Eximbank Kazakhstan" JSC, Lodestar Holding Limited: "Mr. Amirkhanov Y.A. undertakes and guarantees that neither he, nor Eximbank Kazakhstan (or its successor), nor third parties, including, but not limited to, borrower companies and payer companies, will have claims on loans and payments made for payments in favor of Lodestar Holding Limited"...This is absurd under the circumstances when multibillion-dollar funds of the Bank's borrowers were transferred, at Klebanov's behest to Lodestar Holding Limited a company controlled by Klebanov.

111.     The Defendants took further steps to cover their tracks of the money laundering scheme that they operated through Eximbank. Between January 2019 and August 2020 the Department of the National Security Committee of the Republic of Kazakhstan, on the basis of an order connected to yet another unrelated purported criminal matter, seized bank documents of all the companies that were used by the Defendants to move funds through the use of fictitious loans to Lodestar, including but not limited to "AG Invest" LLP, "Integral ST" LLP, "Investment Technologies" LLP, and "AlatauKaztTekhnoKom" LLP.

112.     The documents related to the loans and transfers were seized from Bank, and the NSC sealed off the SWIFT terminal of Eximbank in order to hide the evidence of the embezzlement from Eximbank. NSC acted in collusion with Klebanov and Kan, to further the fraud and corruption.

113.     In addition, the members of the liquidation commission confirmed that the international settlement terminal (SWIFT terminal) was sealed, and the hard disk with the information about the history of SWIFT payments from Eximbank was seized.

114.     The Defendants, National Security Committee, Massimov, Klebanov and Kan orchestrated the seizure to hide the evidence of SWIFT payments that they made to Lodestar Holding.

**Unlawful Seizure of Artambayeva's Shares of CAPEC**

115.     Artambayeva Gulnara, was the President of CAPEC JSC since 2002 and a shareholder of 7% of CAPEC JSC from 2011.

116.     On or about May 2018, Klebanov and Kan, through their use of the NSC and Massimov, initiated a false criminal prosecution of Artambayeva in the city of Pavlodar, through the Economic Investigation Service of the Department of State Revenues of the RK for the Pavlodar region (EIS DSR RK) by filing false criminal charges based on a falsified statement.

117.     Realizing the risks of being falsely arrested, as in the case with Amirkhanov, Artambayeva fled the Republic of Kazakhstan.

118.     As a condition for the release of Ms. Artambayeva from incarcerration, Klebanov and Kan demanded that Artambayeva transfer her 7% interest in CAPEC.

119.     Artambayeva was forced to signed sell her shares for 60 million tenge (166 thousand USD at the rate of 360.12 tenge / USD) and the charges against her the city of Pavlodar were dropped.

120.     Klebanov and Kan's seizure of Artambayeva's property, namely 7% of CAPEC's

caused her extensive damages, including the intentional infliction of emotional distress, defamation and repeated threats of harm and arrest, forced wandering outside the country, the inability to stay close to her child, damage to her business reputation as a successful manager and head of the Company and one of the top female business leaders in the Republic of Kazakhstan.

121.     Klebanov and Kan, jointly with the National Security Committee of the Republic of Kazakhstan, and other defendants to be named, are also directly responsible for the unlawful seizure of 31% of Amirkhanov's shares of CAPEC, and the injuries he endured as a result of the illegal incarceration in an NSC facility for 3 months, as well as, the psychological trauma, the inability to be near his children, defamation and the damage caused to my long-term business reputation as the head of the Company - one of the leaders of the electric power industry in Kazakhstan.

**COUNT I**
**(Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") –**
**18 U.S.C.§1962(c) – Operation of a RICO Enterprise)**

122.     Plaintiffs repeat and reallege each and every foregoing paragraph of the complaint as if fully set forth herein.

123.     Plaintiffs and Defendants are all natural persons or legal entities, and as such are "persons" within the meaning of 18 U.S.C. §1961(3).

**Enterprise**

124.     The Defendants Klebanov, Kan, Lodestar Holding Limited, Forte Marketing LLC, Massimov in his personal and official capacity and the National Security Committee of the Republic of Kazakhstan distinct groups of people, formed an enterprise within the meaning of 18 U.S.C. §1961(4), with each Defendant being associated with the enterprise and

forming an association in fact. The purpose of this enterprise was to use Plaintiffs to conceal a money laundering operation and to steal money and property, including $25,000,000 from Eximbank which was wired to Forte Marketing LLC, via correspondent bank accounts in New York City (Bankers Trust Company, New York) and to transport those stolen funds out of the United States, to the United Arab Emirates where the money was to be laundered through Lodestar Holdings' bank accounts.

125.    Thereafter, Kan and Klebanov engaged co-conspirators Massimov and the National Security Committee of the Republic of Kazakhstan to extort Amirkhanov into taking responsibility for the missing funds in furtherance of the conspiracy and to conceal the fact that Klebanov and Kan embezzled over $25,000,000 from Eximbank by issuing "fictitious loans" to Lodestar Holdings LLC., through various alter egos, which directly caused Eximbank's insolvency.

126.    Massimov, who was the National Security Chief, arrested Amirkhanov on false charges with the intention of applying pressure through threats of force and economic harm. Massimov released Amirkhanov from detention after Amirkhanov agreed to assume all liability for Eximbanks insolvency. During Amirkhanov's detention in the Kazakh prison, Kan and Klebanov, with Massimov's assistance, forced Amirkhanov to sign an agreement to transfer the Plaintiffs' Gulnara Artambayeva and Amirkhanov's combined 38% interest in CAPEC (appraised at around $100 million dollars) to Klebanov and Kan. As part of the deal, the Defendants forced Amirkhanov to assume a controlling interest of Eximbank, after its license was revoked due to the Defendant's embezzlement and money-laundering scheme.

127.    On information and belief, the enterprise and association in fact that made up the

enterprise is made of other individual and entities, including the Doe Defendants, whose identities are not currently known.

128.     Alternatively, Klebanov, Kan, Lodestar Holding Limited, And Forte Marketing LLC on the one hand, and the other Defendants Massimov in his personal and official capacity and the National Security Committee of The Republic Of Kazakhstan constitute an enterprise within the meaning of 18 U.S.C. §1961(4) with each Defendant being associated with the enterprise and forming an association in fact. The Defendants engaged in the enterprise to embezzle, steal, loot and launder the Eximbank's funds and property; including the use of SWIFT wire transfers, to launder money between Kazakhstan, off shore companies and the United States, was intended to further defendants' scheme to defraud the Plaintiff by ensuring that the Plaintiff would assume the responsibility for Defendants malfeasance and would further consolidate Defendant's power via transfer of the CAPEC shares,  whereby they could finance their scheme to launder money into the United States by undermining the Rule of Law in Kazakhstan, and deny Plaintiff their fundamental human and political rights, including their rights to their property, by the use of force through an arbitrary arrest, incarceration, forced surrender of property, forced assumption of debts, through the use of psychological torture during incarceration, and the deprivation to a fair trial, among other right. On information and belief, the enterprise and association in fact that made up the enterprise is made up of other individuals and entities, including the Doe Defendants, whose identities are not currently known.

## Conduct

129.     Each of these enterprises engaged in, and their activities affected, domestic and international commerce, directed as they were to injuring the Plaintiffs by embezzling

funds from Eximbank through a fraudulent scheme to transfer funds to the U.S. Company Forte Marketing via New York Correspondent accounts and then forcing Amirkhanov, under threat of imprisonment, to assume responsibility of Eximbank and to transfer his CAPEC shares to Klebanov and Kan.

130.    The enterprise also used two correspondent accounts at two intermediary banks located in New York, to launder those funds through various off-shore entities. The enterprise did not merely utilize these banks to conceal or effectuate the theft, Klebanov used Eximbank to execute fraudulent loan agreements to conceal the theft under the guise of legitimate business dealings, to Forte Marketing, a U.S limited liability company, that does business in New York. Defendants then transferred $25,000,000 through Forte Marketing accounts via New York correspondent accounts.

**Pattern of Racketeering Activity**

131.    From January 2008 until August 2020 Defendants engaged and conspired to engage in a pattern of racketeering activity which consisted of and/or was furthered by, at least, the following predicate acts of the enterprise(s) in violation of law:

a)  18 U.S.C. §1343 relating to fraud by use of wire transmissions which caused Eximbank's funds to be stolen out of its bank account in New York;

b)  18 U.S.C. §1344 relating to bank fraud designed to steal the funds located in New York;

c)  19 U.S.C. §§1956-1957 arising out of the laundering of Eximbank's funds from its account at the New York Fed and to its ultimate recipients through the members of the enterprise(s); and

d)  18 U.S.C. § 201 the Foreign Extortion Prevention Act arising out of Klebanov payment of bribes to Massimov and Nazarbayev through the use of U.S. bank accounts and New York

correspondent accounts; and

e) 18 U.S.C. §1951, Hobbs Act Extortion, arising out of the false charges and unlawful detention of Mr. Amirkhanov and the subsequent duress under which he was forced to relinquish his property to Kan and Klebanov and to assume ownership of the insolvent Eximbank; and

f) any state law predicate act such as theft, conversion, which are the subject of the state law causes of action.

132.      More particularly, the enterprise violated 18 U.S.C 1343- wire fraud- by utilizing the wire transfer network, and several American banks including the New York Fed to wire $25,000,000 to Forte Marketing to effectuate the fraud. Indeed, the enterprise sent SWIFT instructions inot the New York Fed, knowing and intending that the New York Fed would utilize the near instantaneous Fedwire system, maintained by the Federal Reserve, to transfer funds to a correspondent bank accounts in New York held by Eximbank and transfer the money to Forte Marketing one of the members of the enterprise.

133.      Also, the enterprise violated 18 U.S.C §1344- bank fraud- by intentionally defrauding a financial institution- both the Bank and also the New York Fed from which the enterprise obtained the stolen funds. As noted above, the enterprise specifically drafted fraudulent loan agreements with a U.S. company in order to conceal the true identity of the beneficiary of the funds in order to steal $25,000,000 of Eximbank's funds out of the New York Fed and abusing the Fedwire system, along with the other intermediary banks, in furtherance of the theft.

134.      The enterprise also violated 18 U.S.C §§1956-1957- money laundering and the use of laundered funds- as a core component of its scheme to steal Eximbank's funds out of

New York, transfer them through Eximbank's correspondent accounts at the New York correspondent bank, then through SWIFT to Forte Marketing, where the funds would be further laundered through numerous accounts, including Lodestar Holding, among others, where the money would be further laundered and turned into clean, untraceable cash. This convoluted money laundering scheme was specifically designed to conceal and disguise the nature of the stolen funds, their location source, ownership, and control, and did in fact do so, rendering significant portions of the stolen funds untraceable and which remain undiscovered to this date.

135.     The enterprise also violated 18 U.S.C. §§2314-2315- the transportation, receipt, and use of the stolen proceeds into foreign commerce and out of the United States —by spiriting the $25,000,000 out of the United States, from the New York Fed, through Fedwire, to Forte Marketing via New York correspondent banks, then through SWIFT to the Klebanov's account Lodestar Holdings in the United Arab Emirates.  From there, as set forth more fully above, Defendants Klebanov, Kan, Forte Marketing and Lodestar Holdings engaged in a sophisticated web of transfers and foreign exchanges to transport and use the stolen proceeds, and to take their cut.

136.     18 U.S.C. § 201- The Foreign Extortion Prevention Act (FEPA) makes it a criminal offense for foreign government officials to solicit or receive bribes from any person in the United States, any issuer, or any domestic concern. Here, Defendants transferred $25,000,000 to Forte Marketing, a U.S. company, which was later used to pay a bribe to foreign officials including Massimov and Nazarbayev.

137.     The enterprise also violated 18 U.S.C. §1951- Hobbs Act Extortion The Hobbs Act makes it unlawful for the Defendants, or any officer, director, employee, or agent thereof,

to obstruct, delay or affect commerce, by extortion or an attempt to do so, or commit or threaten physical violence to any person or property in furtherance of a plan or purpose to commit Hobbs Act Extortion. On or about May 2018 through July 2018, Defendants Massimov and the National Security Committee of the Republic of Kazahkstan arrested, tortured, and incarcerated Mr. Amirkhanov on false charges.

138.     In 2018, the fraudulent loans orchestrated by Klebanov for his various entities were approaching their repayment deadline. Despite Eximbank classified these loans as "non-performing" on Eximbank's financial records, he and Kan recognized that the $100,000,000 deficit in 2018 would push the bank into insolvency. This scenario would likely trigger an investigation and regulatory measures by the National Bank of the Republic of Kazakhstan, potentially exposing Klebanov's embezzlement schemes. In response, Kan and Klebanov colluded with their associate Massimov and the National Security Committee to extort Amirkhanov into assuming control of Eximbank and to take responsibility for the deficit of its operating funds.

139.     On July 23, 2018 Plaintiff Amirkhanov, facing coercion from Massimov and the National Security Committee's threats of imprisonment, force, and violence, was compelled to sign documents that resulted in the transfer of 23.8330% (presumed majority shareholder) ownership of Eximbank Kazakhstan JSC to him. Simultaneously, he was forced to divest both his and his wife's shares in CAPEC. Additionally, Amirkhanov was compelled to sign a contract, assuming responsibility for the labeled "fictitious debt," and non-performing loans and in doing so, he waived any claims against Kan, Klebanov, CAPEC, and Lodestar Holdings associated with said "bad debt."

140.     Thereafter, the Defendants took affirmative steps to prevent the Plaintiffs from

discovering the claim or injury. Beginning on January 9th, 2019 and continuing for several months until May 2019, the Defendants concealed the scheme by seizing the documents and evidence from Eximbank that connects Klebanov Kan and Massimov to the fraudulent loans, money laundering and wire transfers of the supposed loan-funds to Klebanov's bank accounts. The Department of the National Security Committee of the Republic of Kazakhstan seized Exhimbank's credit files, the hard disk containing information about the history of SWIFT payments from Eximbank and sealed the international settlement terminal (SWIFT terminal). Plaintiff exercised reasonable diligence to discover the fraud, by pursuing claims through Kazakh Courts. However, Plaintiff did not have sufficient information to commence a Civil Rico action at an earlier point.

**Open-Ended Continuity**

141.    The acts described above form a "pattern" of racketeering activity within 18 U.S.C. §1961(5). The Defendants and others with whom they have been associated have been related in their common objectives of theft, money laundering and illegal corporate raiding. The Defendants predicate acts have had the same or similar purposes, results, participants, victims, and methods of commission, and occurred over at least a ten-year period. The predicate acts have been consistently repeated and are capable of further repetition.

142.    As noted above, each person associated in fact with the enterprise had its role to play and profited from their participation in and association with the enterprise.

143.    These Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the patter of racketeering and activity described above, in violation of 18 U.S.C. §1962(C).

144.    As a direct and proximate result of the violations of 18 U.S.C. §1962(c), Plaintiffs

34

have been directly injured in their business and property at least in the full amount of the stolen funds as a direct result of the predicate acts intended to steal those funds, plus other damages, including interest, attorneys' fees, treble damages, and other damages, that may be proved at trial.

## COUNT II
### (RICO Conspiracy – 18 U.S.C. §1964(d))

145.     Plaintiffs repeat and reallege each and every foregoing paragraph of the complaint as if fully set forth herein.

146.     The Defendants entered into an agreement with each other and with other co-conspirators to join in the conspiracy to violate 18 U.S.C. §§ 1962(a), 1962(b), and 1962(c). Each Defendant entered into an agreement to join the conspiracy, and undertook acts in the furtherance of the conspiracy and knowingly participated in the conspiracy. The purpose of the conspiracy was to unlawfully acquire companies and to launder the proceeds of their criminal activity to the economic detriment of the Plaintiff and to the economic benefit of the Defendants.

147.     The conspirators carried out the scheme and each conspirator was put on notice of the general nature of the conspiracy, that the conspiracy extended beyond the individual role of any single member, and that the conspiratorial venture functioned as a continuing unit for a common purpose. The Defendants adopted the goal of furthering and facilitating the criminal endeavor. Their stake in the money-laundering venture was in making profits and increasing market share through their informed and interested cooperation with their criminal customers, and their active assistance, stimulation, and instigation of the money-laundering activities.

148.     The Defendants engaged in an actionable wrong, committed jointly with their

35

coconspirators, and the acts of each member of the conspiracy are imputed to the others because of their common purpose and intent.

149.    The Defendants, acting with their coconspirators, engaged in common action for a common purpose by common agreement and understanding among the group, and are subject to common responsibility.

150.    The Defendants, together with each member of the conspiracy, agreed and conspired to violate: (1) 18 U.S.C. § 1962(b) by acquiring or maintaining, or causing the acquisition or maintenance of, through a pattern of racketeering activity, an interest or control in the enterprise, the activities of which affect interstate or foreign commerce; (3) 18 U.S.C. § 1962(c) by participating, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, including an agreement that the conspirators, or one of them, would commit or cause the commission of two or more racketeering acts constituting such a pattern;

151.    The Defendants participated in and cooperated with each other and with their coconspirators in the aforementioned conspiracy that enabled each coconspirator to obtain proceeds from the illegal acquisition of Plaintiff's company in violation of internationally recognized human rights.

152.    As a result of the conspiracy, the Defendants and their coconspirators facilitated the laundering of large volumes of money that constituted the proceeds of criminal activity.

153.    The membership of the conspiracy in question includes the Defendants coconspirators Does 1-25, including associated "inner circle" members and companies, including institutions controlled by Lodestar Holding Limited, Forte Marketing LLC, Karim Massimov, The National Security Committee Of The Republic Of Kazakhstan, and

third-parties related to them consisting of currency dealers, money brokers, and other participants in the schemes identified above who all acted in concert with Defendants in illegally acquiring Plaintiff's company through fraud and duress and then arranged for payment in a way that is undetectable by governmental authorities, with said payments ultimately being returned to the Defendants in the United States.

154.    As coconspirators, the Defendants are liable for all of the actions committed by all of the coconspirators within the conspiracy and are liable for all of the damages sustained by the Plaintiff that were caused by any members of the conspiracy, regardless of whether the Defendants were themselves directly involved in a particular aspect of the enterprise.

155.    As a direct and proximate result of the violations set forth above, the Plaintiff has been injured in his business and property as set forth more fully above in the preceding paragraphs. The Defendants' violations of 18 U.S.C. § 1962(d) caused these losses. Under the provisions of 18 U.S.C. § 1964(c), the Plaintiff is entitled to bring this action and recover herein treble damages, the costs of bringing the suit, pre-judgment interest, and reasonable attorneys' fees.

**COUNT III**
**(Violations of the Alien Torts Statute**
**and the Torture Victims Protection Act, 28 U.S.C.§ 1350)**

156.    Plaintiffs repeat and reallege each and every foregoing paragraph of the complaint as if fully set forth herein.

157.    The Alien Torts Statute, 18 U.S.C. § 1350, grants aliens (non-U.S citizens) the right to seek recourse and judicial relief in the United States courts for violations of international law. Similarly, the Torture Victims Protection Act, which is also codified in 18 U.S.C. § 1350, gives recourse to the U.S. courts for victims of torture and other inhumane or

degrading treatment.

158.    The Universal Declaration of Human Rights, which was recognized by the United Nations General Assembly in 1948, recognizes that there are certain fundamental and inalienable human and political rights to which the citizens of all nations are entitled, including, among other things, the right of the accused to a public and impartial hearing by an independent and impartial tribunal pursuant to the Rule of Law, equal protection and treatment under law, the right to be presumed innocent until proven guilty according to law in a public trial at which he has all the guarantees necessary for his defense, the right not to be subjected to arbitrary arrest, incarceration or exile, the right to the full protection of law, and the right not to be subjected to torture or to cruel, inhuman or degrading treatment.

159.    In addition, the International Covenant on Civil and Political Rights, which has been adopted by all United Nations member states, including Kazakhstan, protects the freedoms of expression and association, without retaliation by the state through arrest, incarceration of forced exile.

160.    The rights protected by the Universal Declaration of Human Rights and the International Covenant on Civil and Political Rights, as well as those articulated by other treaties, as well as treatises and scholarly writings, are now generally accepted by the international community of nations as part of customary international law, and is a peremptory or jus cogens norm of international law, *i.e.*, the prohibition is specific, universal and obligatory and binding upon all states and their citizens.

161.    The Defendants actions, including subjecting Yerkyn Amirkhanov to arbitrary arrest, and three month incarceration under cruel and inhumane conditions constituted violations of customary international law, for which the plaintiffs is entitled to damages

pursuant to the Alien Torts Statute and the Torture Victims Protection Act, 28 U.S.C. § 1350.

162.    In 2018, the fraudulent loans orchestrated by Klebanov for his various entities were approaching their repayment deadline. Despite Eximbank by the directive of Eximbank having classified these loans as "non-performing loans" on Eximbank's financial records, he and Kan recognized that the $100,000,000 deficit in 2018 would push the bank into insolvency. This scenario would likely trigger an investigation and regulatory measures by the National Bank of the Republic of Kazakhstan, potentially exposing Klebanov's embezzlement schemes. In response, Kan and Klebanov colluded with their associate Massimov and the National Security Committee to extort Amirkhanov into assuming control of Eximbank and to take responsibility for the deficit of its operating funds.

163.    On July 23, 2018 Plaintiff Amirkhanov, facing coercion from Massimov and the National Security Committee's threats of imprisonment, force, and violence, was compelled to sign documents that resulted in the transfer of 23.8330% (presumed majority shareholder) ownership of Eximbank Kazakhstan JSC to him. Simultaneously, he was forced to divest both his and his wife's shares in CAPEC. Additionally, Amirkhanov was compelled to sign a contract, assuming responsibility for the "non-performing loans" and in doing so, he waived any claims against Kan, Klebanov, CAPEC, and Lodestar Holdings associated with said "bad debt."

164.    Defendants' violations of international law, the Alien Torts Statute and the Torture Victims Protection Act were the proximate cause of the injuries sustained by the individual Plaintiffs.

165.    As such, the individual plaintiffs are entitled to recover damages against the Defendants in an amount to be determined at trial.

## COUNT IV
### (Unjust Enrichment Against All Defendants)

166.    Plaintiffs repeat and reallege each and every foregoing paragraph of the complaint as if fully set forth herein.

167.    The Defendants were also unjustly enriched from the scheme.

168.    Each of the foregoing Defendants was enriched at the expense of Mr. Amirkhanov, who was forced under duress to assume the responsibility for the fraudulent loans and transfers to Forte Marketing and Lodestar, causing damage to Mr. Amirkhanov's long-term business reputation and besmirching his 20-year record in public service.

169.    Furthermore, Defendants Kan and Klebanov, with the help of Massimov and the National Security Committee of Kazakhstan, transferred the Plaintiff's CAPEC shares, valued at $100,000,000 at the time of transfer, without compensation under the threat of imprisonment.

170.    Meanwhile, Kan and Klebanov who embezzled over $100,000,000 of Eximbank funds to Klebanov's company Lodestar, having used Mr. Amrikhanov as a scapegoat for their crimes, continue to reap the financial benefits at the expense of Mr. Amirkhanov. Defendants Kan and Klebanov made potentially hundreds of millions of dollars at the expense of the Defendants.

171.    Given the role of the Defendants in the conduct at issue in this case and as more fully described above, each Defendant's retention of the benefits of this massive scheme and theft orchestrated against the Plaintiffs would be patently unjust, and equity and good conscience demands that each Defendant return any amount of gain obtained over the course of the scheme discussed herein to the Plaintiffs.

172.    Defendants Massimov and The National Security Committee of the Republic of

Kazakhstan also benefitted by this scheme and were paid bribes in an amount to be fully ascertained through discovery. Massimov and the National Security Committee of the Republic of Kazakhstan were responsible for orchestrating the scheme that led to Mr. Amirkhanov's unlawful arrest and subsequent three-month detention. Massimov and The National Security Committee exerted duress on Mr. Amrikhanov and forced him to shoulder Eximbank's debt and to unjustifiably assume responsibility for Kan and Klebanov's wrongdoing to Mr. Amirkhanov's detriment as more fully described above.

173.     Defendants Massimov and The National Security Committee of the Republic of Kazakhstan were paid bribes in an amount to be fully ascertained through discovery. Their acceptance of at least some funds is a benefit to Defendants that should not be retained.

174.     Finally, John Does 1-25 constitute individuals and entities who may have been involved in the scheme, including but not limited to personnel of Eximbank and The National Security Committee of the Republic of Kazakhstan who accepted bribes to orchestrate the false arrest, detention, and subsequent duress to transfer CAPEC shares and assume Eximbank's liabilities.

175.     John Doe Defendants retained funds in an amount to be fully ascertained through discovery.

**COUNT V**
**(Conversion/Misappropriation and**
**Conspiracy to Convert/Misappropriate Against All Defendants)**

176.     Plaintiffs repeat and reallege each and every foregoing paragraph of the complaint as if fully set forth herein.

177.     Defendants, and each of them, have wrongfully converted, aided and abetted, and caused to be converted, to their own use, and that of their friends, Families,

associates, and accomplices, money, funds, and property belonging to the Plaintiffs. Such conversions have been for the benefit of the Defendants and their friends, families, associates, and accomplices, and to the detriment of the true owners of the property, the Plaintiffs. Such acts of conversion include the acts alleged herein.

178.     Defendants unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together, with each other, and with others to convert money, funds, and property belonging to the Plaintiffs to their own use, and that of their friends, families, associates, and accomplices. In furtherance of the conspiracy and to affect the objects thereof, Defendants committed the overt acts, among others, referenced above.

179.     As a direct and proximate result of these acts of conversion by Defendants, the Plaintiffs have suffered damages in an amount to be determined at trial, and presently estimated to be not less than $100 million.

180.     In committing the acts and perpetrating the schemes alleged herein, Defendants intended to injure the Plaintiffs with malice and oppression and with a willful and conscious disregard for the rights of the Plaintiffs. In so doing, Defendants acted toward the Plaintiffs in such manner as to warrant disgorgement of their uses and investments of Plaintiffs property together with an award of punitive and exemplary damages in an amount no less than $100 million.

## **DEMAND FOR JURY TRIAL**

181.     Plaintiff hereby demands a jury trial on all triable issues herein.


Dated: New York, New York
        January 12th, 2024                                    Respectfully submitted,

*/s/ Irina Shpigel*
Irina Shpigel, Esq.

Case 1:23-cv-02399-LDH-CLP    Document 1    Filed 03/28/23    Page 1 of 114 PageID #: 1

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

MAR 28 2023

PRO SE OFFICE

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

Brooklyn Division

|  |  |
|---|---|
| Amirkhanov Yerkyn | Case No. **CV 23-2399** |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☐ Yes ☒ No |
| -v- |  |
| Klebanov Alexandr Yakovlevich and Kan Sergey Vladimirovich and National Security Committee of Kazakhstan | DeARCY HALL, J. |
| *Defendant(s)* | POLLAK, M.J. |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* |  |

## COMPLAINT FOR A CIVIL CASE

I.    **The Parties to This Complaint**

    A.    **The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Amirkhanov Yerkyn |
| Street Address | 815 Avenue U, 2 Floor |
| City and County | Brooklyn, |
| State and Zip Code | NY 11223 |
| Telephone Number | 3472169564 |
| E-mail Address | yerkyn.amirkhanov@gmail.com |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Central-Asian Power Energgy Company, JSC |
| Job or Title *(if known)* | Yermensav, 4-th Pereulok 12 |
| Street Address | Almaty City |
| City and County | Republic of Kazakhstan, 050044 |
| State and Zip Code | +7 (7172) 64 57 50, +7 (727) 258 49 41, +7 (701)111 92 93 |
| Telephone Number | |
| E-mail Address *(if known)* | info@energy.kz, pr@energy.kz, alex.vk@icloud.com |

Defendant No. 2

| | |
|---|---|
| Name | Kan Sergey Vladimirovich |
| Job or Title *(if known)* | Company Shareholder-CAPEC JSC |
| Street Address | Dostlyk Avenue 291/22 |
| City and County | Almaty City |
| State and Zip Code | Republic of Kazakhstan, 050020 |
| Telephone Number | +7 (701) 111 01 55 |
| E-mail Address *(if known)* | S.Kan@inbox.ru, skan@kgnt.kz |

Defendant No. 3

| | |
|---|---|
| Name | The National Security Committee of Kazakhstan |
| Job or Title *(if known)* | |
| Street Address | 66 Syganak Street |
| City and County | Astana City |
| State and Zip Code | 010000 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

E-mail Address *(if known)*

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

N/A

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

1.     The Plaintiff(s)

a.     If the plaintiff is an individual

The plaintiff. *(name)* Amirkhanov Yerkyn , is a citizen of the State of *(name)* resident of U.S.A. .

b.     If the plaintiff is a corporation

The plaintiff. *(name)* , is incorporated under the laws of the State of *(name)* and has its principal place of business in the State of *(name)* .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

a.     If the defendant is an individual

Page 3 c

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

The defendant, *(name)* | Klebanov Alexandr Yakovlevich and Kan |, is a citizen of
the State of *(name)* _____. Or is a citizen of
*(foreign nation)* | Republic of Kazakhthan. |.

b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under
the laws of the State of *(name)* _____, and has its
principal place of business in the State of *(name)* _____.
Or is incorporated under the laws of *(foreign nation)* _____
and has its principal place of business in *(name)* _____

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    **The Amount in Controversy**

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

KLEBANOV ALEXANDR and KAN SERGEY together with the National Security Committee of the Republic of Kazakhstan owe the plaintiff 90 (ninety) million US dollars for direct damages and 45 (forty five) million US dollars for moral damage suffered during detention.
KLEBANOV ALEXANDR and KAN SERGEY together with the National Security Committee of the Republic of Kazakhstan owe G.D. Artambayeva, the plaintiff's wife 20(twenty) million US dollars in direct damages and 10 (ten) million US dollars for moral damage

**III.    Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Case 1:23-cv-02399-LDH-CLP    Document 1    Filed 03/28/23    Page 5 of 114 PageID #: 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

In 2018, KLEBANOV ALEXANDR and KAN SERBEY my former business partners at Joint Stock Company "Central Asian Power and Energy Company" (CAPEC JSC), having entered into a criminal conspiracy with the leadership of the National Security Committee of the Republic of Kazakhstan, treacherously violated my civil rights, property rights, and freedoms by falsifying a criminal case against me.

The judicial authorities of the Republic of Kazakhstan, like the Almaty City Court and its district judicial bodies, consider claims and complaints in favor of our opponents, despite significant violations of the procedural and substantive rules. At the same time, the arguments of our side are not taken into account
Due to the criminal conspiracy and the judicial authorities' ruling, I was arrested for 3 months. During this period, I underwent, moral, physical, and psychological pressure and was threatened with a real conviction. To dismiss the real conviction, they seized my property whereby I was required to sign a contract for the sale of property handing over 31% of my shares at CAPEC JSC to them, as well as sign bonded agreements to take on all the debts of a bankrupt bank, Eximbank Kazakhstan JSC, which is owned by CAPEC JSC and had to sign an agreement for the purchase of shares of the above bank as well. In the future, these agreements caused the decision on seizing the property of my relatives.
The result of the signing of the aforementioned Agreement in the future was the prosecution of me in civil procedure, compulsion to confess debts, illegal court decisions taken in civil procedure, putting me on the internal and interstate wanted list, illegal actions against the property of my former wife L.Zhaksylykova, and also with the aim of exerting pressure on me, falsification of a criminal case against my brother Amirkhanov Yerzhan and his wife Amirkhanova Saula.
In addition, Klebanov and Kan falsified a criminal case involving the Economic Investigation Service of the Ministry of Finance of the Republic of Kazakhstan against my wife G.D.Artambayeva, to put pressure on me and raider seizure of her property - 7% of the shares of CAPEC JSC.
Therefore, I accuse KLEBANOV ALEXANDR YAKOVLEVICH and KAN SERGEY VLADIMIROVICH together with the National Security Committee of the Republic of Kazakhstan for repeated violations of my rights and freedoms as a citizen of the Republic of Kazakhstan, my right to freedom of entrepreneurial activity, guaranteed to me by the Constitution of the Republic of Kazakhstan, as follows:
1.        a raider seizure of my property, and causing me direct damage in the amount of 90 (ninety) million US dollars.
2.        a raider seizure of property of my wife G.D.Artambayeva and causing direct damage to her in the amount of 20 (twenty) million US dollars;
3.        inflicting moral damage on me as the illegal detention and being in the detention facility of the NSC of the Republic of Kazakhstan for 3 months, moral and psychological trauma, and damage to business reputation and health, which I estimate at 45 (forty five) million US dollars;
4.        inflicting moral damage on my wife G.D.Artambayeva as psychological suffering, the threat of arrest, forced wandering for months outside the country and undermining her business reputation, estimated by her at 10 (ten) million US dollars.

**IV.     Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

I HEREBY REQUEST THE COURT:

1.      To recognize as illegal the Agreement on compensation, sales contracts of shares of Eximbank Kazakhstan JSC signed in custody in the detention facility of the National Security Committee of the Republic of Kazakhstan, as well as all documents (agreements) signed in pursuance of the Agreement on compensation signed in the detention facility of the National Security Committee of the Republic of Kazakhstan.

2.      To cancel illegal decisions taken by the courts of the Republic of Kazakhstan in pursuance of contracts and agreements signed in the conditions of detention in the pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan.

3.      To oblige KLEBANOV ALEXANDR YAKOVLEVICH and KAN SERGEY VLADIMIROVICH JOINTLY WITH the National Security Committee of the Republic of Kazakhstan to compensate me for material damage in the amount of 90 (ninety) million USD, as well as moral damage in the amount of 45 (forty five) million USD, which in total amounting to 135 (one hundred thirty five) million USD.

4.      To oblige KLEBANOV ALEXANDR YAKOVLEVICH and KAN SERGEY VLADIMIROVICH, JOINTLY WITH the National Security Committee of the Republic of Kazakhstan to compensate material damage to my wife G.D. Artambayeva in the amount of 20 (twenty) million USD, as well as moral damage in the amount of 10 (ten) million USD, which in total amounts to 30 (thirty) million USD.

**V.      Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.      For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      March 22, 2023

Signature of Plaintiff
Printed Name of Plaintiff      Yerkyn Amirkhanov

**B.      For Attorneys**

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm

Page 6 of

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Street Address

State and Zip Code

Telephone Number

E-mail Address

Case 1:23-cv-02399-LDH-CLP    Document 1    Filed 03/28/23    Page 8 of 114 PageID #: 8

## CIVIL COVER SHEET

JS 44  (Rev. 4-29-21)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Yerkyn Amirkhanov

**DEFENDANTS**

Kan Sergey and Klebanov Aleksandr and the National Security Committee of the Republic Of Kazakhstan

**(b)** County of Residence of First Listed Plaintiff    USA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Kazakhstan
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

| **II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)* | | **III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)* | | | |
|---|---|---|---|---|---|
| | | | PTF DEF | | PTF DEF |
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* | Citizen of This State | ☐ 1 ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | Citizen of Another State | ☐ 2 ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☒ 3 ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

Does this action include a motion for temporary restraining order or order to show cause? Yes ☐ No ☒

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☒ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**    Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $    CHECK YES only if demanded in complaint:    JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*    JUDGE    DOCKET NUMBER

DATE    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, _____, counsel for _____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☑      monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐      the complaint seeks injunctive relief,

☐      the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 1(c)

1.)     Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?    ☐ Yes    ☐ No

2.)     If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?    ☐ Yes    ☐ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?    ☐ Yes    ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?    ☐ Yes    ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐ Yes        ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes   (If yes, please explain      ☐ No

I certify the accuracy of all information provided above.

**Signature:** _____

Last Modified: 11/27/201

# THE STATEMENT OF CLAIM

Hereby, I, Amirkhanov Yerkyn Adamiyanovich, born on May 04, 1967, currently residing in the United States of America having "Pending Political Asylum" status protected by the United States of America - forced to apply with this Addendum to the Statement of Claim filed in accordance with US law.

I am filing a lawsuit against the citizens of the Republic of Kazakhstan and the National Security Committee of the Republic of Kazakhstan:

1. Klebanov Alexandr Y., born on April 27 th 1964,

2. Kan Sergey V., born on February 10th 1968,

and

The National Security Committee of the Republic of Kazakhstan (hereinafter referred to as "the NSC RK")

on the recognition as illegal the Agreement on Procedure of Compensation of Damages in relation to "Central-Asian Power-Energy Company", JSC(hereinafter referred to as "the CAPEC, JSC"), the Agreements on Procedure of Compensation of Damages in relation to "Eximbank Kazakhstan" JSC, Contract of sales-purchase of the shares of "Eximbank Kazakhstan" JSC (hereinafter referred to as "Bank") signed by me during my detention in the pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan, as well as all documents (agreements) signed in pursuance of the Agreements on Compensation of Damages, signed in the detention facility of the NSC RK. This criminal case against me was fabricated by above-mentioned persons in collusion with the leadership and the officers of NSC RK. The Statement of Claim filed and contained claim for compensation of direct material damage caused in the form of property belonged to me and my spouse and seized as a result of the execution of contracts signed during my detention in the pre-trial detention facility of the NSC RK, compensation of moral damage caused, loss of honor, dignity and business reputation.

Since the filing of this claim in the District Court of the United States of America, the country in which I am now and which protection I have honorably used, I nevertheless haven't suspend fighting for my rights in all available and possible ways in the Republic of Kazakhstan - country of my citizenship and where the crimes have been committed, trying to revoke illegal court decisions, taking measures to

1

restore justice, getting compensation for illegally seized property and protecting my honor, dignity and business reputation.

As it was indicated in my Statement of Claim, in January 2019 I filed two Statements on the Crimes Committed to the Prosecutor General of the Republic of Kazakhstan on: 1) Raider seizure of shares of "CAPEC", JSC belonged to me, with the participation of the National Security Committee of the Republic of Kazakhstan and 2) Embezzlement of the funds in particular large amount from the Bank. In 2019 the criminal case on the Raider seizure was initiated by the Anti-Corruption Office of the Republic of Kazakhstan, but after 2 months the case was closed "for lack of corpus delicti". The preinvestigation checking on embezzlement in the Bank turned into a series of numerous formal letters, snide responses and correspondence between the Prosecutor General's Office of the Republic of Kazakhstan, the Finance Monitoring Committee of the Ministry of Finance of the Republic of Kazakhstan, the National Bank of the Republic of Kazakhstan, the Liquidation Commission of the Bank, the Investigation Department of the Ministry of Internal Affairs of the Republic of Kazakhstan, the Police Department of Almaty city, etc. As a result, the case of embezzlement in the amount of over 100 million US dollars of public funds was transferred to the one of the districts police departments of Almaty city for investigation. At the time of filing the Claim, I wasn't familiar with the status of the investigation in the police department.

## 1. Status of the Case of Raider Seizure of Property

In February 2022, after the infamous January events in Kazakhstan, when peaceful processions of Kazakhstanis for the improvement of lives and social rights were turned by a group of conspirators led by the Chairman of the National Security Committee of the RK Masimov K.K. into a bloody massacre and an attempted coup, President of the Republic of Kazakhstan Tokayev K.K. declared the reforms of law enforcement and judicial systems, the course to the fight against corruption, against raiding, the revision and fair consideration of previously closed old cases and many other positive steps. The Chairman of the National Security Committee of the Republic of Kazakhstan, the Prosecutor General, the Minister of Internal Affairs and other heads of law enforcement state bodies were removed from their posts, relatives of the former President of the RK were prosecuted and arrested for corruption and other serious crimes. As a result, I, like many other victims of the corrupt kleptocratic regime in Kazakhstan, got a hope for justice and revision of unlawful court decisions

2

and criminal cases. In this regard on March 30th , 2022, my lawyer filed a complaint to the Prosecutor General of the RK on egregious violations of Law, committed during the consideration of my Statements on 3 raider seizure of my property and other serious crimes (please see Attachment # 1). This complaint contained the application on revocation of the resolution on termination of the criminal case on the raider seizure of property, based on the facts of numerous violations of civil, criminal and procedural legislation of Republic of Kazakhstan. At the same time I have submitted the letter to the President of the Republic of Kazakhstan on egregious violations of my civil and human rights and freedoms. On May 20th , 2022 a letter # 2-011522-22-41224 from the office of Prosecutor General of the RK was received, which informed that the unlawful resolution was cancelled and criminal case on my complaint was resumed by the Prosecutor General's office and sent to the Anti-Corruption Agency of RK for additional investigation and taking the reasonable procedural decision (please see Attachment # 2). The case was resumed, the participants, witnesses, and other persons were questioned again. However, on August 6, 2022, the investigator for the Department of Internal Affairs of the AntiCorruption Office of Nur- Sultan city Zarir E.M. terminated the pre-trial investigation due to lack of corpus delicti (please see Attachment # 3). At that, again as at last time, no explanations were taken from me personally, neither I, nor my lawyers were contacted with the request to interview me, although the request for an international assignment has been discussed with my lawyer and they knew my location and address in the USA. From the Resolution on termination, it is obvious that a number of important witness statements were not taken into account, such as the testimony of my lawyer Ryspekova Bibigul, ex-wife Zhaksylykova Laura, on the basis of their interest in the outcome in my favor, the testimony of my mother Sakhaeva Damesh Dzhunusovna was not taken into account at all (please see her explanation in Attachment # 4). At the same time, information about numerous executives of companies listed in the materials of the Resolution on termination and indicated as interrogated is totally untrue and unreliable, since not all of them were interrogated, such as Amirkhanov Yerzhan -- my brother, or Sembekova Kulbarshyn, and others. All the persons mentioned as interrogated actually have nothing to do with the fact of raider seizure at all, they do not know the circumstances of the raiding case, the questions that they had been asked and the testimonies had been picked were not related to raider seizure at all. However, their testimoies intentionally included in order to demonstrate the "activity" of the investigation and emphasizes the big scope of questioned witnesses. These persons are certainly related to the embezzlements from the Bank, however, the investigation materials

3

obviously indicated that they were not asked about the raiderseizure, and about the embezzlement in the Bank, what they should had been asked about, as e.g. where the loan moneys had been transferred, etc., but the questions they had been asked, had an obvious accusatory bias in my direction. At the same time, the witnesses who are really informed about the actual affairs in the 4 Bank have never been questioned. As well as witnesses who could show the fact of threats from Klebanov and Kan have not been interrogated, whereas my mother Sakhaeva D. gave the detailed testimony, but her testimony was simply omitted by the investigator. At the same time, the testimony of persons like Khvan S., Iskakov R., as well as persons indicated as directors like, Shakhmardanova Sh., Isabekova Z., who are directly subordinated and dependent on Klebanov and Kan, working at their enterprises, were interrogated and reflected in the case materials. It is obvious that the investigation was biased and conducted in the interest of formality and fast closing. I would like to emphasize once again that a number of important witnesses were not questioned, and objective testimony of witnesses was ignored due to the fact that they allegedly have an interest in the outcome in my favor. Once again I was never interviewed and the investigation was not interested in my explanations. On April 23, 2022, a response was also received from the National Security Committee of the Republic of Kazakhstan to a complaint from the Prosecutor General's Office that the pre-trial investigation against NSC's officials was closed in 2019, agreed with the Prosecutor's Office and the competence of the NSC KNB does not include consideration of the issues set out in the complaint (please see Attachment 5). The main reason of the termination of criminal case is my voluntarily signing of salepurchase agreements on transfer of the property belonged to me. According to the investigation while being in custody, under investigation by a group of 18 officers, I acted absolutely voluntarily when transferring property – the shares of a company worth hundreds of millions of dollars for less than 50 thousand dollars, voluntarily signed agreements on taking on the debts to the amount of $150 million, and purchase in turn of my property the shares of bankrupt enterprises. There can be only one motivation for investigator in making such a decision in the presence of my statement about the forcible seizure of my property, collusion and psychological pressure: it's an absolute violation of human rights and freedoms, it's a merge of personal and corrupt interests at all levels, up to the very top.

Please see Attachments # 1-5.

4

## 2. Status of the Case of Embezzlement in the Bank

With regard to my statement about embezzlement of funds from the Bank, as mentioned above, my attorney at law Nurkanov N., since 2019, has been receiving letters that have the nature of formal replies and only indicate the unwillingness of any of the authorities to have deal with my case. On March 30th, 2022 as it was mentioned above in Section # 1 "Status of the Case of Raider Seizure 5 of Property" my lawyer filed a complaint to the Prosecutor General of the RK about egregious violations of Law, committed during the consideration of my Statements on raider seizure of my property and other serious crimes (please see Attachment # 1).

This complaint contained the facts of numerous violations of legislation of Republic of Kazakhstan during consideration of my statement about the embezzlement of funds from the Bank. As a result a response from Prosecutor General's Office dated May 20th 2022 was received (please see Attachment # 2), in which it was indicated that the Case of embezzlement in "Eximbank Kazakhstan" JSC was sent to the Medeu district Police Department of Almaty city and on September 27th 2019 it was left without any consideration and written off to the "nomenclature file" due to the fact that there **was no act, that confirmed damage caused.** At the same time, the case was transferred to the State Finance Department of Almaty city to conduct audit and evaluation of facts on bringing the Bank to bankruptcy, and this was the seventh (!) state authority that has been involved and got assignments to make investigation on my Statement about thefts and bringing the Bank to bankruptcy. In addition, in the same time with the complaint to the Prosecutor General's Office of the Republic of Kazakhstan my lawyer and I filed requests and complaints to the Almaty Police Department and the Ministry of Internal Affairs of the Republic of Kazakhstan about the status of consideration of this case. In response to our appeals on April 25, 2022, we received letters which actually duplicate the response of the Prosecutor General's Office and informed that the case (we are talking about embezzlement of more than 100 million US dollars) was written off by the police department of the Medeu district Police Department of Almaty city on August 26, 2019 (please see Attachment 6,7). At the same time, these letters as well as letter from the Prosecutor General's Office contradict the movement of documents that took place in 2019. Thus, I received a letter dated September 13th 2019 from the Deputy of the Department of Economic Investigations of Almaty city of the Finance Monitoring Committee of Ministry of Finance of the RK on the transfer of materials to the Police Department of Almaty city (letter No.-1-06-10/6633, please see Attachment # 8), and, by its letter # 4-4-12/16269-4 dated November 26th 2019, the Almaty Police Department of the

5

Ministry of Internal Affairs of the RK responds to the lawyer's request that the appeal has been transferred to the Head of the Bostandyk `District Police Department of Almaty city for investigation (Please see Attachments # 9), at that indicating in details the plot of the case and listing by names all the persons involved in the case, both the applicant and the accused ones.

Further in 2020, at the request of lawyer Nurkanov's to the Bostandyk District Police Department about the progress in the case, the acting Head of the Department of the Police Department 6 replies that the material has been received and the answer will follow (please see Attachment # 10). In 2021, Nurkanov writes a complaint to the Bostandyk District Prosecutor's office about violations in consideration of the case by the Bostandyk Police Department, and request to the Bank to report about the results of consideration of the criminal case.

On January 24th 2021 he received a reply that the Bank had written a request to the Bostandyk District Police Department and, based on the results, he would be informed additionally (please Attachment # 11). The district Prosecutor, by letter dated February 24th 2021, informed lawyer Nurkanov that in criminal case # 197514031005879 (!) the terms of consideration were unlawfully interrupted by the District Police Department and this decision on interruption was canceled by the Prosecutor's office on February 24th 2021 and the case was again sent to the Bostandyk District Police Department for additional consideration (please see Attachment # 12). At this, both - the Prosecutor and the Bank in their replies indicated the criminal case which in fact was not related neither to me nor to my statement. According to the above-mentioned request to the State Finance Department of Almaty city regarding bringing the Bank to bankruptcy, in response to the letter from my lawyer Rakhimbayev M.M., another formal reply was received that the investigation of the cases related to bankruptcy are not within the competence of the Department (please Attachments # 13, 13/1).

All of the above mentioned facts on the movement of my statement about the embezzlement in the Bank obviously indicate the deliberate delay of the investigation, the collusion between various authorities of the Republic of Kazakhstan, including the central offices of the Prosecutor General, the Financial Monitoring Committee of the Ministry of Finance of the Republic of Kazakhstan, the National Bank of the Republic of Kazakhstan, the Ministry of Internal Affairs of the Republic of Kazakhstan in order to conceal the crime of embezzlement to the amount of more than $ 100 million from the Bank, in which, contrary to the

6

statement of the Financial Monitoring Committee, outstanding debts to state and quasi-state companies of more than $ 100 million have been suspended. In the end, the material was "successfully" written off in the Almaty Police Department, which actually under the legislation doesn't fall under their jurisdiction, and it doesn't matter in which of its district departments. Apparently, it appeared to be the best office suited for write-offs of such cases, and with which the suspects have the most convenient relationship for the operation. As indicated previously this is another egregious proof of corruption in the law enforcement state systems of the Republic of Kazakhstan, including the highest leadership levels.

Please see Attachments # 1,2, 4-13, 13/1 7

### 3. Harassment of My Relatives

Unfortunately, the harassment and persecution against my relatives have not ended up to this day. My brother Amirkhanov Yerzhan, whose case was indicated in the Statement of Claim, as a result of the criminal case falsified against him, his wife Amirkhanova Saule and me, was forced to leave the Republic of Kazakhstan in 2019. The criminal case was actually fabricated against me, the purpose was to put me in the International wanted list, which has been done. The purpose of Klebanov and Kan – these criminals, is capturing me, initiation a new criminal case in order to declare me guilty in all the embezzlements in the Bank, since the bankruptcy and liquidation of the Bank will continue for a long time, and no one has been held responsible for this crime so far. My brother Yerzhan, actually becoming the victim of this harassment against me, was forced to leave his homeland and have been abroad for more than 3 years. At the moment, my lawyer has filed another applications for termination of the case, but the outcome of the procedural actions, taking into account the outcome on raiding case, is not obvious. Unfortunately, the court decisions that have entered into force in the civil case on recognizing me as a debtor for the Bank's debts in the amount of 150 million US dollars had negative consequences for my relatives. Starting from 2019 to the present my ex-wife Zhaksylykova L.S. has been litigating with the judicial and execution systems of the Republic of Kazakhstan. In 2020 as a result of a blatant violation of the legislation of the Republic of Kazakhstan and execution of the above-mentioned unlawful court decisions she was recognized as a debtor for the Bank's debts for amount of 150 million US dollars along with me. As a result of unlawful decisions and actions of bailiffs all her property, including private house in which she lived with our minor son, were arrested and sold at auctions. A woman with a small child actually was put

7

on the street, the law enforcement and judicial system of Kazakhstan in action brings people to a disenfranchised position, deprives them of their inalienable personal rights, such as the right to housing. So, Zhaksylykova L.S. reached the last instance in her attempt to contest illegal decisions of lower courts and the actions of enforcement system to collect "my debts" from her under the Agreement signed in the pre-trial detention facility of the NSC dated July 23, 2018 and the decisions of the Economic court of Almaty city to force me to execute it. By the Decision of the Board of Civil Courts of the Supreme Court of the Republic of Kazakhstan from August 3d 2020 (please see Attachment # 14) she was refused in revision of earlier court decisions, which in fact means that the Supreme Court of the Republic of Kazakhstan legalized the signing of unlawful bonded contracts in the pre-trial detention facility, the recognition of the 8 former spouse as a debtor for debts unrelated to her, and the forced seizure of her personal property.

Please see Attachment # 14.

## 4. Moral Pressure and Damage Caused

As stated in the lawsuit and as follows from the subsequent events described above, since 2017, as a result of the criminal actions of the persons described above, we have been fighting for the restoration of justice, our property and personal rights in courts, in various state authorities and structures. We are forced to bear the burden of psychological pressure, humiliation and deprivation, we are suffering from forced departure from our homeland - actual emigration, loss of communication with loved ones, habitual lifestyle and business, lack of work, forced seizure of personal property and even the struggle for housing. All this cause me, my family and my loved ones the deepest irreparable moral damage and psychological trauma. These days I have been in particular depressed condition, feeling a severe psychological pain due to my irreparable loss - the death of my mother Sakhayeva Damesh Zhunusovna, she passed away on October 06, 2022, regretfully hadn't seen me since 2018, my forced departure from Kazakhstan. The whole situation with my arrest, false accusations, losses and departure, long-term persecution undermined her health, aggravated her moral and psychological state and, sadly, provoked her sudden demise.

The damage and losses caused to my personal and business reputation as a result of falsification of the criminal case, arrest and seizure of business, affected the inability to engage in my usual activity, loss of sources of income, breakup of business relations. All this time Klebanov and Kan continued to denigrate my reputation by

8

publishing various fictitious materials in media, social networks, including posting fictitious interviews on my behalf (please see Attachment # 15). Besides, since my leave Kazakhstan in 2018, I've been in a constant state of fear, anxiety and moral pressure, as I've being chased after by suspicious men, which didn't use official communication channels, but sought for me in unofficial, secret way. These people repeatedly come to my places, e.g.:

• in the fall of 2020, two men came to my address in Manhattan, asked if I lived there, showed my photo to the concierge. After that I had to leave that address, and changed my addresses several times.

• on June 25, 2021, three men came to my previous address in Brooklyn and according to the person living there showed my photo, and asked about me. When the tenant offered to call my 9 lawyer and invite him, they refused, saying they only needed me. According to him, they were 2 men of Asian nationality and 1 European. I assume that these people and those came to the first address were from the National Security Committee of the RK as the next day on June 26, 2021, at 11.30am I received phone calls from the Kazakhstani number +7 (717) 276-10- 45, appeared to be the reception of the NSC RK.

• On October 5, 2021, somebody again came to the old address in Manhattan and asked concierge about me.

All these causes an extreme concern about the safety of me and my family. The NSC RK in collusion with Klebanov and Kan treacherously violated my civil rights and freedoms, falsified a criminal case against me and arrested me. While in detention facility of NSC RK in Astana city (Kazakhstan) by blackmail and threats of real conviction they seized my property and imposed obligations on the funds actually embezzled by them. They falsify a criminal case against my wife and seized her property. During my current absence in Kazakhstan a new criminal case was falsified against me, my brother and his wife. My persecutors are organized group whose purpose is to conceal the facts of embezzlement of multimillion sums and withdrawal of funds outside the Republic of Kazakhstan.

Prior to the events indicated in the lawsuit and this addendum, I was one of the shareholders of a large holding company in Kazakhstan, the total capitalization of which was estimated at more than $ 300 million, I was the President of an energy company that I had created from the scratch, I attracted the world's largest financial institutions as partners and participated in major industrial projects. According to Forbs Kazakhstan magazine, as of May 2017, prior to these events, my personal

9

fortune was estimated at 135 million US dollars, which, in addition to the material component of real business assets, composed of my personal goodwill, my good name, my business reputation, the reputation of a person who was known and recognized by business world in Kazakhstan and abroad, and to whom irreparable damage was inflicted as a result of criminal intentional actions. In this regard, I consider appropriate, adequate and reasonable to declare the loss of business reputation, coupled with moral damage, which I hereby estimate at 45 million USD dollars. I will consider this amount an adequate compensation for losses, hardships, moral damage that was inflicted on me personally, my family and my relatives. 10

Thus, based on the above additional facts I STAND ON MY STATEMENT AND ACCUSE the citizens of the Republic of Kazakhstan:

1. Klebanov Aleksandr Y.,

2. Kan Sergey V.,

and the National Security Committee of the Republic of Kazakhstan in the following:

• Falsification of the criminal case, illegal arrest and detention me for 3 months in the Pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan;

• Coercion under pressure and threats to sign on unacceptable terms Contracts for the sale - purchase of property belonging to me in the form of 31% shares of JSC "CAPEC", as well as a bonded Agreement on compensation for damages and accepting debts of the bankrupt JSC "Eximbank Kazakhstan" and Contracts for shares of the aforementioned Bank;

• Falsification of a criminal case by Economic Investigation Agency of the State Finance Department of the Republic of Kazakhstan in relation to my wife Artambayeva Gulnara D., in order to put pressure on me and seizure her property – 7% of the shares of JSC "CAPEC";

• Prosecution of me in civil Court, putting pressure on the courts to make illegal judgment and decisions against me, and my relatives;

• Falsification of the criminal case against my brother Amirkhanov Yerzhan and his wife Amirkhanova Saule, illegal putting me in the Internal and Interstate Wanted List;

10

- The commission of illegal performance actions against my ex-wife of Zhaksylykova Laura S., and the unlawful forced seizure of her personal property;

- Inflicting moral damage to me, expressed in illegal detention in the pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan for 3 months;

- Infliction of deep psychological trauma to me, my family, people close to me, expressed in conducting long-term judicial and enforcement lawsuits, forced emigration from Kazakhstan for me and my relatives, loss of communication with loved ones, loss of habitual lifestyle, business, work, the deepest stress due to harassment and threats;

- Irreparable damage to my business reputation, honor and dignity of citizen, a person, and an entrepreneur.

**I ASK THE COURT:**

1. To recognize as illegal the Agreement on Compensation of Damages, Contracts for the Sale-Purchase of shares of "Eximbank Kazakhstan" JSC signed during detention in the pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan, as well as documents (contracts) signed pursuant to the Agreement on Compensation of Damages.

2. To cancel unlawful decisions taken by the courts of the Republic of Kazakhstan in pursuance of contracts and agreements signed during detention in the pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan.

3. To oblige Klebanov A.Y., Kan S.V., the National Security Committee of the Republic of Kazakhstan to compensate jointly me the Material damage in the amount of 90 (ninety) million US dollars, as well as to pay moral damage in the amount of 45 (forty five) million US dollars. I estimate the total damage caused to me in the amount of 135 (one hundred and thirty-five) million US dollars.

4. To oblige Klebanov A.Y., Kan S.V., and the National Security Committee of the Republic of Kazakhstan to compensate jointly the material damage to my wife Artambayeva G.D. in the amount of 20 (twenty) million US dollars, and moral damage in the amount of 10 (ten) million US dollars, the total damage in the amount of 30 (thirty) million US dollars.

Yours sincerely,
Yerkyn Amirkhanov

Attachments – 15 on 72 pages

*March 22, 2023*

*on this 22nd day of March, 2023.*

*Dorothy M Toner*

DOROTHY M. TONER
Notary Public, State of New Jersey
Comm. # 50187222
My Commission Expires 03/01/2027

11

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

Brooklyn Division



| | | |
|---|---|---|
| **Amirkhanov Yerkyn** | ) | Case No. __23-cv-2399-LDH__ |
| | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☐ Yes ☒ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| **Klebanov Alexandr Yakovlevich and Kan Sergey** | ) | |
| **Vladimirovich and The National Security Committee** | ) | |
| **of the Republic of Kazahstan** | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names.)* | | |

# AMENDED COMPLAINT FOR A CIVIL CASE

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Amirkhanov Yerkyn |
| Street Address | 815 Avenue U, Floor 2 |
| City and County | Brooklyn, New York |
| State and Zip Code | NY 11223 |
| Telephone Number | (347)-216-9564 |
| E-mail Address | yerkyn.amirkhanov@gmail.com |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Klebanov Alexandr Yakovlevich |
| Job or Title *(if known)* | Central-Asian Power Energy Company, JSC; Chairman |
| Street Address | 12 Makataveva Street, Apt 53 |
| City and County | Almaty City |
| State and Zip Code | Republic of Kazakhstan, 050004 |
| Telephone Number | +7 (701) 111 92 93; +7 (7172) 64 57 50; +7 (727) 258 49 41, |
| E-mail Address *(if known)* | alex.yk@icloud.com, info@energy.kz, pr@energy.kz |

Defendant No. 2

| | |
|---|---|
| Name | Kan Sergey Vladimirovich |
| Job or Title *(if known)* | Central-Asian Power Energy Company, JSC; Shareholder |
| Street Address | 101 Panfilova Street, Apt 62 |
| City and County | Almaty City |
| State and Zip Code | Republic of Kazakhstan, 050000 |
| Telephone Number | +7 (701) 111 01 55 |
| E-mail Address *(if known)* | S.Kan@inbox.ru; skan@kgnt.kz; s.kan.galaxynote@gmail.com |

Defendant No. 3

| | |
|---|---|
| Name | The National Security Committee of the Republic of Kazakhstan |
| Job or Title *(if known)* | |
| Street Address | 66 Syganak Street |
| City and County | Astana City |
| State and Zip Code | Republic of Kazakhstan, 010000 |
| Telephone Number | +7 (7172) 76-10-81 |
| E-mail Address *(if known)* | press@knb.kz |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

| E-mail Address *(if known)* | |
|---|---|

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

N/A

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* Amirkhanov Yerkyn , is a citizen of the State of *(name)* resident of U.S.A. .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* , is incorporated under the laws of the State of *(name)* , and has its principal place of business in the State of *(name)* .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

The defendant, *(name)* [Klebanov Alexandr and Kan Sergey], is a citizen of
the State of *(name)* [                                    ]. Or is a citizen of
*(foreign nation)* [Republic of Kazakthan.          ].

b.    If the defendant is a corporation

The defendant, *(name)* [The NSC of RK            ], is incorporated under
the laws of the State of *(name)* [                          ], and has its
principal place of business in the State of *(name)* [                  ]
Or is incorporated under the laws of *(foreign nation)* [Republic of Kazakhstan  ]
and has its principal place of business in *(name)* [                  ]

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

KLEBANOV ALEXANDR and KAN SERGEY together with the National Security Committee of the Republic of Kazakhstan owe the plaintiff 90 (ninety) million US dollars for direct damages and 45 (forty five) million US dollars for moral damage suffered during detention.
KLEBANOV ALEXANDR and KAN SERGEY together with the National Security Committee of the Republic of Kazakhstan owe G.D. Artambayeva, the plaintiff's wife 20(twenty) million US dollars in direct damages and 10 (ten) million US dollars for moral damage

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

Case 1:23-cv-02399-LDH-CLP    Document 6    Filed 04/21/23    Page 5 of 18 PageID #: 138

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

In 2018, KLEBANOV ALEXANDR and KAN SERGEY, my former business partners at Joint Stock Company "Central Asian Power and Energy Company" (CAPEC JSC), having entered into a criminal conspiracy with the leadership of the National Security Committee of the Republic of Kazakhstan, treacherously violated my civil rights, property rights, and freedoms by falsifying a criminal case against me.

The judicial authorities of the Republic of Kazakhstan, like the Almaty City Court and its district judicial bodies, consider claims and complaints in favor of our opponents, despite significant violations of the procedural and substantive rules. At the same time, the arguments of our side are not taken into account

Due to the criminal conspiracy and the judicial authorities' ruling, I was arrested for 3 months. During this period, I underwent, moral, physical, and psychological pressure and was threatened with a real conviction. To dismiss the real conviction, they seized my property whereby I was required to sign a contract for the sale of property handing over 31% of my shares at CAPEC JSC to them, as well as sign bonded agreements to take on all the debts of a bankrupt bank, Eximbank Kazakhstan JSC, which is owned by CAPEC JSC and had to sign an agreement for the purchase of shares of the above bank as well. In the future, these agreements caused the decision on seizing the property of my relatives.

The result of the signing of the aforementioned Agreement in the future was the prosecution of me in civil procedure, compulsion to confess debts, illegal court decisions taken in civil procedure, putting me on the internal and interstate wanted list, illegal actions against the property of my former wife L.Zhaksylykova, and also with the aim of exerting pressure on me, falsification of a criminal case against my brother Amirkhanov Yerzhan and his wife Amirkhanova Saula.

In addition, Klebanov and Kan falsified a criminal case involving the Economic Investigation Service of the Ministry of Finance of the Republic of Kazakhstan against my wife G.D.Artambayeva, to put pressure on me and raider seizure of her property - 7% of the shares of CAPEC JSC.

Therefore, I accuse KLEBANOV ALEXANDR YAKOVLEVICH and KAN SERGEY VLADIMIROVICH together with the National Security Committee of the Republic of Kazakhstan for repeated violations of my rights and freedoms as a citizen of the Republic of Kazakhstan, my right to freedom of entrepreneurial activity, guaranteed to me by the Constitution of the Republic of Kazakhstan, as follows:

1.      a raider seizure of my property, and causing me direct damage in the amount of 90 (ninety) million US dollars.

2.      a raider seizure of property of my wife G.D.Artambayeva and causing direct damage to her in the amount of 20 (twenty) million US dollars;

3.      inflicting moral damage on me as the illegal detention and being in the detention facility of the NSC of the Republic of Kazakhstan for 3 months, moral and psychological trauma, and damage to business reputation and health, which I estimate at 45 (forty five) million US dollars;

4.      inflicting moral damage on my wife G.D.Artambayeva as psychological suffering, the threat of arrest, forced wandering for months outside the country and undermining her business reputation, estimated by her at 10 (ten) million US dollars.

IV.    **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

---

I HEREBY REQUEST THE COURT:
1.      To recognize as illegal the Agreement on compensation, sales contracts of shares of Eximbank Kazakhstan JSC signed in custody in the detention facility of the National Security Committee of the Republic of Kazakhstan, as well as all documents (agreements) signed in pursuance of the Agreement on compensation signed in the detention facility of the National Security Committee of the Republic of Kazakhstan.
2.      To cancel illegal decisions taken by the courts of the Republic of Kazakhstan in pursuance of contracts and agreements signed in the conditions of detention in the pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan.
3.      To oblige KLEBANOV ALEXANDR YAKOVLEVICH and KAN SERGEY VLADIMIROVICH JOINTLY WITH the National Security Committee of the Republic of Kazakhstan to compensate me for material damage in the amount of 90 (ninety) million USD, as well as moral damage in the amount of 45 (forty five) million USD, which in total amounting to 135 (one hundred thirty five) million USD.
4.      To oblige KLEBANOV ALEXANDR YAKOVLEVICH and KAN SERGEY VLADIMIROVICH, JOINTLY WITH the National Security Committee of the Republic of Kazakhstan to compensate material damage to my wife G.D. Artambayeva in the amount of 20 (twenty) million USD, as well as moral damage in the amount of 10 (ten) million USD, which in total amounts to 30 (thirty) million USD.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     April 21, 2023

Signature of Plaintiff

Printed Name of Plaintiff     Yerkyn Amirkhanov

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

| | |
|---|---|
| Street Address | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address | |

**TO THE UNITED STATES DISTRICT COURT**
**for the Eastern District of New York**

### AMENDMENT TO THE STATEMENT OF CLAIM

Hereby, I, Amirkhanov Yerkyn Adamiyanovich, born on May 04, 1967, a citizen of the Republic of Kazakhstan, currently residing in the United States of America having "Pending Political Asylum" status protected by the United States of America - forced to apply with this Addendum to the Statement of Claim filed in accordance with US law.

On June 12, 2020, I filed a lawsuit in the Supreme Court of the United States of America against the citizens of the Republic of Kazakhstan:

1. Klebanov Alexandr Yakovlevich, born on April 27th 1964,
2. Kan Sergey Vladimirovich, born on February 10th 1968,

and

The National Security Committee of the Republic of Kazakhstan (hereinafter referred to as "the NSC RK")

on the recognition as illegal the Agreement on Procedure of Compensation of Damages in relation to "Central-Asian Power-Energy Company", JSC(hereinafter referred to as "the CAPEC, JSC"), the Agreements on Procedure of Compensation of Damages in relation to "Eximbank Kazakhstan" JSC, Contract of sales-purchase of the shares of "Eximbank Kazakhstan" JSC (hereinafter referred to as "Bank") signed by me during my detention in the pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan, as well as all documents (agreements) signed in pursuance of the Agreements on Compensation of Damages, signed in the detention facility of the NSC RK. This criminal case against me was fabricated by above-mentioned persons in collusion with the leadership and the officers of NSC RK. The Statement of Claim filed and contained claim for compensation of direct material damage caused in the form of property belonged to me and my spouse and seized as a result of the execution of contracts signed during my detention in the pre-trial detention facility of the NSC RK, compensation of moral damage caused, loss of honor, dignity and business reputation.

Since the filing of this claim in the Supreme Court of the United States of America, the country in which I am now and which protection I have honorably used, I nevertheless haven't suspend fighting for my rights in all available and possible ways in the Republic of Kazakhstan - country of my citizenship and where the crimes have been committed, trying to revoke illegal court decisions, taking measures to restore justice, getting compensation for illegally seized property and protecting my honor, dignity and business reputation.

As it was indicated in my Statement of Claim, in January 2019 I filed two Statements on the Crimes Committed to the Prosecutor General of the Republic of Kazakhstan on:

1) Raider seizure of shares of "CAPEC", JSC belonged to me, with the participation of the National Security Committee of the Republic of Kazakhstan and

2) Embezzlement of the funds in particular large amount from the Bank.

In 2019 the criminal case on the Raider seizure was initiated by the Anti-Corruption Office of the Republic of Kazakhstan, but after 2 months the case was closed "for lack of corpus delicti". The pre-investigation checking on embezzlement in the Bank turned into a series of numerous formal letters, snide responses and correspondence between the Prosecutor General's Office of the Republic of Kazakhstan, the Finance Monitoring Committee of the Ministry of Finance of the Republic of Kazakhstan, the National Bank of the Republic of Kazakhstan, the Liquidation Commission of the Bank, the Investigation Department of the Ministry of Internal Affairs of the Republic of Kazakhstan, the Police Department of Almaty city, etc. As a result, the case of embezzlement in the amount of over 100 million US dollars of public funds was transferred to the one of the districts police departments of Almaty city for investigation. At the time of filing the Claim, I wasn't familiar with the status of the investigation in the police department.

## 1. Status of the Case of Raider Seizure of Property

In February 2022, after the infamous January events in Kazakhstan, when peaceful processions of Kazakhstanis for the improvement of lives and social rights were turned by a group of conspirators led by the Chairman of the National Security Committee of the RK Masimov K.K. into a bloody massacre and an attempted coup, President of the Republic of Kazakhstan Tokayev K.K. declared the reforms of law enforcement and judicial systems, the course to the fight against corruption, against raiding, the revision and fair consideration of previously closed old cases and many other positive steps. The Chairman of the National Security Committee of the Republic of Kazakhstan, the Prosecutor General, the Minister of Internal Affairs and other heads of law enforcement state bodies were removed from their posts, relatives of the former President of the RK were prosecuted and arrested for corruption and other serious crimes. As a result, I, like many other victims of the corrupt kleptocratic regime in Kazakhstan, got a hope for justice and revision of unlawful court decisions and criminal cases.

In this regard on March 30th, 2022, my lawyer filed a complaint to the Prosecutor General of the RK on egregious violations of Law, committed during the consideration of my Statements on

2

raider seizure of my property and other serious crimes (please see Attachment # 1). This complaint contained the application on revocation of the resolution on termination of the criminal case on the raider seizure of property, based on the facts of numerous violations of civil, criminal and procedural legislation of Republic of Kazakhstan. At the same time I have submitted the letter to the President of the Republic of Kazakhstan on egregious violations of my civil and human rights and freedoms.

On May 20th, 2022 a letter # 2-011522-22-41224 from the office of Prosecutor General of the RK was received, which informed that the unlawful resolution was cancelled and criminal case on my complaint was resumed by the Prosecutor General's office and sent to the Anti-Corruption Agency of RK for additional investigation and taking the reasonable procedural decision (please see Attachment # 2).

The case was resumed, the participants, witnesses, and other persons were questioned again. However, on August 6, 2022, the investigator for the Department of Internal Affairs of the Anti-Corruption Office of Nur- Sultan city Zarir E.M. terminated the pre-trial investigation due to lack of corpus delicti (please see Attachment # 3). At that, again as at last time, no explanations were taken from me personally, neither I, nor my lawyers were contacted with the request to interview me, although the request for an international assignment has been discussed with my lawyer and they knew my location and address in the USA. From the Resolution on termination, it is obvious that a number of important witness statements were not taken into account, such as the testimony of my lawyer Ryspekova Bibigul, ex-wife Zhaksylykova Laura, on the basis of their interest in the outcome in my favor, the testimony of my mother Sakhaeva Damesh Dzhunusovna was not taken into account at all (please see her explanation in Attachment # 4). At the same time, information about numerous executives of companies listed in the materials of the Resolution on termination and indicated as interrogated is totally untrue and unreliable, since not all of them were interrogated, such as Amirkhanov Yerzhan – my brother, or Sembekova Kulbarshyn, and others. All the persons mentioned as interrogated actually have nothing to do with the fact of raider seizure at all, they do not know the circumstances of the raiding case, the questions that they had been asked and the testimonies had been picked were not related to raider seizure at all. However, their testimoies intentionally included in order to demonstrate the "activity" of the investigation and emphasizes the big scope of questioned witnesses. These persons are certainly related to the embezzlements from the Bank, however, the investigation materials obviously indicated that they were not asked about the raider seizure, and about the embezzlement in the Bank, what they should had been asked about, as e.g. where the loan moneys had been transferred, etc., but the questions they had been asked, had an obvious accusatory bias in my direction. At the same time, the witnesses who are really informed about the actual affairs in the

3

Bank have never been questioned. As well as witnesses who could show the fact of threats from Klebanov and Kan have not been interrogated, whereas my mother Sakhaeva D. gave the detailed testimony, but her testimony was simply omitted by the investigator. At the same time, the testimony of persons like Khvan S., Iskakov R., as well as persons indicated as directors like, Shakhmardanova Sh., Isabekova Z., who are directly subordinated and dependent on Klebanov and Kan, working at their enterprises, were interrogated and reflected in the case materials.

It is obvious that the investigation was biased and conducted in the interest of formality and fast closing. I would like to emphasize once again that a number of important witnesses were not questioned, and objective testimony of witnesses was ignored due to the fact that they allegedly have an interest in the outcome in my favor. <u>Once again I was never interviewed and the investigation was not interested in my explanations.</u>

On April 23, 2022, a response was also received from the National Security Committee of the Republic of Kazakhstan to a complaint from the Prosecutor General's Office that the pre-trial investigation against NSC's officials was closed in 2019, agreed with the Prosecutor's Office and the competence of the NSC KNB does not include consideration of the issues set out in the complaint (please see Attachment 5).

The main reason of the termination of criminal case is <u>my voluntarily</u> signing of sale-purchase agreements on transfer of the property belonged to me. According to the investigation while being in custody, under investigation by a group of 18 officers, I acted absolutely voluntarily when transferring property – the shares of a company worth hundreds of millions of dollars for less than 50 thousand dollars, voluntarily signed agreements on taking on the debts to the amount of $150 million, and purchase in turn of my property the shares of bankrupt enterprises. There can be only one motivation for investigator in making such a decision in the presence of my statement about the forcible seizure of my property, collusion and psychological pressure: it's an absolute violation of human rights and freedoms, it's a merge of personal and corrupt interests at all levels, up to the very top.

Please see Attachments # 1-5.

### 2. Status of the Case of Embezzlement in the Bank

With regard to my statement about embezzlement of funds from the Bank, as mentioned above, my attorney at law Nurkanov N., since 2019, has been receiving letters that have the nature of formal replies and only indicate the unwillingness of any of the authorities to have deal with my case. On March 30th, 2022 as it was mentioned above in Section # 1 *"Status of the Case of Raider Seizure*

4

*of Property"* my lawyer filed a complaint to the Prosecutor General of the RK about egregious violations of Law, committed during the consideration of my Statements on raider seizure of my property and other serious crimes (please see Attachment # 1). This complaint contained the facts of numerous violations of legislation of Republic of Kazakhstan during consideration of my statement about the embezzlement of funds from the Bank. As a result a response from Prosecutor General's Office dated May 20th 2022 was received (please see Attachment # 2), in which it was indicated that the Case of embezzlement in"Eximbank Kazakhstan" JSC was sent to the Medeu district Police Department of Almaty city and on September 27th 2019 it was left without any consideration and written off to the "nomenclature file" due to the fact that there **was no act, that confirmed damage caused**. At the same time, the case was transferred to the State Finance Department of Almaty city to conduct audit and evaluation of facts on bringing the Bank to bankruptcy, and this was the seventh (!) state authority that has been involved and got assignments to make investigation on my Statement about thefts and bringing the Bank to bankruptcy.

In addition, in the same time with the complaint to the Prosecutor General's Office of the Republic of Kazakhstan my lawyer and I filed requests and complaints to the Almaty Police Department and the Ministry of Internal Affairs of the Republic of Kazakhstan about the status of consideration of this case. In response to our appeals on April 25, 2022, we received letters which actually duplicate the response of the Prosecutor General's Office and inform that the case (we are talking about embezzlement of more than 100 million US dollars) was written off by the police department of the Medeu district Police Department of Almaty city on August 26, 2019 (please see Attachment 6,7).

At the same time, these letters as well as letter from the Prosecutor General's Office contradict the movement of documents that took place in 2019. Thus, I received a letter dated September 13th 2019 from the Deputy of the Department of Economic Investigations of Almaty city of the Finance Monitoring Committee of Ministry of Finance of the RK on the transfer of materials to the Police Department of Almaty city (letter No.-1-06-10/6633, please see Attachment # 8), and, by its letter # 4-4-12/16269-4 dated November 26th 2019, the Almaty Police Department of the Ministry of Internal Affairs of the RK responds to the lawyer's request that the appeal has been transferred to the Head of the Bostandyk `District Police Department of Almaty city for investigation (Please see Attachments # 9), at that indicating in details the plot of the case and listing by names all the persons involved in the case, both the applicant and the accused ones.

Further in 2020, at the request of lawyer Nurkanov's to the Bostandyk District Police Department about the progress in the case, the acting Head of the Department of the Police Department

5

replies that the material has been received and the answer will follow (please see Attachment # 10). In 2021, Nurkanov writes a complaint to the Bostandyk District Prosecutor's office about violations in consideration of the case by the Bostandyk Police Department, and request to the Bank to report about the results of consideration of the criminal case. On January 24th 2021 he received a reply that the Bank had written a request to the Bostandyk District Police Department and, based on the results, he would be informed additionally (please Attachment # 11). The district Prosecutor, by letter dated February 24th 2021, informed lawyer Nurkanov that in criminal case # 197514031005879 (!) the terms of consideration were unlawfully interrupted by the District Police Department and this decision on interruption was canceled by the Prosecutor's office on February 24th 2021 and the case was again sent to the Bostandyk District Police Department for additional consideration (please see Attachment # 12). At this, both - the Prosecutor and the Bank in their replies indicated the criminal case which in fact was not related neither to me nor to my statement.

According to the above-mentioned request to the State Finance Department of Almaty city regarding bringing the Bank to bankruptcy, in response to the letter from my lawyer Rakhimbayev M.M., another formal reply was received that the investigation of the cases related to bankruptcy are not within the competence of the Department (please Attachments # 13, 13/1).

All of the above mentioned facts on the movement of my statement about the embezzlement in the Bank obviously indicate the deliberate delay of the investigation, the collusion between various authorities of the Republic of Kazakhstan, including the central offices of the Prosecutor General, the Financial Monitoring Committee of the Ministry of Finance of the Republic of Kazakhstan, the National Bank of the Republic of Kazakhstan, the Ministry of Internal Affairs of the Republic of Kazakhstan in order to conceal the crime of embezzlement to the amount of more than $ 100 million from the Bank, in which, contrary to the statement of the Financial Monitoring Committee, outstanding debts to state and quasi-state companies of more than $ 100 million have been suspended. In the end, the material was "successfully" written off in the Almaty Police Department, which actually under the legislation doesn't fall under their jurisdiction, and it doesn't matter in which of its district departments. Apparently it appeared to be the best office suited for write-offs of such cases, and with which the suspects have the most convenient relationship for the operation. As indicated previously this is another egregious proof of corruption in the law enforcement state systems of the Republic of Kazakhstan, including the highest leadership levels.

Please see Attachments # 1,2, 4-13, 13/1

6

### 3. Harassment of My Relatives

Unfortunately, the harassment and persecution against my relatives have not ended up to this day.

My brother Amirkhanov Yerzhan, whose case was indicated in the Statement of Claim, as a result of the criminal case falsified against him, his wife Amirkhanova Saule and me, was forced to leave the Republic of Kazakhstan in 2019. The criminal case was actually fabricated against me, the purpose was to put me in the International wanted list, which has been done. The purpose of Klebanov and Kan – these criminals, is capturing me, initiation a new criminal case in order to declare me guilty in all the embezzlements in the Bank, since the bankruptcy and liquidation of the Bank will continue for a long time, and no one has been held responsible for this crime so far. My brother Yerzhan, actually becoming the victim of this harassment against me, was forced to leave his homeland and have been abroad for more than 3 years. At the moment, my lawyer has filed another applications for termination of the case, but the outcome of the procedural actions, taking into account the outcome on raiding case, is not obvious.

Unfortunately, the court decisions that have entered into force in the civil case on recognizing me as a debtor for the Bank's debts in the amount of 150 million US dollars had negative consequences for my relatives. Starting from 2019 to the present my ex-wife Zhaksylykova L.S. has been litigating with the judicial and execution systems of the Republic of Kazakhstan. In 2020 as a result of a blatant violation of the legislation of the Republic of Kazakhstan and execution of the above mentioned unlawful court decisions she was recognized as a debtor for the Bank's debts for amount of 150 million US dollars along with me. As a result of unlawful decisions and actions of bailiffs all her property, including private house in which she lived with our minor son, were arrested and sold at auctions. A woman with a small child actually was put on the street, the law enforcement and judicial system of Kazakhstan in action brings people to a disenfranchised position, deprives them of their inalienable personal rights, such as the right to housing. So, Zhaksylykova L.S. reached the last instance in her attempt to contest illegal decisions of lower courts and the actions of enforcement system to collect "my debts" from her under the Agreement signed in the pre-trial detention facility of the NSC dated July 23, 2018 and the decisions of the Economic court of Almaty city to force me to execute it. By the Decision of the Board of Civil Courts of the Supreme Court of the Republic of Kazakhstan from August 3d 2020 (please see Attachment # 14) she was refused in revision of earlier court decisions, which in fact means that the Supreme Court of the Republic of Kazakhstan legalized the signing of unlawful bonded contracts in the pre-trial detention facility, the recognition of the

former spouse as a debtor for debts unrelated to her, and the forced seizure of her personal property.

Please see Attachment # 14.

### 4. Moral Pressure and Damage Caused

As stated in the lawsuit and as follows from the subsequent events described above, since 2017, as a result of the criminal actions of the persons described above, we have been fighting for the restoration of justice, our property and personal rights in courts, in various state authorities and structures. We are forced to bear the burden of psychological pressure, humiliation and deprivation, we are suffering from forced departure from our homeland - actual emigration, loss of communication with loved ones, habitual lifestyle and business, lack of work, forced seizure of personal property and even the struggle for housing. All this cause me, my family and my loved ones the deepest irreparable moral damage and psychological trauma. These days I have been in particular depressed condition, feeling a severe psychological pain due to my irreparable loss - the death of my mother Sakhayeva Damesh Zhunusovna, she passed away on October 06, 2022, regretfully hadn't seen me since 2018, my forced departure from Kazakhstan. The whole situation with my arrest, false accusations, losses and departure, long-term persecution undermined her health, aggravated her moral and psychological state and, sadly, provoked her sudden demise.

The damage and losses caused to my personal and business reputation as a result of falsification of the criminal case, arrest and seizure of business, affected the inability to engage in my usual activity, loss of sources of income, breakup of business relations. All this time Klebanov and Kan continued to denigrate my reputation by publishing various fictitious materials in media, social networks, including posting fictitious interviews on my behalf (please see Attachment # 15).

Beside, since my leave Kazakhstan in 2018, I've been in a constant state of fear, anxiety and moral pressure, as I've being chased after by suspicious men, which didn't use official communication channels, but sought for me in unofficial, secret way. These people repeatedly come to my places, e.g.:

- in the fall of 2020, two men came to my address in Manhattan, asked if I lived there, showed my photo to the concierge. After that I had to leave that address, and changed my addresses several times.
- on June 25, 2021, three men came to my previous address in Brooklyn and according to the person living there showed my photo, and asked about me. When the tenant offered to call my

8

lawyer and invite him, they refused, saying they only needed me. According to him, they were 2 men of Asian nationality and 1 European. I assume that these people and those came to the first address were from the National Security Committee of the RK as the next day on June 26, 2021, at 11.30am I received phone calls from the Kazakhstani number +7 (717) 276-10-45, appeared to be the reception of the NSC RK.

- On October 5, 2021, somebody again came to the old address in Manhattan and asked concierge about me.

All these causes an extreme concern about the safety of me and my family. The NSC RK in collusion with Klebanov and Kan treacherously violated my civil rights and freedoms, falsified a criminal case against me and arrested me. While in detention facility of NSC RK in Astana city (Kazakhstan) by blackmail and threats of real conviction they seized my property and imposed obligations on the funds actually embezzled by them. They falsifies a criminal case against my wife and seized her property. During my current absence in Kazakhstan a new criminal case was falsified against me, my brother and his wife. My persecutors are organized group whose purpose is to conceal the facts of embezzlement of multimillion sums and withdrawal of funds outside the Republic of Kazakhstan.

Prior to the events indicated in the lawsuit and this addendum, I was one of the shareholders of a large holding company in Kazakhstan, the total capitalization of which was estimated at more than $ 300 million, I was the President of an energy company that I had created from the scratch, I attracted the world's largest financial institutions as partners and participated in major industrial projects. According to Forbs Kazakhstan magazine, as of May 2017, prior to these events, my personal fortune was estimated at 135 million US dollars, which, in addition to the material component of real business assets, composed of my personal goodwill, my good name, my business reputation, the reputation of a person who was known and recognized by business world in Kazakhstan and abroad, and to whom irreparable damage was inflicted as a result of criminal intentional actions. In this regard, I consider appropriate, adequate and reasonable to declare the loss of business reputation, coupled with moral damage, which I hereby estimate at 45 million USD dollars. I will consider this amount an adequate compensation for losses, hardships, moral damage that was inflicted on me personally, my family and my relatives.

**Thus, based on the above additional facts  I STAND ON MY STATEMENT AND ACCUSE the citizens of the Republic of Kazakhstan:**

1. **Klebanov Aleksandr Yakovlevich,**

2. **Kan Sergey Vladimirovich,**

   **and**

   **the National Security Committee of the Republic of Kazakhstan**

   in the following:

- Falsification of the criminal case, illegal arrest and detention me for 3 months in the Pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan;

- Coercion under pressure and threats to sign on unacceptable terms Contracts for the sale - purchase of property belonging to me in the form of 31% shares of JSC "CAPEC", as well as a bonded Agreement on compensation for damages and accepting debts of the bankrupt JSC "Eximbank Kazakhstan" and Contracts for shares of the aforementioned Bank;

- Falsification of a criminal case by Economic Investigation Agency of the State Finance Department of the Republic of Kazakhstan in relation to my wife Artambayeva Gulnara D., in order to put pressure on me and seizure her property – 7% of the shares of JSC "CAPEC";

- Prosecution of me in civil Court, putting pressure on the courts to make illegal judgment and decisions against me, and my relatives;

- Falsification of the criminal case against my brother Amirkhanov Yerzhan and his wife Amirkhanova Saule, illegal putting me in the Internal and Interstate Wanted List;

- The commission of illegal performance actions against my ex-wife of Zhaksylykova Laura S., and the unlawful forced seizure of her personal property;

- Inflicting moral damage to me, expressed in illegal detention in the pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan for 3 months;

- Infliction of deep psychological trauma to me, my family, people close to me, expressed in conducting long-term judicial and enforcement lawsuits, forced emigration from Kazakhstan for me and my relatives, loss of communication with loved ones, loss of habitual lifestyle, business, work, the deepest stress due to harassment and threats;

- Irreparable damage to my business reputation, honor and dignity of citizen, a person, and an entrepreneur.

10

**I ASK THE COURT:**

1. To recognize as illegal the Agreement on Compensation of Damages, Contracts for the Sale-Purchase of shares of "Eximbank Kazakhstan" JSC signed during detention in the pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan, as well as documents (contracts) signed pursuant to the Agreement on Compensation of Damages.

2. To cancel unlawful decisions taken by the courts of the Republic of Kazakhstan in pursuance of contracts and agreements signed during detention in the pre-trial detention facility of the National Security Committee of the Republic of Kazakhstan.

3. To oblige Klebanov A.Y., Kan S.V.,  the National Security Committee of the Republic of Kazakhstan to compensate jointly me  the Material damage in the amount of 90 (ninety) million US dollars, as well as to pay moral damage in the amount of 45 (forty five) million US dollars. I estimate the total damage caused to me in the amount of 135 (one hundred and thirty-five) million US dollars.

4. To oblige Klebanov A.Y., Kan S.V., and the National Security Committee of the Republic of Kazakhstan to compensate jointly the material damage to my wife Artambayeva G.D. in the amount of 20 (twenty) million US dollars, and moral damage in the amount of 10 (ten) million US dollars, the total damage in the amount of 30 (thirty) million US dollars.

Yours sincerely,
Yerkyn Amirkhanov

April 21, 2023

Attachments – 15 on 72 pages

11

# Exhibit 1

ATTACHMENT # 1

TO THE PROSECUTOR GENERAL
OF THE REPUBLIC OF KAZAKHSTAN
ASYLOV B.N.
From the attorney at law of
the Kostanay Regional Bar Association Nurkanov N.U.
(in the interests of the
applicant Amirkhanov Y.A. in the criminal case)
Nursultan, Imanov str., 10 sq.3

COMPLAINT

on egregious violations of the Law in considering
the Statements of Amirkhanov Y.A. about the raider seizure, and other serious crimes

On 28.01.2019, Amirkhanov Y.A. appealed to the Prosecutor General of the Republic of Kazakhstan with two statements about the serious crimes committed.

In one of the statements, Amirkhanov informed that his former partners in JSC "Central Asian Power and Energy Company" (hereinafter "CAPEC", JSC) Klebanov A.Y. and Kan S.V., using their connections at the National Security Committee of the Republic of Kazakhstan (hereinafter "the NSC RK") decided to take possession of 31% shares of "CAPEC", JSC owned by him. For this purpose, they illegally initiated a criminal case and prosecution of Amirkhanov under Article 253 of the Criminal Code of the Republic of Kazakhstan "Commercial bribery".

In particular, Klebanov and Kan came into agreement with Tsoi E.V., who then appealed to the Central Office of the NSC RK with a deliberately false statement that Amirkhanov had received money from him as a reward for patronage when concluding a contract for the supply of equipment.

According to Amirkhanov, Klebanov has a long-term close relationship with the former Chairman of the NSC RK Masimov K.K., and being his close confidant has carried out his various assignments (including material and financial ones) on a regular base. Klebanov had the same relationship with another former head of the NSC RK – Samat Abish.

Klebanov and Kan also intended to use this criminal case to cover up their illegal actions in plundering funds in a large amounts from "Eximbank Kazakhstan" JSC.

On May 3, 2018, based on the statement of Tsoi E.V., the investigator of the Investigative Department of the NSC RK, Colonel Igoshin Y.V., guided by leadership of the NSC RK, initiated a criminal case N180000041000074 against Amirkhanov under Part 6 of Article 253 of the

Criminal Code of the RK. On the same day, without sufficient grounds for this and without establishing the actual circumstances of the case, Igoshin Y.V. made a decision on the preventive measure in the form of detention.

According to Amirkhanov starting from the July 10th 2018, he had been under pressure of the senior officials of the Central Office of the NSC RK. The 1st Deputy Head of the 5th Department of the NSC RK Colonel Iskakov Ruslan Serikovich and Deputy Head of the 4th Department of the NSC RK Lieutenant-Colonel Kokkumbayev Rinat, both took a direct part in this. They threatened Amirkhanov, saying that his legal situation would worsen by the accusation in more serious crimes under the Criminal Code of the RK, i.e. participation in an organized criminal group. In addition to the verbal threats, during his stay in the pre-trial detention center, these persons organized physical measures against him: multi-hour interrogations alternated with the torture in the form of sleep deprivation and punching.

Colonel Iskakov R.S. was particularly zealous in this, he was threatening and promising a quickest way to the jail with even greater tortures and bullying after conviction. He repeatedly mentioned that he was acting on the direct instructions of the 1st Deputy Chairman of the NSC RK Samat Abish. In that way he demanded that Amirkhanov transfer 31% of the shares of "CAPEC", JSC owed by him to Klebanov and Kan. Iskakov R.S. in the presence of Kokkumbayev R. demanded that Amirkhanov write a statement of commitment addressed to the 1st Deputy Chairman of the NSC RK General Samat Abish, but then demanded that this document be addressed to the Chairman of the NCS RK Masimov K.K. Thus, Iskakov and Kokkumbayev did not even conceal that they were following the orders of their leadership. The head of the 3rd Investigative Department of the NSC RK Colonel Shaiken Nazym, as well as investigator Igoshin Y.V. also participated in these illegal actions. The Amirkhanov's lawyers Ryspekova B.K. and Matvienkov G.S. were present at the illegal demands of these persons.

On July 20th, the same year, one of the originator of the criminal case against Amirkhanov, a former partner Kan, joined to the pressure on him. He openly threatened Amirkhanov with the deterioration of his legal situation in the form of accusation in participation in the theft from "CAPEC/TSKEM", JSCs. At that time, Kan entered into the building and premises of the Investigative Department of the NSC RK - a high-security object, as to his home.

On July 23, 2018, interrogations and "negotiations" in Investigator Igoshin's office lasted all day. Kan came to the Investigative Department with prepared and printed contracts and agreements with the lawyer of "CAPEC" JSC - Iskakov Rustem. Amirkhanov insisted on a partial change of the wording in a number of paragraphs of the agreements, but Kan

2

presented a real ultimatum – to sign agreements and contracts without a single change in their content! After 22 hours, Amirkhanov, being physically and mentally exhausted, feeling a real threat from Klebanov, Kan and the above-mentioned officers of the NSC RK was forced to give consent and signed all contracts and agreements, since they promised to terminate the criminal prosecution only after signing these documents.

On July 23, 2018, in the period from 22h 55min and 23h 20min, in the office of investigator Igoshin, located at the address: Astana, Yesil district, Mangilik El Avenue, house 8, entrance 10C, Amirkhanov signed two agreements and three contracts stating that he sells Klebanov and Kan 31% of the shares of "CAPEC" JSC equally for the total value of 20 million tenge. At the same time, Amirkhanov signed an agreement to purchase 23.8% of the shares of "Eximbank Kazakhstan" JSC, actually assuming all the obligations of the financial institution. These contracts and agreements were certified by a notary Sadykova G.B., specially summoned to the office of the Investigative Department of the NSC RK.

On July 24, 2018, after signing the above mentioned contracts, investigator Igoshin received a statement from Tsoi asking not to prosecute Amirkhanov under criminal case. Igoshin also forced Amirkhanov to write a statement that during the process of investigation he had testified and carried out all his actions voluntarily, without exerting any physical or other influence on him.

On the same day, investigator Igoshin issued a decision to terminate the investigation against Amirkhanov.

So, the signing of Agreements and Contracts by Amirkhanov on July 23d, 2018, at night-time between 22h 55min and 23h 20 min (this time is fixed in the contracts) in the premises of the ID of the NSC RK, indicates that the investigation authority illegally forced Amirkhanov to dispose his property in the form of 31% of the shares of "CAPEC" JSC. The Article # 6253 of the Criminal Code of the RK, under which Amirkhanov was prosecuted, envisages the confiscation of property as a penalty for the crime. However, the investigative authority of the NSC RK, instead of ensuring the safety of the property owned by the suspect Amirkhanov, which was foreclosed by the decision of the NSC RK and authorized by the Yesilsky District Court # 2 of Astana city, on July 23d, 2018, created conditions for disposing the property by him.

As follows from the substance of the transactions, and the actual situation, created by the officers of the NSC RK around Amirkhanov, at the time of signing he was under severe psychological pressure. In accordance with the Law of the Republic of Kazakhstan "On Advocacy and Legal Assistance", I have appointed handwriting and psychological specialized

examinations that fully confirm Amirkhanov's arguments set out in his statement on the crime dated January 28th, 2019.

On March 04th, 2019 the Prosecutor General's Office of the Republic of Kazakhstan sent Amirkhanov's statements to the Anti-Corruption Agency of the Republic of Kazakhstan (ACA RK) for validating and decision-making.

On March 06th, 2019 the Investigation Department of the Anti-Corruption Agency has launched a pre-trial investigation on criminal case # 190000131000019 against officials of the NSC RK under Article # 361 Part 4 of the Criminal Code of the Republic of Kazakhstan.

On May 6th , 2019, the investigator for the Department of Internal Affairs Dyusenov A. illegally terminated the pre-trial investigation of the criminal case, without carrying out the necessary procedural actions, for lack of corpus delicti. On my appeal to the Prosecutor General's Office of the RK on cancellation of the decision on termination the criminal case, the Deputy Head of the Criminal Prosecution Service Sattar A. responded that the Prosecutor General's Office of the Republic of Kazakhstan agreed with the decision.

According to Article # 24 of the Criminal Procedural Code of the RK (hereunder the CPC RK), the court, the prosecutor, the investigator, the inquirer are obliged to take all measures provided by law for a comprehensive, complete and unprejudiced investigation of the circumstances required and sufficient for the correct resolution of the case. The specified requirement of the Law was grossly violated by investigator Dyusenov A.

The second Amirkhanov's Statement about embezzlement of funds in a large amounts from "Eximbank Kazakhstan" JSC turned out to be kept in the same case file without registration in the Unified Investigations Registrar of (UIR) and without carrying out the required investigation.

In connection with my complaints, this statement was sent by the investigator to the Financial Monitoring Committee of the Republic of Kazakhstan, and from there redirected to the National Bank of the Republic of Kazakhstan, which in turn has returned it back to the Committee without investigation, indicating the fact that there was no information about damage caused to the government. After all this correspondence, Amirkhanov's statement was sent by the Committee to the Almaty Police Department.

On my request, the head of the Investigation Department of Police Department of Almaty city, Aukhadiev D.G., informed that the case was sent due to the territoriality to the Bostandyk district of the Police Department of Almaty city, and there I was informed that the

4

criminal case #197514031005879, initiated on November 28th, 2019 under Part 1 of Article #389 of the Criminal Code of the RK, had been there under their investigation.

According to the report of the Prosecutor's office of the Bostandyk district of Almaty city dated February 24th, 2021, on the criminal case the investigator of the Police Department of the Bostandyk district of Almaty city has decided to interrupt the terms of the investigation on the basis of §1 of Part 7, Article 45 of the CPC RK. Since this decision was made in violation of the requirements of Article 24 of the CPC RK, on February 24th, 2021, the district prosecutor's office canceled it and the case was returned to the Police Department of the Bostandyk district of Almaty city for the additional investigation.

In connection with my appeal to the Chairman of the Liquidation Commission of "Eximbank Kazakhstan" JSC, a request was sent to the Police Department of the Bostandyk district of Almaty city with a request to report the results of the investigation in this criminal case. In the response to the request, it was said the following: "According to the Automated system of Unified Registrar database, there is no information about Amirkhanov Y.A.'s appeal in the Department."

In this regard, on March 21st, 2022, I filed a complaint to the Minister of Internal Affairs of the Republic of Kazakhstan Akhmetzhanov M.M.

Also it should be noted that after the termination of the criminal case and the release of Amirkhanov from custody, illegal persecution against him by former partners has not ended. They initiated a civil lawsuit to collect from Amirkhanov the amounts, owed to Eximbank Kazakhstan JSC and actually plundered by Klebanov and Kan, under an agreement signed in the detention center of the NSC RK. Klebanov and Kan also illegally initiated a criminal case against his brother Amirkhanov Yerzhan, in order to put Amirkhanov on the wanted list.

Due to these circumstances, in 2019, Amirkhanov was forced to leave the Republic of Kazakhstan and go abroad.

However, threats against Amirkhanov from Klebanov and Kan have not stopped until this day. As part of the above-mentioned illegal criminal case, they initiated an international search for him through Interpol, call acquaintances abroad, come to the places of residence, make inquiries and transmit open threats.

Based on the above, in accordance with the Articles 70, 71, 99 and 105 of the CPC of the Republic of Kazakhstan, hereby I am asking:

1.     To cancel the resolution on the termination of the criminal case No190000131000019 as illegal and unreasonable. To assign the pre-trial investigation of

this case to the Department of Special Prosecutors of the Prosecutor General's Office of the Republic of Kazakhstan.

2.      To reopen the pre-trial investigation on the criminal case No180000041000074 under Part 6 of Article #253 of the Criminal Code of the Republic of Kazakhstan and terminate it for the absence of corpus delicti in the actions of Amirkhanov Y.A.

3.      Upon the fact of illegal initiation of a criminal case, unjustified criminal prosecution of Amirkhanov Y.A. and his detention, make a decision on the criminal charges of former heads and officers of the National Security Committee of the Republic of Kazakhstan Masimov K.K., Abish S.S., Iskakov R.S., Kokkumbaeva R., Shaiken N., Igoshin Y.V. and others involved in this case, as well as originators who were directly interested in this raider seizure of the property owned by Amirkhanov Y.A. -  Klebanov A.Y. and Kana S.V. Also bring to criminal rcharge the applicant Tsoi E.V.

4.      To study the criminal case No197514031005879 under Part 1 of Article 389 of the Criminal Code of the Republic of Kazakhstan, to check the legality and validity of conducting a pre-trial investigation on them. To cancel the illegal decisions taken on them and organize a high-quality pre-trial investigation.

5.      To take measures aimed at recognizing as illegal the transfer Agreements to Klebanov A.Y. and Kan S.V., 31% of shares of "CAPEC" JSC owned by Amirkhanov Y.A. and the purchase of 23.8% of "empty" shares of "Eximbank Kazakhstan" JSC by him.

6.      To take measures aimed at reimbursing Amirkhanov Y.A. the value of 31% of the shares seized by Klebanov A.Y. and Kan S.V. as a result of their criminal actions in collusion with the leadership and officers of the National Security Committee of the Republic of Kazakhstan.

Inform me about the results of the consideration of this complaint within the time limit prescribed by law.

Appendix: copies of 2 statements by Amirkhanov Y.A. to the Prosecutor General's Office of the Republic of Kazakhstan dated January 28th , 2019; The response of the investigator of the Anti-Corruption Agency No. 3-2-11/2530 dated April 26th, 2019; The notification of the CFM dated April 30th, 2019; The response of the CFM dated June 05th, 2019; The response of the Head of the Criminal Prosecution Service of the Prosecutor General's Office of the Republic of Kazakhstan dated August 07th, 2019; The letter of the acting head of the ID DP Almaty city dated November 26th, 2019; The response of the prosecutor of the Bostandyk district of

6

**Almaty city dated February 24th, 2021; The responses of the Chairman of the Liquidation Commission of "Eximbank Kazakhstan" JSC dated February 24th, 2021 and June 28th, 2021. Conclusions of the specialists of specialized handwriting and psychological expertise on 20 pages.**

**Attorney at law N.Nurkanov**

31.03.2022 11:39:55

**RECEIPT**
**(tear-off)**

220000000010019685
(unique number of receipt)

Nurkanov Nazymbek Umrzakovich
(Last name, initials or name of applicant)

(Number of pages) 6
(Number of pages of attachments) 38
Other attachments

**Accepted**
(Position, last name and initials)

" 31 " 03. 2022

**Signature ( signed)**

Prosecutor General's Office of the RK 010000, Republic of Kazakhstan,

Nursultan city, Mangylyk El avenue, 14 8 (7172) 71-28-68 call-center, 115
(Name of organization, address and office phone number)

The decision on the application will be made in terms according the legislative rules of Republic of Kazakhstan

Executor Bayneeva Nazira Frimbekkyzy

**ГЕНЕРАЛЬНОМУ ПРОКУРОРУ**
**РЕСПУБЛИКИ КАЗАХСТАН**
**АСЫЛОВУ Б.Н.**

От адвоката Костанайской областной
коллегии адвокатов Нурканов Н.У.
(в интересах заявителя Амирханова Е.А.
по уголовному делу)
Нур-Султан, ул.Иманова д.10 кв.3
сот. 8 701 640 37 79
эл.адрес: Nurkanov65@mail.ru

**Ж А Л О Б А**
о грубейших нарушениях Закона, допущенных при рассмотрении заявлений
Амирханова Е.А. о рейдерстве и других тяжких преступлениях

28.01.2019 г. Амирханов Е.А. обратился к Генеральному прокурору РК
с двумя заявлениями о совершении тяжких преступлений.

В одном из заявлений Амирханов сообщил, что его бывшие партнеры по
АО «Центрально-Азиатская Топливно-Энергетическая Компания» (далее «АО
«ЦАТЭК») Клебанов А.Я и Кан С.В., используя свои связи в Комитете
Национальной Безопасности Республики Казахстан (далее «КНБ РК») решили
завладеть принадлежавшими ему 31% акций АО «ЦАТЭК». С указанной
целью они организовали незаконное возбуждение уголовного дела и
привлечение Амирханова к уголовной ответственности по статье 253
Уголовного Кодекса Республики Казахстан «Коммерческий подкуп».

В частности, Клебанов и Кан договорились с Цоем Е.В., который
обратился в Центральный Аппарат КНБ РК с заведомо ложным заявлением о
том, что Амирханов, за покровительство при заключении контракта на
поставку оборудования, получил от него денежные средства в качестве
вознаграждения.

Со слов Амирханова, Клебанов имеет длительные тесные отношения с
бывшим Председателем КНБ РК Масимовым К.К., неоднократно выполнял
его различные поручения, (в том числе материального и финансового
характера), является его близким доверенным лицом. Такие же отношения
Клебанов имел с другим бывшим руководителем КНБ РК – Саматом Абишем.

Клебанов и Кан также намеревались использовать возбуждение данного
уголовного дела и для прикрытия своих незаконных действий по расхищению
денежных средств в особо крупном размере из АО «Эксимбанк Казахстан».

3 мая 2018 г., на основании заявления Цой Е.В., следователь
Следственного департамента КНБ РК полковник Игошин Ю.В., который с
ведома руководства КНБ РК, возбудил против Амирханова уголовное дело

N180000041000074 по ч.6 ст. 253 УК РК. В этот же день, без достаточных на это оснований и без установления фактических обстоятельства дела, Игошин Ю.В. выносит постановление об избрании меры пресечения в виде содержания под стражей.

Со слов Амирханова, примерно с 10-х чисел июля 2018 г., он подвергался давлению со стороны руководящих работников Центрального Аппарата КНБ. Непосредственное участие в этом принимали 1-й заместитель начальника 5-го департамента КНБ РК полковник Искаков Руслан Серикович, заместитель начальника 4-го департамента КНБ РК подполковник Коккумбаев Ринат. Они угрожали Амирханову, говоря, что ухудшат его правовое положение путем изменения квалификации обвинения на более тяжкую статью УК РК, т.е. участие в организованной преступной группе. Помимо устных угроз, во время нахождения в СИЗО, указанные лица организовали в отношении него меры физического воздействия СИЗО: многочасовые допросы чередовались пытками в виде лишения сна, нанесения ударов руками.

В этом особенно усердствовал полковник Искаков Р.С., он угрожал и обещал скорый путь в колонию и еще большие пытки и издевательства после его осуждения. Он неоднократно упоминал при этом, что действует по прямому указанию тогдашнего 1-го заместителя Председателя КНБ РК Самата Абиша. Таким образом он требовал от Амирханова передать принадлежащих ему 31 % акций АО «ЦАТЭК» Клебанову и Кану. Искаков Р.С. в присутствии Коккумбаева Рината потребовал от Амирханова написать заявление-обязательство на имя 1-го заместителя Председателя КНБ РК генерала Самата Абиша, однако затем потребовал адресовать этот документ на имя Председателя КНБ РК К.К. Масимова. Таким образом, он и Коккумбаев даже не скрывали, что они выполняли приказы своего руководства. В этих незаконных действиях участвовали также начальник 3-го следственного управления СД КНБ РК полковник Шайкен Назым, а также следователь Игошин Ю.В.. При незаконных требованиях указанных лиц присутствовали адвокаты Амирханова - Рыспекова Б.К.  и Матвиенков Г.С.

В 20-х числах июля того же года, к давлению на Амирханова подключился один из организаторов возбуждения против него уголовного дела, бывший партнер Кан, который открыто угрожал Амирханову ухудшением его правового положения в виде привлечения его к уголовной ответственности за участие в составе ОПГ в хищениях из АО «ЦАТЭК/ЦКЭМ». При этом Кан проходил в здание и помещения Следственного Департамента КНБ РК - режимное предприятие, как к себе домой.

23 июля 2018 г. допросы и «переговоры» в кабинете следователя Игошина длились в течение всего дня. Кан пришел в Следственный департамент с подготовленными и распечатанными текстами договоров и соглашений с юристом АО «ЦАТЭК» Искаковым Рустемом. Амирханов настаивал на частичном изменении редакцию ряда пунктов соглашений, однако Каном был предъявлен настоящий ультиматум – подписывать соглашения и договоры без единого изменения их содержания! После 22-х

2

часов Амирханов, будучи измотанным физически и морально, чувствуя реальную угрозу со стороны Клебанова, Кана и вышеназванных сотрудников КНБ РК, вынужден был дать согласие и подписал все договоры и соглашения, поскольку прекратить уголовное преследование они обещали лишь после подписания указанных документов.

23 июля 2018 г., в период с 22 час. 55 мин. и 23 час.20 мин., в кабинете следователя Игошина, находящегося по адресу: г. Астана, район Есиль, проспект Мангилик Ел, дом 8, подъезд 10С, Амирхановым были подписаны два соглашения и три договора, в которых указано, что он продает Клебанову и Кану 31 % акций АО «ЦАТЭК» поровну общей стоимостью 20 млн. тенге. Одновременно Амирхановым был подписан договор покупки 23,8 % акций АО «Эксимбанк Казахстан», фактически приняв на себя все обязательства финучреждения. Данные договора и соглашения были заверены специально вызванным в служебное помещение Следственного Департамента КНБ РК нотариусом Садыковой Г.Б.

24 июля 2018 г., после подписания вышеуказанных договоров, следователь Игошин получил от Цоя заявление с просьбой не привлекать Амирханова к уголовной ответственности. Игошин также заставил Амирханова написать заявление о том, что в ходе предварительного следствия он давал показания и осуществлял свои действия добровольно, без оказания на него какого-либо физического и иного воздействия.

В этот же день следователем Игошиным было вынесено постановление о прекращении в отношении Амирханова досудебного следствия.

Таким образом подписание Амирхановым Соглашений и Договоров 23 июля 2018 года, в ночное время между 22 час. 55 мин. и 23 час.20 мин. (данное время зафиксировано в договорах) в здании СД КНБ РК свидетельствуют о том, что орган досудебного расследования незаконно заставил Амирханова распорядиться принадлежащим ему имуществом в виде 31 % акций АО «ЦАТЭК». Санкция статьи ч. 6 253 УК РК, по которой Амирханову было предъявлено обвинение, предусматривала конфискацию имущества. Однако, орган следствия КНБ РК вместо того, чтобы обеспечить сохранность имущества, принадлежащего подозреваемому Амирханову, на которое был наложен арест постановлением СД КНБ РК, санкционированного Есильским районным судом №2 г. Астана, 23 июля 2018 года, создал ему условия для распоряжения имуществом.

Как следует из существа сделок, и фактической обстановки, созданной работниками КНБ РК вокруг Амирханова, в момент подписания он находился под тяжелым психологическим давлением. В соответствии с Законом РК «Об адвокатской деятельности и юридической помощи» мною были назначены почерковедческое и психологическое специализированные исследования, которые полностью подтверждают доводы Амирханова, изложенные в его заявлении о преступлении от 28.01.2019 г.

3

04 марта 2019 г. Генеральная прокуратура РК заявления Амирханова для проведения проверки и принятия решений направила в Антикоррупционную службу РК (АДГСПК РК).

06 марта 2019 г. Следственным департаментом Антикоррупционной службы было начато досудебное расследование по уголовному делу № 190000131000019 в отношении должностных лиц КНБ РК по ст.361 ч.4 УК РК.

6 мая 2019 года следователем по ОВД Дюсеновым А. досудебное расследование по уголовному делу, без проведения необходимых процессуальных действий, незаконно прекращено за отсутствием состава преступления. На мое обращение в ГП РК с ходатайством об отмене постановления о прекращении уголовного дела заместитель начальника Службы уголовного преследования Саттар А. 19 декабря 2019 г. сообщил, что с принятым решением Генеральная прокуратура РК согласилась.

Согласно ст.24 УПК РК суд, прокурор, следователь, дознаватель обязаны принять все предусмотренные законом меры для всестороннего, полного и объективного исследования обстоятельств, необходимых и достаточных для правильного разрешения дела. Указанное требование Закона следователем Дюсеновым А. грубо нарушено.

В данном же уголовном деле, без регистрации в ЕРДР и без проведения необходимой проверки, находилось второе заявление Амирханова о хищениях денежных средств в особо крупных размерах из АО «Эксимбанк Казахстан».

В связи с моими жалобами указанное заявление следователем было направлено в Комитет по финансовому мониторингу РК, а оттуда перенаправлено в Национальный Банк РК, который без проверки вернул обратно в Комитет со ссылкой на то, что в материалах нет сведений о причиненном ущербе государству. После этой переписки, Комитетом заявление Амирханова было направлено в Департамент полиции г. Алматы.

На мой запрос начальник СУ ДП Алматы Аухадиев Д.Г. уведомил меня, что материал по территориальности направлен в УП Бостандыкского района ДП г. Алматы, а оттуда мне сообщали, что уголовное дело №197514031005879, возбужденное 28.11. 2019 г. по ч.1 ст. 389 УК РК, находится в их производстве.

Согласно сообщению прокуратуры Бостандыкского района г. Алматы от 24.02.2021 г. дознавателем ОД УП Бостандыкского района г. Алматы по указанному выше уголовному делу было принято решение о прерывании сроков досудебного расследования на основании п. 1 ч.7 ст. 45 УПК РК. Так как данное решение было принято в нарушение требований ст. 24 УПК РК, 24.02.2021 г. прокуратурой района оно отменено и дело возвращено в ОД УП Бостандыкского района г. Алматы для организации дополнительного расследования.

В связи с моим обращением к Председателю ликвидационной комиссии АО «Эксимбанк Казахстан» в Управление полиции Бостандыкского района г. Алматы был направлен запрос с просьбой сообщить о результатах следствия по указанному уголовному делу. Из ответа на запрос усматривается

следующее «Согласно базе данных АРМ ЕРД обращение Амирханова Е.А. в Управлении отсутствует».

В связи с этим, 21.03.2022 г. я обратился с жалобой Министру внутренних дел РК Ахметжанову М.М

Необходимо также отметить, что после прекращения уголовного дела и освобождения Амирханова из-под стражи, незаконные преследования в отношении него со стороны бывших партнеров не закончились. Ими были инициированы гражданский иск по взысканию с Амирханова сумм задолженности перед АО «Эксимбанк Казахстан», фактически расхищенных Клебановым и Каном, по Соглашению, подписанному в СИЗО КНБ РК. Также Клебанов и Кан незаконно инициировали возбуждение против его брата Амирханова Ержана уголовного дела, с целью объявить Амирханова в розыск.

В связи с указанными обстоятельствами, в 2019 году, Амирханов был вынужден покинуть Республику Казахстан и выехать за рубеж.

Однако угрозы в адрес Амирханова со стороны Клебанова и Кана не прекращаются и до настоящего времени. В рамках вышеуказанного незаконного уголовного дела они инициировали его международный розыск по линии Интерпола, звонят знакомым за границей, приходят по месту проживания, наводят справки и передают открытые угрозы его жизни.

На основании изложенного, руководствуясь статьями 70, 71, 99 и 105 УПК РК,

**П Р О Ш У :**

1.    Постановление о прекращении уголовного дела №190000131000019 отменить как незаконное и необоснованное. Производство досудебного расследования по данному делу поручить Департаменту специальных прокуроров ГП РК.

2.    Возобновить    досудебное    следствие    по    уголовному    делу №180000041000074 по ч.6 ст.253 УК РК и прекратить производство по нему за отсутствием в действиях Амирханова Е.А. состава преступления.

3.    По факту незаконного возбуждения уголовного дела, необоснованного привлечения Амирханова Е.А. к уголовной ответственности и содержания его под стражей решить вопрос об уголовной ответственности бывших руководителей и сотрудников КНБ РК Масимова К.К., Абиш С.С., Искакова Р.С., Коккумбаева Р, Шайкен Н., Игошина Ю.В. и других причастных к этому должностных лиц КНБ РК, а также заказчиков и непосредственных заинтересованных в данном рейдерском захвате принадлежащего Амирханову имущества Клебанова А.Я. и Кана С.В. Так же привлечь к уголовной ответственности заявителя Цой Е.В.

4.    Изучить уголовное дело №197514031005879 по ч.1 ст.389 УК РК, проверить законность и обоснованность проведения по ним досудебного





**ҚАЗАҚСТАН
РЕСПУБЛИКАСЫНЫҢ
БАС ПРОКУРАТУРАСЫ**

**ГЕНЕРАЛЬНАЯ
ПРОКУРАТУРА
РЕСПУБЛИКИ КАЗАХСТАН**

010000, Нұр-Сұлтан қаласы, Мәңгілік Ел даңғылы, 14
тел.: 8 (7172) 71 28 68, факс: 8 (7172) 30 18 65
www.prokuror.gov.kz

010000, город Нұр-Султан, проспект Мәңгілік Ел, 14
тел.: 8 (7172) 71 28 68, факс: 8 (7172) 30 18 65
www.prokuror.gov.kz

20.05.2022  № 2-011522-22-41224

**Адвокату Нурканову Н.У.**
ул.Иманова 10, кв.3, г.Нур-Султан

Генеральной прокуратурой рассмотрена Ваша жалоба на непринятие мер по заявлениям Амирханова Е. о рейдерском захвате его имущества.

В 2018 году в производстве КНБ находилось досудебное расследование в отношении Амирханова Е. и Нуртазина Е. по ст.253 ч.6 УК (коммерческий подкуп в особо крупном размере). Основанием для его регистрации послужили заявления Цой Е. и Хван С.

В связи с отзывом указанными лицами своих заявлений, 3 августа 2018 года уголовное дело прекращено на основании п.5 ч.1 ст.35 УПК.

Это решение принято в соответствии с требованиями ст.33 УПК и в настоящее время оснований для его отмены не имеется.

Решением Медеуского районного суда г.Алматы от 29 января 2019 года иск Клебанова А., Кан С. и АО «ЦАТЭК» об исполнении Амирхановым Е. условий соглашения о порядке возмещения ущерба от 23 июля 2018 года удовлетворен частично (в части требования выкупить доли участия в уставных капиталах юридических лиц, являющихся заемщиков Банка - отказано).

Судебный акт вступил в законную силу. Сроки его обжалования и опротестования истекли.

Вместе с тем, в соответствии со ст.438 ч.6 ГПК, за Амирхановым Е. сохранено право обратится к Председателю Верховного Суда с ходатайством о пересмотре решения суда.

27 сентября 2019 года заявление Амирханова Е. о хищении Кан С., Клебановым А. и др. лицами денежных средств Банка следователем УП



Документ подписан ЭЦП

Медеуского района оставлено без рассмотрения и списано в номенклатурное дело.

Это решение связано с отсутствием акта, подтверждающего причиненный ущерб, как того требует ст.179 УПК.

Вместе с тем, в целях надлежащей оценки его доводов о доведении Банка до банкротства, путем вывода денежных средств за рубеж, материалы для проведения соответствующей проверки 17 мая 2022 года направлены в ДГД по г.Алматы.

Досудебные расследования в отношении Амирханова Ержана не регистрировались.

По заявлению Амирханова Е. о неправомерных действиях сотрудников КНБ и других лиц антикоррупционной службой проведено досудебное расследование, которое 6 мая 2019 года прекращено по п.2 ч.1 ст.35 УПК (за отсутствием состава уголовного правонарушения).

В целях обеспечения требований ст.24 УПК 17 мая т.г. Генеральной прокуратурой постановление о прекращении отменено.

Уголовное дело для проведения дополнительного расследования и принятия обоснованного процессуального решения направлено в Агентство Республики Казахстан по противодействию коррупции.

Ход его дальнейшего расследования взят на контроль.

Одновременно разъясняем, что в соответствии со ст.99 УПК Вы вправе обращаться к лицу, осуществляющему досудебное расследование, с ходатайствами о производстве процессуальных действий или принятии процессуальных решений для установления обстоятельств, имеющих значение для дела.

Заместитель начальника
Службы уголовного преследования                          Б. Мажренов

Исп. Бекмагамбетов Н.
тел.71-26-04

GP010926947KZ (2/4)

*Примечание:* Ответ на обращение направлен с использованием электронной цифровой подписи посредством услуги «Заказное гибридное отправление с уведомлением о получении» в рамках Меморандума о взаимном сотрудничестве, заключенного между Генеральной прокуратурой Республики Казахстан и АО «Казпочта».

В соответствии с пп.12) ст.1 Закона Республики Казахстан «Об электронном документе и электронной цифровой подписи» (далее – Закон) электронный документ – документ, в котором информация представлена в электронно-цифровой форме и удостоверена посредством электронной цифровой подписи.

Согласно п.1 ст.7 Закона электронный документ, соответствующий требованиям Закона и удостоверенный посредством электронной цифровой подписи лица, имеющего полномочия на его подписание, равнозначен подписанному документу на бумажном носителе.

# Exhibit 3

**ATTACHMENT # 3**


### RESOLUTION

**on termination of the pre-trial investigation**


August 06, 2022                                                    Nur-Sultan


Investigator of the Department of Internal Affairs of the Investigation Department (ID) of Anti-Corruption Service in Nur-Sultan city Zarir E.M., having examined the materials of the criminal case No. 190000131000019,


### ESTABLISHED:


This criminal case No. 190000131000019 was registered in the Unified Register of Pre–Trial Investigations at the application of Amirkhanov E.A. on bringing to justice the officials of the National Security Committee of the Republic of Kazakhstan (hereinafter referred to as the NSC RK), as well as former business partners - Klebanov A., Kan S.,  Prikhozhan D. and Tsoi E. according to the Article 361 part 4 p. 3 of the Criminal Code of the Republic of Kazakhstan, upon the fact of his illegal criminal prosecution and coercion to sign 2 (two) Agreements and 3 (three) Contracts for the Purchase and Sale of shares of the Central Asian Power- Energy Company, JSC (hereinafter referred to as CAPEC JSC), shares of the Eximbank Kazakhstan, JSC  (hereinafter referred to as Eximbank JSC).

The reason for the start of the pre-trial investigation against the officers of the NSC RK and other persons was the application of Mr. Amirkhanov E.A.

It follows from the Amirkhanov E.A's application that on July 23rd 2018, during the period from 22:00 to 23:20 in the premises of NSC RK his business partners Klebanov A., Kan S., Prikhozhan D. and Tsoi E., with the participation of officials of the NSC RK Igoshin Yu., Shaiken N., Kokumbaev R., Iskakov R., under the threat of criminal prosecution forced Amirkhanov E.A. (while he was detained) to sign 2 Agreements and 3 Contracts, according to which he sold 31% of the shares of CAPEC JSC at an understated value to the amount of 20,000,000 tenge, and simultaneously forced him to purchase 23.8% of the shares of illiquid Eximbank JSC for the same amount, transferring all the bank's debts to Amirkhanov.

During the pre-trial investigation, it was not possible to interrogate Amirkhanov E.A. on the circumstances of the case indicated in his application, since according to the response of the

Border Service of the NSC RK Amirkhanov E.A. left the territory of the Republic of Kazakhstan on Almaty – Moscow flight SU-1947 on November 22nd 2018 flying to Moscow and since has not entered to the territory of the Republic of Kazakhstan.

According to the Information Exchange System of Law enforcement agencies (hereinafter referred to IES) Amirkhanov Yerkyn Adamiyanovich, born on May 04,1967, has been on the interstate wanted list since March 12, 2020, as a hiding  from criminal prosecution on criminal case No. 197500121000131, registered by the Almaty Police Department under Article 189 part 4 of § 1,2 of the Criminal Code of the Republic of Kazakhstan, with a "Detention" restrain measure. According to the lawyer Nurkanov N.U., who is the representative of Amirkhanov E.A. on the basis of warrant No. 7 dated February 19th 2019, the latter currently resides in the United States of America.

Whereas, in accordance with Article 123 of the Criminal Procedural Code of the Republic of Kazakhstan (hereunder referred as "CPC RK"), factual data can be used as evidence only after they are recorded in the protocols of procedural actions.

At the same time, during the verification of the arguments of Amirkhanov E.A., it was established that under the leadership of the chief investigator of the ID of the NSC RK Igoshin Yu.V. a pre-trial investigation in criminal case No. 180000041000074 was registered and conducted under Article 253 Part 6 of the Criminal Code of the RK, in relation to Mr. Amirkhanov E.A as a Chairman of the Procurement Commission "TsentrKazenergoMontazh" JSC (hereinafter – TsKEM)., and a member of this commission Nurtazin E.I. on the fact of commercial bribery. The reason for pre-trial investigation was an application of the former director of KazEnergoMash Corporation LLP Tsoi E.V. about the commercial bribery of these persons, as well as Claim from Director of "TrustSredAzEnergoMontazh" JSC Hwan S., who is the sole shareholder of JSC "TsKEM" on bringing Amirkhanov E.A. and Nurtazin E.I to justice for the damage caused to the company. The Prosecutor General's Office of the Republic of Kazakhstan assigned the pre-trial investigation to the ID of the NSC RK.

Protection of the rights and interests of the suspect Amirkhanov E.A. during the criminal proceedings was carried out by the lawyer of the Karaganda region Bar Association Matveenkov G. under warrant No. 065024 of May 05, 2018 and the lawyer of the Almaty City Bar Association Ryspekova B. under warrant No. 07266 of May 05, 2018.

During the investigation, Amirkhanov E.A., while in custody, initiated through lawyer Matveenkov G. a meeting with business partners Klebanov A.Ya. and Kan S.V., and after the agreement made civil transactions, namely,  under purchase-sale agreements dated July 23rd, 2018, sold shares of CAPEC JSC belonging to him in the amount  of 15.49% to Klebanov A.Ya., Kan S.V. to each, and also transferred 2.46% of shares to CAPEC JSC, in addition, acquired 23.8% of

2

shares of Eximbank, JSC,  and also under agreements dated July 23rd, 2018 undertook the obligations to compensate damages in the amount of 55 billion tenge.

On July 23rd 2018, the NSC RK received a statement from Khvan S. about revoking the claim of bringing to justice Amirkhanov E.A. and Nurtazin E.I.

On July 24th, 2018, a similar statement on the termination of criminal prosecution against the above-mentioned persons was received from E.V. Tsoi.

On August 03rd 2018, investigator Igoshin Yu.V. based on the results of consideration of these documents, made a decision to terminate pre-trial proceedings in a criminal case against Amirkhanov E.A. and Nurtazin E.I. under Article 253 Part 6 of the Criminal Code of the RK, in connection with the withdrawal of the claims from the  commercial organizations.

According to the results of the study of the criminal case, the senior prosecutor of the Criminal Prosecution Service of the Prosecutor General's Office of the RK Sarpekov S. on August 05, 2018 agreed with the decision.

Currently, the above-mentioned criminal case of the NSC RK has been terminated on non-exonerated foundation and is in the archive of the GP RK in Nur-Sultan, the prosecutor's office has not revoked this decision.

According to the results of familiarization with the materials of the criminal case, Amirkhanov E.A., Nurtazin E.I. had no complaints.

Interrogated as a witness entitled to defense, Igoshin Yu.V. showed that by the pre-trial investigation of criminal case No. 180000041000074, the guilt of Amirkhanov E.A., Nurtazin E.I. was proved completely by the evidences collected, including the incriminating testimony of Nurtazin E.I. about receiving illegal remuneration from Tsoi E.V. on the instructions of Amirkhanov E.A., which he was insisted on during the entire period of the preliminary investigation. All investigative actions with Amirkhanov E.A., Nurtazin E.I. were carried out in the presence of defenders. According to the oral statement of Amirkhanov E.A., his defenders, on his initiative, organized a meeting with business partner Kan S.V. in the building of the Investigative Department of the NSC RK. During the meeting, they do not know what agreement was reached, since only defenders took part in all meetings between them, but as a result, counter-statements were received about the termination of criminal prosecution against Amirkhanov E.A., Nurtazin E.I.

On the day of termination of the investigation, Amirkhanov E.A. voluntarily wrote a statement about the absence of complains on the actions of the officers of the investigation group of the NSC RK.

Interrogated as a witness entitled to defense, Shaiken N.H. testified that he was not part of the investigation group on the criminal case against Amirkhanov E.A., he met with Amirkhanov E.A.

a couple of times in the offices of investigators where he carried out the general management of the investigative unit. The conversations were brief, on abstract topics (about the weather, about life, etc.) and unrelated to the circumstances of the criminal case , which took place strictly in the presence of lawyers, and Amirkhanov E.A didn't put forward any requirements, including the sale of CAPEC JSC shares, and he didn't exert any pressure on him.

According to the oral statement of Amirkhanov E.A., his defenders, on his initiative, organized a meeting with business partner Kan S.V. in the building of the Investigative Department of the NSC RK. During the meeting, they do not know what agreement was reached, since only defenders took part in all meetings between them, but as a result, counter-statements were received about the termination of criminal prosecution against Amirkhanov E.A., Nurtazin E.I.

Interrogated as a witness entitled to defense, R. Kokumbaev testified that he was not part of the investigation group on criminal case against E.A. Amirkhanov, and he met with E.A. Amirkhanov a couple of times in the offices of investigators. During the conversation, Amirkhanov E.A. was interested in the termination of the criminal case against him, to which he explained that taking a decision on a criminal case isn't within his competence, therefore, he needed to contact the investigator with these questions. Conversations related to the circumstances of the criminal case took place strictly in the presence of lawyers, Amirkhanov E.A. didn't put forward any demands, including the sale of CAPEC JSC shares, and he didn't exert any pressure on him.

He doesn't know where, when and with whom Amirkhanov E.A. met with the injured parties. He personally did not take part in these meetings.

Subsequently, he learned from his subordinates about the termination of the criminal case against Amirkhanov E.A. and Nurtazin E.I., the reasons for this decision by the injured party are unknown to him.

Interrogated as a witness entitled to protection, Iskakov R.S. gave similar testimony to the testimony of Kokumbaev R.T.

The notary Sadykova G.B. interrogated as a witness showed that on the basis of license No. 13003300 issued by the Committee of the Registration Service for Legal Assistance of the Ministry of Justice of the RK dated March 05th, 2013 she carries out notarial activities at the address: Nur-Sultan Dostyk str. 5, VP 55.

On July 23rd 2018, at the request of the lawyer of CAPEC JSC Iskakov R.N. at about 21:00 with departure to the address: Astana, Mangelik El Ave., entrance 10C (House of Ministries) she notarized the purchase-sale agreement of shares of CAPEC JSC between Amirkhanov E.A. and Kan S.V., registered in the register No. 1583, between Amirkhanov E.A. and CAPEC JSC represented by Iskakov R.N., registered in the register No. 1584, between Amirkhanov E.A. and Klebanov A.Ya., registered in the register No. 1586.

4

Before performing these notarial actions, at her request, the parties to the transaction, namely Amirkhanov E.A., Kan S.V., Iskakov R.N., had presented identification cards, while Amirkhanov E.A. also provided a notarized consent of his wife Zhaksylykova L. for the sale of shares. When the parties expressed their will to make a transaction, no one gave any signs that someone was against making a transaction. She clarified with each participant of the transaction whether the contract and its content corresponds to their will, to which all participants confirmed the essence of the transaction. After that, she asked Amirkhanov E.A. whether he would sign a contract with Klebanov A.Ya., since the latter was still on the way, to what Amirkhanov E.A. signed the contract. Later Klebanov A.Ya. drove up and also signed the documents. During the signing of the deals, he was advised by a woman and a man who were unknown to her, and as she understood further they were representatives of Amirkhanov E.A.

Interrogated as a witness, Nurtazin E.I. showed that he was a relative of Amirkhanov E.A., and in 2018, a criminal case was initiated against him and Amirkhanov E.A. by the NSC RK at the request of the director of KazEnergoMash LLP Tsoi E.V. under Article 256 of the Criminal Code of the RK on the fact of receiving illegal remuneration, and in addition The Director of JSC "SredAzAnergoMontazh" Hwan S. applied to the NSC RK with claims for criminal responsibility. The pre–trial investigation was carried out by the investigation group of the ID NSC RK. All actions with his participation were carried out by the investigator of the NSC RK Igoshin Yu.V., his interests were protected by lawyer Shapenov S. He fully admitted his guilt and gave truthful testimony voluntarily, there was no coercion on the part of officials, he has no claims against them. At the beginning of August 2018, the criminal prosecution against him and Amirkhanov E.A. was terminated due to the withdrawal of applications by Tsoi E.V., Hwang S. Why the latter withdrew statements is unknown to him. He doesn't know anything about any illegal actions against Amirkhanov E.A. from the officers of NSC RK and other persons.

Interrogated as a witness, Hwang S. testified that he has been a director of JSC "Trust "SAEM " since 2017, previously Nurtazin E.I. worked in this position. After being appointed to the position and analyzing financial and economic activities, it was found that one of the transactions made by JSC "TsentrKazEnergoMontazh" was committed in violation of internal procedures. During the specified period of the transaction, the head of the procurement commission was Amirkhanov E.A. In this regard, on the recommendation of lawyers, acting in the interests of the company, he applied to the NSC RK for the bringing of Amirkhanov E.A. to criminal responsibility.

Regarding to the appeal of the director of KazEnergoMontazh Corporation LLP Tsoi E.V. to the bodies of the NSC RK on bringing to criminal responsibility Amirkhanov E.A., Nurtazin E.I., in connection to the commercial bribery committed he does not know anything. Subsequently, he appealed with the withdrawal of the application, the reasons for which he does not currently

5

remember, possibly in connection with the restoration of the company's interests. He does not know anything about the subsequent procedural decision regarding Amirkhanov E.A., Nurtazin E.I., as well as about any illegal acts against Amirkhanov E.A., Nurtazin E.I. With the founders of CAPEC JSC he was familiar from business.

E.V. Tsoi, who was interrogated as a witness, testified that in the period from 2011 to 2017 he worked as one of the first heads of KazEnergo Mash Corporation LLP. At the beginning of May 2018, he applied to the NSC RK to bring to criminal responsibility the Chairman of the Board of CAPEC JSC Amirkhanov E.A. and Nurtazin E.I. upon receiving from him a monetary reward in the amount of 80,000,000 tenge for signing a contract for the supply of equipment to JSC "TsentrKazEnergoMontazh", from his personal funds, which he planned to return from the transaction. However, having not received the results of the transaction , he was forced to resign and turned to Nurtazin E. about the return of funds, with whom was previously familiar and has a friendly relations. However, Nurtazin E.I. replied that he had transferred all the money to Amirkhanov E.A., and without receiving it back, he applied to the NSC RK. During the investigation, it turned out that Nurtazin E.I. kept 30,000,000 tenge for himself, and transferred 50,000,000 tenge to Amirkhanov E.A.

Subsequently, due to friendly relations with Nurtazin, E.I. he withdrew his application. He does not know anything about any illegal actions against Amirkhanov E.A. by officers of the NCK RK and other persons.

Interrogated as a witness entitled to defense, Kan S.V. testified that since about 1997, he, Amirkhanov E.A., Klebanov A.Ya. began joint activities, approximately in 1998 acquired Pavlodar CHP-2 and CHP-3. In 2001, they agreed to conduct joint activities in the energy sector, as partners in equal shares, for this purpose they established the company JSC Central Asian Power-Energy Company or CAPEC, JSC. All operational activities were carried out through JSC "Central-Asian Energy Corporation" or CAEC, JSC, which until September 2017 was headed by Amirkhanov E.A. At the initiative of Amirkhanov E.A. in 2004, the shares of the state JSC "Eximbank Kazakhstan" were purchased from the state, where Amirkhanov E.A. was appointed Chairman of the Management Board, so that he would solely managed these companies.

After the expiration of time, he was dissatisfied with the management of Amirkhanov E.A., as the financial performance of the company began to deteriorate, and he offered his partners to buy back his shares and exit the business.

In the process of joint activity, Amirkhanov created JSC "SredAzEnergoMontazh", to which neither he nor Klebanov A.Ya. has any relations, but Amirkhanov E.A. abusing their trust, began to use the resources of CAPEC JSC for the development of personal business. Subsequently,

6

Amirkhanov E.A. had problems with the activities of JSC "SredAzEnergoMontazh", during which he was arrested by the NSC RK, but the details of the criminal prosecution are unknown to him.

In September 2017, before his arrest, he, Klebanov A.Ya., Amirkhanov E.A. agreed that the management of the joint business would be transferred to him. This decision was agreed with other shareholders represented by the European Bank for Reconstruction and the Islamic Investment Fund, which together owned 33.1% of the shares of CAPEC JSC.

Having started management, he tried to return the money of CAPEC JSC in the amount of approximately 12 billion tenge from the deposit account of Eximbank JSC, but it turned out that there were no funds in the account. During the proceedings, it turned out that Amirkhanov E.A., being the chairman of the Board of Eximbank JSC, issued irrevocable loans to 50 companies in the amount of about 55 billion tenge, the founders of the companies were relatives of Amirkhanov E.A.

Later, he does not remember the exact time when Amirkhanov E.A. was arrested by the NSC RK, lawyer Matveenkov G. asked him to help Amirkhanov E.A., but in this situation he could not help, but said that he would make claims on joint business if Amirkhanov E.A. did not cover all obligations and debts, which were formed during his reign, with which Klebanov A.Ya. agreed. For these purposes, at the initiative of Amirkhanov E.A., his lawyer Matveenkov G. began to ask for a meeting to settle disputes, and organized a meeting in the building of the NSC RK, while he did not know or contact any of the officers of the NSC RK. During the meeting with Amirkhanov E.A., which was in presence of Amirkhanov E.A.'s lawyers, they discussed the details of the agreement, where they agreed that the latter would transfer to him and Klebanov A.Ya. his shares in CAPEC JSC, and he would transfer his shares to Eximbank JSC. This agreement was drawn up in the presence of lawyers of Amirkhanov E.A., and notarized. This meeting was organized on the initiative of Amirkhanov E.A.

The signed agreement was summarized by the fact that he and Klebanov A.Ya. will assume obligations to the European Bank for Reconstruction and the Islamic Investment Fund in the amount of 37 billion tenge, as well as to the "Pension Fund" in the amount of 17 billion tenge, for which Amirkhanov E.A. pledged to return to Eximbank JSC non-refundable loans for the amount of about 55 billion tenge.

However, Amirkhanov E.A. did not fulfill the terms of the agreement and disappeared outside the Republic of Kazakhstan.

When signing the above documents, no pressure was exerted on Amirkhanov E.A., these agreements and contracts were concluded on his initiative, when they were signed with Amirkhanov E.A. there were his lawyers who checked these documents from the legal side, and

7

were notarized. He isn't aware of any illegal acts against Amirkhanov by the officers of the NSC RK.

During the investigation, those witnesses indicated in the agreement, about which Amirkhanov E.A. wrote in his statement, the owners of AG Invest LLP - Becker O.E., Cronos Development LLP, Trusttechnoinvest LLP - Baidusenova G.E., Dan Partners LLP, IFM Group LLP - Zhaksylykov D.K., LLP "IPoint Kazakhstan" - Amirkhanov E.A., LLP "AlatauAztEkhnoKom" - Akhambekova I.B., LLP "Almaly Prominvest", LLP "Stroyinservice" - Alimbekova A.S., LLP "Impulse-R" - Kasymova K.M., LLP "Integral ST" - Tulaev R.Yu., LLP "Inter Service Reserve" - Aitalieva A.A., Tera-Ko LLP - Shakhmardanova T.S., LLP "Tsentrenergokomplekt" - Zhapasova Z.H., LLP "ENERGOINVEST-PV" - Em S.S., LLP "Tarlan Riz" - Isabekova Z.D., LLP "Avelon Company" - Amanbekova G.H., LLP "Business Complex PC" - Sembekov E.A., LLP "Investment Technologies company" - Sembekova K.A., LLP "Stroy Energo Repair-Pavlodar" - Sembekov K.T., LLP "Stroy Energo Repair-Pavlodar" - Temirgaliyev. Zh.S., Ertis Orda LLP- Nurtazina Zh.I., interrogated in the criminal case, showed that at different times they worked in CAPEC JSC and its subsidiaries in various positions, are relatives and acquaintances of Amirkhanov E.A., and at his direction, or at the direction of G. Artambayeva, who at that time was the chairman of the Board of CAPEC JSC took over the companies and signed for the loans to these companies in Eximbank JSC. At the same time, they explained that they themselves were not personally engaged in the activities of the companies, did not use credit funds, the further usage and loan application is unknown to them. They didn't see documents of the companies issued in their name, they signed all the documents on the instructions of Amirkhanov E.A., Artambayeva G. and Zaberezhny D., who worked at CAPEC JSC.

Questioned on this fact, Amirkhanov's lawyer – Ryspekova B.K. showed that she would not explain anything about the information that became known to her during the performance of her duties to protect Amirkhanov E.A., pointing to the requirements of "attorney-client privilege". She was hired by relatives of Amirkhanov E.A. with lawyer Matveenkov G., as friends of the Amirkhanov's family. In addition, it showed that during the investigation, the employees of the NSC RK Iskakov, R. Kokumbaev pointed out to E.A. Amirkhanov on the transfer of shares of CAPEC JSC to business partners, in addition, when signing agreements and sales contracts, she indicated to the notary about the reflection of information about the time of civil transactions, since she believed that these transactions were not in favor of her client. The contracts and agreements were signed by her client Amirkhanov E.A. as a condition of termination the current criminal case.

The applicant's wife, Amirkhanov E.A. – Zhaksylykova L.S., questioned on this fact, testified that her husband had previously conducted a joint business with Klebanov A.Ya., Kan S.V., with whom they had been friends since 1997. In 2017, they had disputes over doing business, and as a result

8

of which in 2018 her spouse was detained by the NSC RK, but currently she does not agree with the contracts and agreements signed by her spouses, currently the spouse lives in America with G. Artambayeva, keeps in touch with him by phone, indicated pressure from the officers of the NSC RK when signing these documents.

Amirkhanov's defender – Matveenkov G. using the norm of Article 78 Part 2 of the Criminal Practice Code of the Republic of Kazakhstan refused to testify.

The lawyer of CAPEC JSC Iskakov R.N., questioned on this fact, testified that, at the direction of the management of CAPEC JSC, he was instructed to act as a proxy on behalf of CAPEC JSC, and to provide legal support for transactions of purchase and sale of shares of CAPEC JSC, between shareholders with whom he is not in close relations, knows them as shareholders. After that, they invited the notary Sadykova G.B. to draw up these documents. Upon arrival at the building of the NSC RK, there he met the defenders of one of the shareholders Amirkhanov E.A. – Matveenkov G., Ryspekova B., who informed him that they have initiated a meeting between shareholders of CAPEC JSC Amirkhanov E.A., Klebanov A.Ya., Kan S.V. He accompanied the legal registration of all documents, as three contracts were concluded, two between shareholders, i.e. Amirkhanov – Kan, Amirkhanov – Klebanov, and Amirkhanov – CAPEC JSC, as well as two agreements, on the same day Amirkhanov E.A. when transferring shares, asked to transfer shares of Eximbank JSC, since he undertook the debts that he had accumulated. The notary documented everything, made sure of the freedom of will and issued all the above documents. The participants of the transactions had no questions about these documents when signing them, everything was legally executed. In addition, he showed that the corporate conflict between shareholders, as he understood from conversations in the organization, began after in 2017, due to a complaint from a foreign shareholder, the European Bank for Reconstruction and Development, they found out that the invested capital was being robbed, since being a member of the Board of Directors of Eximbank JSC, Amirkhanov E.A. I used this money to issue irrevocable loans in Eximbank JSC for companies affiliated with Amirkhanov E.A.

After that, in August 2018, Amirkhanov E.A. began to fulfill the terms of the concluded agreement, but then suddenly disappeared, to which, being representative of CAPEC JSC, he filed a claim in connection with non-fulfillment of obligations under the agreement. Amirkhanov did not take part in the court, his representative Ryspekova Bibigul took part, the claims of CAPEC JSC were fully satisfied in court. Neither CAPEC JSC, nor the shareholders of Kan S.V., Klebanov A.Ya., nor Amirkhanov E.A. appealed the purchase and sale agreements.

At the same time, according to the decision of the Medeu District Court of Almaty dated January 29th 2019, left unchanged by the decision of the Board for Civil Cases of the Almaty City Court dated April 04th 2019, all transactions were not disputed, the court found that according to the

information from the concluded agreement, Amirkhanov E.A. assumed obligations to repay the debt to Eximbank JSC on the amount of about 55 billion tenge.

Amirkhanov E.A.'s arguments that he was in a state of limited legal capacity while under arrest are unreasonable, and the court recognized the disputed transaction as corresponding to civil law legislation.

In addition, the court found that after the signing of these documents, Amirkhanov E.A. carried out activities in Eximbank JSC, since, being its shareholder, he held meetings and carried general management of Eximbank JSC.

In accordance with the requirements of Article 127 of the Criminal Practice Code of the RK, the events and actions established by the above-mentioned court decision on the commission of the specified civil transactions by Amirkhanov E.A. are mandatory for the body conducting the criminal process.

It should also be taken into account the existing interest of the lawyer Ryspekova B.G., the wife of Amirkhanov E.A. - Zhaksylykova L.S. in the outcome of the case in favor of Amirkhanov E.A. Thus, the arguments of Amirkhanov E.A. indicated in the statement did not find their actual confirmation, and the established factual data indicate that the transaction on the sale of CAPEC JSC shares owned by him to Kan S.V. in the amount of 15.49%, to Klebanov A.Ya. in the amount of 15.49%, to CAPEC JSC in the amount of 2.46%, the acquisition of shares of Eximbank JSC and acceptance of obligations to compensate for damage in the amount of 55 billion tenge, committed voluntarily, without any coercion of the participants of the transactions and the body conducting criminal prosecution.

In accordance with Part 2 of Article 35 of the Criminal Practice Code of the Republic of Kazakhstan, the proceedings are terminated on the grounds provided in paragraph 2 of Part 1 of Article 35 of the Criminal Practice Code of the RK, both if the absence of an event of a criminal offense or the composition of a criminal offense is proven, and if their presence is not proven, if all possibilities for collecting additional evidence have been exhausted.

In this regard, according to Part 2 of Article 35 of the Criminal Practice Code of the Republic of Kazakhstan, the criminal case is subject to termination due to absence of a criminal offense.

According to Article 35 Part 6 of the Criminal Procedure Code of the Republic of Kazakhstan, the criminal investigation authority, having discovered circumstances precluding criminal prosecution, issues a resolution on termination of the criminal case at any stage of pre-trial proceedings.

On the basis of the above, guided by Article 35, Part 2, 60, 198, 288 of the Criminal Practice Code of the Republic of Kazakhstan

**DECIDED:**

1. To terminate a pre-trial proceedings No. 190000131000019 registered under Article 361 Part 4 of the Criminal Code of the Republic of Kazakhstan due to the absence a criminal offense.

2. To keep all physical evidence in the case.

3. To send a copy of this resolution to the supervising prosecutor.

4. To notify persons interested about the decision taken.

**Investigator of the DIA of the ID**

**of Anti-Corruption Service in Nur-Sultan city**                    **Zarir E.M**

11

**ПОСТАНОВЛЕНИЕ**
о прекращении досудебного расследования

06 августа 2022 года                                                      г. Нур-Султан

        Следователь по ОВД СУ Антикоррупционной службы по г. Нур-Султан
Зарир Е.М., рассмотрев материалы уголовного дела №190000131000019;

## УСТАНОВИЛ:

        Настоящее уголовное дело №190000131000019 зарегистрировано в
Едином реестре досудебных расследований по заявлению Амирханова Е.А. о
привлечении к уголовной ответственности должностных лиц Комитета
национальной безопасности Республики Казахстан *(далее по тексту – КНБ РК)*, а
также бывших бизнес-партнеров - Клебанова А., Кан С., Прихожан Д. и Цой
Е. по ст. 361 ч.4 п. 3 УК РК, по факту его незаконного привлечения к уголовной
ответственности и принуждения к подписанию 2 Соглашений и 3 Договоров
купли-продажи акций Акционерного общества «Центрально-азиатской
топливно-энергетической компании» *(далее по тексту АО «ЦАТЭК»)*, акций
Акционерного общества «Эксимбанк Казахстан» *(далее по тексту АО «Эксимбанк
Казахстан»)*.
        Поводом для начала досудебного расследования в отношении
сотрудников КНБ РК и других лиц послужило заявление Амирханова Е.А.
        Из заявления Амирханова Е.А. следует, что 23.07.2018 году в период
времени с 22:00 по 23:20 часов в здании КНБ РК при участии должностных
лиц КНБ РК Игошина Ю., Шайкен Н., Кокумбаева Р., Искакова Р., партнеры
по бизнесу Клебанов А., Кан С., Прихожан Д. и Цой Е., под угрозой
привлечения к уголовной ответственности принудили Амирханова Е.А.
*(содержался под стражей)* подписать 2 Соглашения и 3 Договора, согласно
которым он продал 31% акций АО «ЦАТЭК» по заниженной среднерыночной
стоимости за 20 000 000 тенге, одновременно заставив приобрести 23,8%
акций неликвидного АО «Эксимбанк Казахстан» за вышеуказанную сумму,
передавая Амирханову Е.А. долговые обязательства банка.
        В ходе досудебного расследования допросить Амирханова Е.А. по
указанным в заявлении обстоятельствам дела не представилось возможным,
так как согласно ответа Пограничной службы КНБ РК Амирханов Е.А.
22.11.2018 году рейсом SU-1947 а/к «Аэрофлот» сообщением «Алматы –
Москва» покинул территорию Республики Казахстан вылетев в г.Москву и
более на территории Республики Казахстан не въезжал.
        Согласно сведений Системы информационного обмена
правоохранительных органов *(далее по тексту – СИО ПСО)* Амирханов Еркын
Адамиянович, 04.05.1967 г.р. с 12.03.2020 года находится в
межгосударственном розыске, как скрывшееся от уголовного преследования
лицо по уголовному делу №197500121000131, зарегистрированному

Департаментом полиции по г.Алматы по ст.189 ч.4 п.п.1,2 УК РК, с мерой пресечения «Содержание под стражей».

По сведениям адвоката Нурканова Н.У., который является представителем Амирханова Е.А. на основании ордера №7 от 19.02.2019 года, последний проживает в настоящее время в Соединенных Штатах Америки.

Тогда как в соответствии со ст.123 УПК РК, фактические данные могут быть использованы в качестве доказательств только после их фиксации в протоколах процессуальных действий.

Вместе с тем, в ходе проверки доводов Амирханова Е.А. установлено, что следственно – оперативной группой под руководством главного следователя Следственного департамента КНБ РК Игошина Ю.В. производилось досудебное расследование по уголовному делу №180000041000074, зарегистрированному в ЕРДР по ст. 253 ч.6 УК РК, в отношении Председателя комиссии по закупочной деятельности АО «Центрказэнергомонтаж» (далее - ЦКЭМ) Амирханова Е.А., и члена данной комиссии Нуртазина Е.И. по факту коммерческого подкупа. Поводом для начала досудебного расследования послужило заявление бывшего директора ТОО «Корпорация КазЭнергоМаш» Цой Е.В. о совершенном коммерческом подкупе указанных лиц, а также отношение директора АО «Трест Средазэнергомонтаж» Хван С., являющегося единственным акционером АО «ЦКЭМ» о привлечении к уголовной ответственности Амирханова Е.А. и нуртазина Е.И. к уголовной ответственности за причиненный материальный ущерб компании. Генеральной прокуратурой РК досудебное расследование поручено Следственному департаменту КНБ РК.

Защиту прав и интересов подозреваемого Амирханова Е.А. при производстве по уголовному делу осуществляли адвокат Карагандинской области коллегии адвокатов Матвеенков Г. по ордеру №065024 от 05.05.2018 года и адвокат Алматинской городской коллегии адвокатов Рыспекова Б. по ордеру №07266 от 05.05.2018 года.

В ходе расследования, Амирханов Е.А. находясь под стражей инициировал через адвоката Матвеенкова Г. встречу с бизнес-партнерами Клебановым А.Я. и Кан С.В., и после соглашения совершил гражданско-правовые сделки, а именно по договорам купли-продажи от 23.07.2018 года продал принадлежащие ему акции АО «ЦАТЭК» по 15,49% Клебанову А.Я., Кан С.В. каждому, а также передал АО «ЦАТЭК 2,46 % акций, кроме того приобрел 23,8 % акций АО «Эксимбанк Казахстан», а также по соглашения от 23.07.2018 года обязался возместить ущерб на сумму 55 млрд.тенге.

23.07.2018 года в КНБ РК поступило заявление Хван С. об отзыве отношения о привлечении к уголовной ответственности Амирханова Е.А., Нуртазина Е.И.

24.07.2018 года аналогичное заявление поступило от Цой Е.В. о прекращении уголовного преследования в отношении вышеуказанных лиц.

03.08.2018 года следователем Игошиным Ю.В. по итогам рассмотрения указанных документов принято решение о прекращении досудебного производства по уголовному делу в отношении Амирханова Е.А., Нуртазина

Е.И. по ст. 253 ч.6 УК РК, в связи с отзывом руководителей коммерческих организаций о привлечеиии лиц к уголовной ответственности.

По результатам изучения уголовного дела, старшим прокурором отдела Службы уголовного преследования Генеральной прокуратуры РК Сарпековым С. 05.08.2018 года с принятым решением выражено согласие.

В настоящее время вышеуказанное уголовное дело КНБ РК прекращено по не реабилитирующим основаниям и находится в архиве УКПС и СУ ГП РК по г.Нур-Султан, прокуратурой принятое процессуальное решение не отменялось.

По результатам ознакомления с материалам уголовного дела Амирханов Е.А., Нуртазин Е.И. претензий не имели.

Допрошенный в качестве свидетеля, имеющего право на защиту Игошин Ю.В. показал, что досудебным расследованием уголовного дела №180000041000074, виновность Амирханова Е.А., Нуртазина Е.И. была доказана полностью совокупностью собранных доказательств, в том числе изобличающими показаниями Нуртазина Е.И. о получении им от Цой Е.В. незаконного вознаграждения по указанию Амирханова Е.А., на которых он настаивал весь период предварительного следствия. Все следственные действия с Амирхановым Е.А., Нуртазиным Е.И. проводились в присутствии защитников. По устному заявлению Амирханова Е.А., его защитниками по его инициативе в здании Следственного департамента КНБ РК организована встреча с бизнес-партнером Кан С.В. В ходе встречи какое соглашение было достигнуто им неизвестно, так как во всех встречах между ними участие принимались только защитниками, но по итогу поступили встречные заявления о прекращении уголовного преследования в отношении Амирханова Е.А., Нуртазина Е.И.

В день прекращения расследования Амирхановым Е.А. добровольно написано заявление об отсутствии претензий к сотрудникам следственно-оперативной группы КНБ РК.

Допрошенный в качестве свидетеля, имеющего право на защиту Шайкен Н.Х. показал, что в состав следственно – оперативной группы по расследованию уголовного дела в отношении Амирханова Е.А. не входил, с Амирхановым Е.А. виделся пару раз в кабинетах следователей, когда осуществлял общее руководство следственным подразделением. Беседы были непродолжительными на отвлеченные темы (о погоде, о жизни и т.д.) не связанные с обстоятельствами расследуемого уголовного дела, которые проходили строго в прнсутствии адвокатов, какие-либо требования Амирханову Е.А. не выдвигал, в том числе о продаже акций АО «ЦАТЭК», какого-либо давления на него не оказывал.

По устному заявлению Амирханова Е.А., его защитниками по его инициативе в здании Следственного департамента КНБ РК организована встреча с бизнес-партнером Кан С.В. В ходе встречи какое соглашение было достигнуто им неизвестно, так как во всех встречах между ними участие принимались только защитниками, но по итогу поступили встречные

заявления о прекращении уголовного преследования в отношении Амирханова Е.А., Нуртазина Е.И.

Допрошенный в качестве свидетеля, имеющего право на защиту Кокумбаев Р. показал, что в состав следственно – оперативной группы по расследованию уголовного дела в отношении Амирханова Е.А. не входил, с Амирхановым Е.А. виделся пару раз в кабинетах следователей. В ходе беседы Амирханов Е.А. интересовался прекращением уголовного дела в отношении него, на что он пояснил, что принятие процессуального решения по уголовному делу не входит в его компетенцию, поэтому с данными вопросами тому необходимо обратиться к следователю. Беседы связанные с обстоятельствами расследуемого уголовного дела проходили строго в присутствии адвокатов, какие-либо требования Амирханову Е.А. не выдвигал, в том числе о продаже акций АО «ЦАТЭК», какого-либо давления на него не оказывал.

Где, когда и с кем Амирханов Е.А. встречался с потерпевшими ему неизвестно. Лично ои в указанных встречах участия не принимал.

В последующем от подчиненных ему стало известно о прекращении уголовиого дела в отношении Амирханова Е.А., Нуртазина Е.И., причины о принятии указанного решения потерпевшей стороной ему неизвестны.

Допрошенный в качестве свидетеля, имеющего право на защиту Искаков Р.С. дал аналогичные показания показаниям Кокумбаева Р.Т.

Допрошенная в качестве свидетеля нотариус Садыкова Г.Б. показала, что на основании лицензии №13003300, выданной Комитетом регистрационной службы оказания правовой помощи Министерства юстиции Республики Казахстан от 05.03.2013 года осуществляет нотариальную деятельность по адресу: г.Нур-Султан ул.Достык 5, ВП 55.

23.07.2018 года она по просьбе юриста АО «ЦАТЭК» Искакова Р.Н. примерно в 21:00 часов с выездом по адресу: г.Астана пр.мангелик Ел 8 подъезд 10С (дом министерств) нотариально удостоверила договора купли-продажи акций АО «ЦАТЭК» между Амирхановым Е.А. и Кан С.В., зарегистрировав в реестре №1583, между Амирхановым Е.А. и АО «ЦАТЭК» в лице Искакова Р.Н., зарегистрировав в реестре №1584, между Амирхановым Е.А. и Клебановым А.Я., зарегистрировав в реестре №1586.

Перед совершением указанных нотариальных действий, по ее просьбе стороны сделки, а именно Амирханов Е.А., Кан С.В., Искаков Р.Н. предъявили удостоверения личности, при этом Амирханов Е.А. также предоставил нотариально заверенное согласие своей супруги Жаксылыковой Л. на продажу акций. При волеизъявлении сторон на совершение сделки каких-либо знаков о том, что кто-то против совершения сделки никто не подавал. Она у каждого участника сделки уточнила действительно ли то, что указано в договоре и соответствует ли их волеизъявлению, на что все участники подтвердили суть сделки. После чего уточнила у Амирханова Е.А. будет ли тот подписывать договор с Клебановым А.Я., так как последний находился еще в пути, на что Амирханов Е.А. подписал договор. Позже подъехал Клебанов А.Я. и тоже подписал документы. В ходе подписания сделок его консультировали

женщина и мужчина, которые ей неизвестны, как поняла далее представители Амирханова Е.А.

Допрошенный в качестве свидетеля Нуртазин Е.И. показал, что является родственником Амирханова Е.А., и в 2018 году в отношении него и Амирханова Е.А. было возбуждено уголовное дело КНБ РК по заявлению директора ТОО «КазЭнергоМаш» Цой Е.В. по ст. 256 УК РК по факту получения незаконного вознаграждения, кроме того о привлечении их к уголовной ответственности в КНБ РК обратился директор АО «СредАзЭнергоМонтаж» Хван С. Досудебное расследование осуществлялось следственно – оперативной группой СД КНБ РК. Все следственные действия с его участием проводил следователь КНБ РК Игошин Ю.В., защиту его интересов осуществлял адвокат Шапенов С. Вину свою он полностью признал и дал правдивые показания добровольно, какого-либо принуждения со стороны должностных лиц не было, претензий к ним никаких не имеет. В начале августа 218 года уголовное преследование в отношении него и Амирханова Е.А. было прекращено в связи с отзывом заявлений Цой Е.В., Хван С. Почему последние отозвали заявления ему неизвестно. О каких-либо противоправных действиях в отношении Амирханова Е.А. со стороны сотрудников КНБ РК и других лиц ничего не знает.

Допрошенный в качестве свидетеля Хван С. показал, что является директором АО «Трест «САЭМ СредАзЭнергоМонтаж» с 2017 года, ранее на указанной должности работал Нуртазин Е.И. После назначения на должность и анализа финансово – хозяйственной деятельности было установлено, что одна из сделок, совершенная АО «ЦентрКазЭнергоМонтаж» совершена в нарушение внутренних процедур, в указанный период сделки руководителем закупочной комиссии являлся Амирханов Е.А. В этой связи он по рекомендации юристов, действуя в интересах компании обратился с заявлением в КНБ РК о привлечении Амирханова Е.А. к уголовной ответственности.

По поводу обращения директора ТОО «Корпорация КазЭнергоМонтаж» Цой Е.В. в органы КНБ РК о привлечении к уголовной ответственности Амирханова Е.А., Нуртазина Е.И. о совершенном ими коммерческом подкупе ему ничего не известно. В последующем обратился с отзывом заявления, причины которого в настоящее время не помнит, возможно в связи с восстановлением интересов компании. О принятом в дальнейшем процессуальном решении в отношении Амирханова Е.А., Нуртазина Е.И. ему ничего неизвестно, о каких-либо противоправных деяниях в отношении Амирханова Е.А., Нуртазина Е.И. ему ничего не известно. С учредителями АО «ЦАТЭК» знаком по бизнесу.

Допрошенный в качестве свидетеля Цой Е.В. показал, что в период с 2011 по 2017 годы работал одним из первых руководителей ТОО «Корпорация КазЭнерго Маш». В иачале мая 2018 года обратился с заявлением в КНБ РК о привлечении к уголовной ответственности Председателя правления АО «ЦАТЭК» Амирханова Е.А. Нуртазина Е.И. по факту получения от него денежного вознаграждения в размере 80 000 000 тенге за подписание

контракта на поставку оборудования АО «ЦентрКазЭнергоМонтаж», со своих личных средств, которые планировал вернуть с указанной сделки. Однако не получив результаты сделки вынужден был уволится и обратился к Нуртазину Е. о возврате денежных средств, с которым был знаком ранее и состоял с ним в дружеских отношениях. Однако Нуртазин Е.И. ответил, что все деньги передал Амирханову Е.А., и не получив их обратно обратился с заявлением в КНБ РК. В ходе следствия выяснилось, что 30 000 000 тенге Нуртазин Е.И. оставил себе, а 50 000 000 передал Амирханову Е.А.

В последующем из-за дружеских отношений с Нуртазиным Е.И. отозвал свое заявление. О каких-либо противоправных действиях в отношении Амирханова Е.А. со стороны сотрудников КНБ РК и других лиц ему ничего не известно.

Допрошенный в качестве свидетеля, имеющего право на защиту Кан С.В. показал, что примерно с 1997 года он, Амирханов Е.А., Клебанов А.Я. начали совместную деятельность, примерно в 1998 году приобрели Павлодарский ТЭЦ-2 и ТЭЦ-3. В 2001 году они договорились вести совместную деятельность в энергетическом секторе, как партнеры в равных долях, в этих целях учредили компанию АО «Центральная Азиатская Топливно-Энергетическая компания» или АО «ЦАТЭК». Вся операционная деятельность осуществлялась через АО «Центрально-Азиатскую Энергетическую корпорацию» или АО «ЦАЭК», которую до сентября 2017 года возглавлял Амирханов Е.А. По инициативе Амирханова Е.А. в 2004 году были приобретены акции у государства АО «Эксимбанк Казахстан», куда Амирханова Е.А. назначили председателем Правления, чтобы он тем самым единолично управлял указанными компаниями.

По истечении времени он был недоволен управлением Амирханова Е.А., так как финансовые показатели компании стали ухудшаться, и ои предлагал партнерам выкупить его акции и выйти из бизнеса.

В процессе совместной деятельности Амирханов создал АО «СредАзЭнергоМонтаж», к которой ни он, ни Клебанов А.Я. никакого отношения не имели, но Амирханов Е.А. злоупотребляя их доверием , для развития личного бизнеса стал использовать ресурсы АО «ЦАТЭК». В последующем у Амирханова Е.А. возникли проблемы с деятельностью АО «СредАзЭнергоМонтаж», в ходе которых он был арестован органами КНБ РК, однако подробности уголовного преследования ему неизвестны.

В сентябре 2017 года, до ареста он, Клебанов А.Я., Амирханов Е.А. договорились что управление совместным бизнесом перейдет ему. Данное решение было согласовано с другими акционерами в лице Европейского банка реконструкции и Исламским инвестиционном фондом, которым суммарно принадлежало 33,1% акций АО «ЦАТЭК».

Приступив к управлению, он попытался вернуть деньги АО «ЦАТЭК» в размере примерно 12 млрд.тенге с депозитного счета АО «Эксимбанк Казахстан», однако выяснилось, что фактически денежных средств на счету не имеется. В ходе разбирательств выяснилось, что Амирханов Е.А. будучи председателем Правления АО «Эксимбанк Казахстан» выдал 50 компаниям

безвозвратные кредиты на сумму порядка 55 млрд.тенге, учредителями компаний оказались родственники Амирханова Е.А.

Позже точное время не помнит, когда Амирханов Е.А. был арестован КНБ РК к нему обратился адвокат Матвеенков Г. с просьбой помочь Амирханову Е.А., ио в данной ситуации он помочь не мог, но сказал, что будет предъявлять претензии по совместному бизнесу, в случае если Амирханов Е.А. не покроет все обязательства и долги, которые образовались в период его правления, с чем был согласен и Клебанов А.Я. В этих целях по инициативе Амирханова Е.А. его адвокат Матвеенков Г. стал просить о встрече для урегулирования споров, и организовал встречу в здании КНБ РК, при этом он ни с кем из сотрудников КНБ РК не знаком и не контактировал. В ходе встречи с Амирхановым Е.А., на которой присутствовали адвокаты Амирханова Е.А. они обсудили детали соглашения, где договорились, что последний передаст ему и Клебанову А.Я. долю своих акций «АО ЦАТЭК», а он передаст доли своих акций в АО «Эксимбанк Казахстан». Данное соглашение было составлено в присутствии адвокатов Амирханова Е.А., и заверено нотариусом. Данную встречу организовали по инициативе Амирханова Е.А.

Подписанное соглашение было резюмировано тем, что он с Клебановым А.Я. примут на себя обязательства перед Европейским банком реконструкции и Исламским инвестиционным фондом в размере 37 млрд.тенге, а также перед «Пенсионным фондом» в размере 17 млрд.тенге, на что Амирханов Е.А. обязался вернуть в АО «Эксимбанк Казахстан» выданные безвозвратные кредиты на сумму порядка 55 млрд.тенге.

Однако Амирханов Е.А. условия соглашения не выполнил и скрылся за пределами Республики Казахстан.

При подписании вышеуказанных документов на Амирханова Е.А. никакого давления не оказывалось, данные соглашения и договора были заключены по его инициативе, при их подписания с Амирхановым Е.А. были его адвокаты, которые проверяли данные документы с юридической стороны, и заверялись нотариусом.

О каких-либо противоправных деяниях в отношении Амирханова Е.А. со стороны сотрудников КНБ РК ему ничего не известно.

В ходе расследования допрошенные по уголовному делу в качестве свидетелей указанные в соглашении, о котором в своем заявлении писал Амирханов Е.А., владельцы ТОО «AG Invest» Беккер О.Е., ТОО «Cronos Development», ТОО «ТрастТехноИнвест» Байдусенова Г.Е., ТОО «Dan Partners», ТОО «IFM Group» Жаксылыков Д.К., ТОО «IPoint Kazakhstan» Амирханов Е.А., ТОО «АлатауКазТехноКом» Ахамбекова И.Б., ТОО «Алмалы Проминвест», ТОО «Стройинсервис» Алимбекова А.С., ТОО «Импульс-R» Касымова К.М., ТОО «Интеграл СТ» Тулаев Р.Ю., ТОО «Интер Сервис Резерв» Айталиева А.А., ТОО «Тера-Ко» Шахмарданова Т.С., ТОО «Центрэнергокомплект» Жапасова З.Х., ТОО «ЭНЕРГОИНВЕСТ-ПВ» Эм С.С., ТОО «Тарлан Риз» Исабекова З.Д., ТОО «Авелон Компани» Аманбекова Г.Х., ТОО «Бизнескомплект ПК» Сембеков Е.А., ТОО «Инвестиционные технологии компани» Сембекова К.А, ТОО «Строй Энерго Ремонт-Павлодар»

Сембеков К.Т., ТОО «Строй Энерго Ремонт-Павлодар» Темиргалиев. Ж.С., ТОО «Ертіс Орда» Нуртазина Ж.И.,  показали, что в разное время работали в АО «ЦАТЭК» и его дочерних компаниях на различных должностях, являются родственниками и знакомыми Амирханова Е.А., и по его указанию, либо по указанию Артамбаевой Г., которая на тот момент являлась председателем Правления АО «ЦАТЭК» оформили на себя компании и оформляли на указанные компании кредиты в АО «Эксимбанк Казахстан». При этом пояснили, что деятельностью компаний сами лично не занимались, кредитные денежные средства не использовали, дальнейшее их использование и применение им неизвестно. Документов на оформленные на их имя компании не видели, подписывали все документы по указанию Амирханова Е.А., Артамбаевой Г. и Забережного Д., которые работали в АО «ЦАТЭК».

Допрошенная по данному факту адвокат Амирханова Е.А. – Рыспекова Б.К. показала, что о сведениях, ставших ей известными при исполнении своих обязанностей по защите Амирханова Е.А. ничего пояснять не будет, указав на требования «адвокатской тайны». Была нанята родственниками Амирханова Е.А. с адвокатом Матвеенковым Г., как друзья семьи Амирхановых. Кроме того показала, что в период расследования сотрудники КНБ РК Искаков Р., Кокумбаев Р. указывали Амирханову Е.А. на передачу акций АО «ЦАТЭК» бизнес-партнерам, кроме того при подписании соглашений и договоров купли-продажи указывала нотариусу об отражении сведений о времени гражданско-правовых сделок, так как считала, что указанные сделки не в пользу ее подзащитного.  Договора и соглашения ее подзащитным Амирхановым Е.А. подписаны как условие прекращения в отношении последнего уголовного дела.

Допрошенная по данному факту супруга заявителя Амирханова Е.А. – Жаксылыкова Л.С. показала, что ранее ее супруг вел совместный бизнес с Клабеновым А.Я., Кан С.В., с которыми были дружны с 1997 года. В 2017 году у них возникли споры из-за ведения бизнеса, в ходе которого в 2018 году ее супруга задержали сотрудники КНБ РК, однако в настоящее время она не согласна с подписанными ее супругам договорами и соглашениями, в настоящее время супруг проживает в Америке с Артамбаевой Г., связь с ним поддерживает по телефону, указала на давление со стороны сотрудников КНБ РК при подписании указанных документов.

Защитник Амирханова Е.А. – Матвеенков Г. воспользовавшись нормой ст.78 ч.2 УПК РК от дачи показаний отказался.

Допрошенный по данному факту юрист АО «ЦАТЭК» Искаков Р.Н. показал, что по указанию руководства АО «ЦАТЭК» ему было поручено выступить доверенным лицом от имени АО «ЦАТЭК», и обеспечить юридическое сопровождение сделок купли-продажи акций АО «ЦАТЭК», между акционерами, с которыми в близких отношениях не состоит, знает их как акционеров АО. После чего им был приглашен нотариус Садыкова Г.Б. по составлению указанных документов. По приезду в здание КНБ РК, там он встретился с защитниками одного из акционеров Амирханова Е.А. – Матвеенковым Г., Рыспековой Б., которые ввели его в курс, что инициировали

встречу между акционерами АО «ЦАТЭК» Амрихановым Е.А., Клебановым А.Я., Кан С.В. Он сопроводил юридическое оформление всех документов, так как были заключены 3 договора, два между акционерами, т.е. Амриханов – Кан, Амриханов – Клебанов, Амриханов – АО «ЦАТЭК», а также два соглашения, в тот же день Амриханов Е.А. при передаче акций сам просил передать акции АО «Эксимбанк Казахстан», так как обязался закрыть кредитные задолженности, которые набрал. Нотариус все оформила документально, удостоверилась в свободе волеизъявления и оформила все вышеуказанные документы. Вопросов по указанным документам при их подписании у участников сделок не имелось, все было оформлено на законных основаниях. Кроме того показал, что корпоративный конфликт между акционерами как он понял из разговоров в организации начался после того, когда в 2011 году из – за жалобы иностранного акционера Европейский банк реконструкции и развития те узнали, что вложенные капиталы обворовывались, так как будучи членом совета директоров АО «Эксимбанк Казахстан» Амриханов Е.А. оформлял на эти деньги безвозвратные кредиты в АО «Эксимбанк Казахстан» на аффилированные Амрихановым Е.А. компании. После чего уже в августе 2018 года Амриханов Е.А. стал исполнять условия заключенного соглашения, но потом неожиданно скрылся, на что им, как представителем АО «ЦАТЭК» была подано исковое заявление в связи с неисполнением обязательств по соглашению. В суде участия  не принимал, участие принимал его представитель Рисполова ВиОгуль, в суде в полном объеме исковые требования АО «ЦАТЭК» были удовлетворены. Договора купли-продажи не обжаловались ни АО «ЦАТЭК», ни акционерами Кан С.В., Клебановым А.Я., и ни самим Амрихановым Е.А.

Вместе с тем, согласно решению Медеуского районного суда г.Алматы от 29.01.2019 года, оставленного без изменений постановлением Судебной коллегией по гражданским делам Алматинского городского суда от 04.04.2019 года все сделки не оспаривались, судом установлено, что согласно сведениям из заключенного соглашения Амриханов Е.А. принял на себя обязательства погасить задолженность перед АО «Эксимбанк Казахстан» на сумму порядка 55 млрд.тенге.

Доводы Амриханова Е.А. о том, что он будучи под арестом находился в состоянии ограничения дееспособности являются необоснованными, и суд оспариваемую сделку признал ее соответствующей гражданско-правовому законодательству.

Кроме того судом установлено, что после подписания указанных документов Амрихановым Е.А. проводилась деятельность в АО «Эксимбанк Казахстан», так как являлся ее акционером тот проводил собрания и общее руководство АО «Эксимбанк Казахстан».

В соответствии с требованиями ст. 127 УПК РК, установленные вышеуказанным вступившим в законную силу решением суда события и действия о совершении Амрихановым Е.А. указанных гражданско-правовых сделок, является обязательными для органа ведущего уголовный процесс.

Следует также учесть об имеющейся заинтересованности адвоката Рыспековой Б.Г., супруги Амирханова Е.А. - Жаксылыковой Л.С. в нсходе дела в пользу Амирханова Е.А.

Таким образом, доводы Амирханова Е.А. указанные в заявлении не нашли своего фактического подтверждения, а установленные фактические данные свидетельствуют, что последний сделки по продаже принадлежащих ему акций АО «ЦАТЭК» Кан С.В. в размере 15,49 %, Клебанову А.Я. в размере 15,49%, АО «ЦАТЭК» в размере 2,46%, приобретению акций АО «Эксимбанк Казахстан» и принятии обязательств по возмещении ущерба в размере 55 млрд.тенге, совершил добровольно, без какого-либо принуждения со стороны участников сделок и органа, осуществляющего уголовное преследование.

В соответствии с ч.2 ст.35 УПК РК производство по делу прекращается по основаниям, предусмотренным п.2 ч.1 ст.35 УПК РК, как при доказанности отсутствия события уголовного правонарушения или состава уголовного правонарушения, так и при иедоказанности их наличия, если исчерпаны все возможности для собирания дополнительных доказательств.

В этой связи согласно ч.2 ст. 35 УПК РК уголовное дело подлежит прекращению за отсутствием состава уголовного правонарушения.

Согласно ст.35 ч.6 УПК РК, орган уголовного преледовани, обнаружив обстоятельства, исключающие уголовное преследование, выности на любой стадии досудебного производства, постановление о прекращении уголовного дела.

На основании изложенного руководствуясь ст.ст. 35 ч. 2, 60, 198, 288 УПК РК;

### ПОСТАНОВИЛ:

1. Досудебное производство №190000131000019 зарегистрированное по ст.361 ч.4 УК РК - прекратить за отсутствием состава уголовного правонарушения.
2. Вещественные доказательства хранить при деле.
3. Копию настоящего постановления направить надзирающему прокурору.
4. О принятом решении уведомить заинтересованных лиц.

**Следователь по ОВД СУ**
**Антикоррупционной службы по г. Нур-Султан**                     **Е. Зарир**

# Exhibit 4

**ATTACHMENT # 4**

**Explanatory note**
**about exerting pressure**
**on son Amirkhanov Y.**

We describe the case happened after July 18-20, 2018 (we do not remember the exact date).

We were away, when we arrived home, we saw "a bunch of people" near our house who had come from Astana to visit us in Almaty.

1. Zhanna is Nurtazin Yerlan's wife
2. Sakhayeva Bakhytzhan - - Nurtazin Yerlan's mother
3. Sembekov Kairat - former employee of the company
4. Temirkhan Sembekov - Kairat's father
5. Sembekova Gaupar - Temirkhan's sister
6. Bulekbayev Nurmaganbet is a resident of Astana
7. Tiyshtyk is Nurmaganbet's mother.

Nurtazin's wife, Zhanna, was the first to say that they had come, since Klebanov A.Y. and Kan S.V. sent them, saying that tomorrow they would imprison everyone on whom a loan was issued in the company of Amirkhanov Y., so that they would influence and persuade the son -Amirkhanov Y. to transfer his shares if the company to CAPEC and sign different kind of agreements with Klebanov A.Y. and Kan S.V.

Nurmaganbet's mother – Tiyshtyk said that they were asked to help in influencing on us - the parents of Amirkhanov Y.

And I am, a mother of Amirkhanov Y. told them: let they put everyone in jail, if they are guilty, but we will neither write nor persuade our son Amirkhanov Y., and if he is guilty, he has already been held in prison for 2.5 months and he will be bear his punishment.

This continued with swearing and scandals, I had to expel them all with refusal. So by this method Klebanov and Kan exerted pressure on us - parents of Amirkhanov Y.

We, the parents - Amirkhanov and Sakhaeva D. refused, and this group left after Zhanna, the wife of Nurtazin E., had made a call to Kan S.V. about the refusal of parents.

Father Amirkhanov A.                    Mother Sakhaeva D.D.
Signed                                  Signed



Case 1:23-cv-06099-LDH-CLP   Document 6-3   Filed 04/31/23   Page 4 of 4 PageID #: 184



# Exhibit 5

**ATTACHMENT # 5**

**NATIONAL SECURITY COMMITTEE**
**SECURITY OF THE REPUBLIC OF KAZAKHSTAN** (blank)
**010000, Nur-Sultan city, Syganak str., 20**

№ 11/15729
23.04.22

to Attorney at law Nurkanov N.
Nur-Sultan city, Imanov str.10, apt.3

Your complaint received from the Prosecutor's Office of Almaty in the interests of Amirkhanov Y. for disagreement with the termination of the pre-trial investigation against officials of the National Security Committee, has been considered (ZHT-885 of 11.04.2022).

It was established that the Agency of the Republic of Kazakhstan for State Service Affairs and Anti-Corruption in the framework of criminal case No. 190000131000019 conducted a pre-trial investigation on the fact of abuse of authorities by the officers of the National Security Committee of the Republic of Kazakhstan (Article 361 Part 4 of the Criminal Code of the Republic of Kazakhstan), the proceedings on which were terminated on the basis of § 2 of Part 1 of Article 35 of the Criminal Procedure Code of the Republic of Kazakhstan, i.e. for the absence of the corpus delicti in the actions of officials of the National Security Committee.

The decision was agreed with the Prosecutor General's Office.

In accordance with Article 106 of the CPC of the Republic of Kazakhstan, a person whose rights are directly affected by the violations committed upon termination of a criminal case has the right to appeal to the court.

In accordance with the current legislation of the Republic of Kazakhstan, the resolution of the issues specified in your complaint is not within the competence of the National Security service, in this regard, you have the right to apply to the court.

If you disagree with the decision, you also have the right to appeal in accordance with the established procedure.

Deputy Chief
Department                    (signed)                    A.Yerbolatov

Ex. K.Tazabekov
phone. 76-17-87

**[A-148]**



ҚАЗАҚСТАН РЕСПУБЛИКАСЫ
ҰЛТТЫҚ ҚАУІПСІЗДІК
КОМИТЕТІ

КОМИТЕТ НАЦИОНАЛЬНОЙ
БЕЗОПАСНОСТИ
РЕСПУБЛИКИ КАЗАХСТАН

010000, Нұр-Сұлтан қаласы, Сығанақ көшесі, 20

010000, город Нур-Султан, ул. Сыганак, 20

№ 11/157-29
23.04.22

**Адвокату Нурканову Н.**
г.Нур-Султан, ул.Иманова д.10, кв.3

Поступившая из прокуратуры г.Алматы Ваша жалоба в интересах Е.Амирханова на несогласие с прекращением досудебного расследования в отношении должностных лиц КНБ, рассмотрена (ЖТ-885 от 11.04.2022).

Установлено, что Агентством РК по делам государственной службы и противодействию коррупции в рамках уголовного дела №190000131000019 проведено досудебное расследование  по факту превышения сотрудниками КНБ РК должностных полномочий (ст.361 ч.4 УК РК), производство по которому прекращено на основании пункта 2 части 1 статьи 35 УПК РК, т.е. за отсутствием в действиях должностных лиц КНБ состава преступления.

Принятое решение согласовано с Генеральной прокуратурой РК.

В соответствии со статьей 106 УПК РК лицо, чьи права непосредственно затрагиваются допущенными нарушениями при прекращении уголовного дела, вправе обратиться с жалобой в суд.

В соответствии с действующим законодательством РК, разрешение вопросов, указанных в Вашей жалобе, не входит в компетенцию органов национальной безопасности, в этой связи, Вы имеете право обратиться в суд.

В случае несогласия с принятым решением Вы также имеете право на его обжалование в установленном порядке.

**Заместитель начальника**
**департамента**                                                       **А.Ерболатов**

исп. К.Тазабеков
тел.76-17-87

022606

# Exhibit 6

**ATTACHMENT # 6**

**MINISTRY OF INTERNAL AFFAIRS**
**ALMATY CITY POLICE DEPARTMENT**
050012, Almaty, 57 Masanchi Street
Phone. 8(727) 254-40-06, fax: 8(727) 254-42-81

№ 1-4-12. /2027-4
« 25 » 04 2022

To Amirkhanov E.A.
Almaty, residential complex Edelweiss, 13, sq.1

The Police Department has considered your request for information on the results of the consideration of your appeal, registered in the KUI No. 197500030026278.

On this fact, we inform you that on September 26th 2019, your application was registered in the KUI DP Almaty No. 197500030026278 (inc-3089) and submitted for consideration to the investigator from the PD of Medeu district Bakytuly B.

The investigator from the PD of the Medeu district Bakytuly B. decided to leave without consideration and keeping it in the "nomenclature case" due to the absence of a criminal offense, since in accordance with Article 179, part 1, § 2 of the Criminal Code of the Republic of Kazakhstan, statements and reports of violations based on non-fulfillment or improper execution of civil transactions committed in writing and not recognized by the court as invalid, imaginary or pretended are not subject to registration in the URPI.

To get acquainted with the materials registered in the KUI at No. 197500030026278, you can contact with the head of the department E. Bakbergenov (m.ph. 8-702-476-66-60), the deputy head of the Department for investigative work A. Ibraev (m.ph. 8-708-522-64-26), the head of the district department D. Utebaev (8-701-11178-58).

At the same time, please be advised that in case of disagreement with the decisions taken by the investigator (inquirer), you have the right to appeal against it, in accordance with Article 100 of the Code of Criminal Procedure of the RK (appeal against decisions and actions (inaction) of authorities and officials) in accordance with the procedure established by law.

In case of disagreement with the decision made and the results of consideration of the appeal, you have the right to appeal in accordance with the procedure established by law.

**Deputy Chief**          (signed)                    **Abdrakhmanov R.T.**

**Ex: Serikbekova B.D.**
**inc. 1-ZHT-A-4621**
**phone. 254-42-03**

*Attachment 6.*

**ІШКІ ІСТЕР МИНИСТРЛІГІ**
**МИНИСТЕРСТВО ВНУТРЕННИХ ДЕЛ**

**АЛМАТЫ ҚАЛАСЫНЫҢ
ПОЛИЦИЯ
ДЕПАРТАМЕНТІ**

050012, Алматы қаласы, Масанчы көшесі, 57-а
тел.: 8 (727) 254 40 06, факс: 8 (727) 254 42 81

№ 1-4-12 / 2024-4
« 23 » 04 2022г.

**ДЕПАРТАМЕНТ
ПОЛИЦИИ
ГОРОДА АЛМАТЫ**

050012, город Алматы, улица Масанчи, 57-а
тел.: 8 (727) 254 40 06, факс: 8 (727) 254 42 81

**Амирханову Е.А.**
*г.Алматы, ЖК Эдельвейс, д.13, кв.1*

Департаментом полиции Ваше заявление о предоставлении информации о результатах рассмотрения Вашего обращения, зарегистрированного в КУИ №197500030026278, рассмотрено.

По данному факту сообщаем, что 26.09.2019г. Ваше заявление было зарегистрировано в КУИ ДП г.Алматы №197500030026278 и направлено для принятия процессуального решение в УП Медеуского района.

26.09.2019г. Ваше заявление было зарегистрировано в КУИ УП Медеуского района №197517030020735(вх-3089) и передано на рассмотрение следователю СО УП Медеуского района Бакытулы Б.

Следователем СО УП Медеуского района Бакытулы Б. было принято решение об оставлении без рассмотрения и хранении в номенклатурном деле в связи с отсутствием состава уголовного правнарушения, так как в соответствии ст.179 ч.1 п.2 УК РК не подлежат регистрации в ЕРДР заявления и сообщения о нарушениях, основанных на неисполнении или ненадлежащем исполнении гражданско-правовых сделок, совершенных в письменной форме и не признанных судом недействительными, мнимыми или притворными.

Для ознакомления с материалами, зарегистрированного в КУИ за №197500030026278, Вы можете обратиться к начальнику отдела Бакбергенову Е.(т.с.8-702-476-66-60), заместителю начальника УП по следственной работе Ибраеву А. (т.с. 8-708-522-64-26), начальнику УП района Утебаеву Д.(8-701-111-78-58).

Одновременно уведомляю, что в случае несогласия с принятыми решениями следователя (дознавателя), Вы имеете право обжаловать их, в порядке ст.100 УПК РК (обжалование решений и действий (бездействие) органов и должностных лиц), в установленном законом порядке.

В случае несогласия с принятым решением и результатами рассмотрения обращения, Вы вправе обжаловать их в установленном законом порядке.

**Заместитель начальника**                      **Абдрахманов Р.Т.**

*исп.: Серікбекова Б.Д.
Вх. 1-ЖТ-А-4621
тел.254-42-03*

# Exhibit 7

**ATTACHMENT # 7**

**MINISTRY OF INTERNAL AFFAIRS**
**ALMATY CITY POLICE DEPARTMENT**
050012, Almaty, 57 Masanchi Street
phone. 8)727) 254-40-06, fax: 8(727) 254-42-81

№ 1-4-12. /2043-4
« 25 » 04 2022

To attorney at law Nurkanov N.U.
Nursultan city Imanov str. 10, apt.3

+7701-640-37-79

Your complaint to the Ministry of Internal Affairs of the Republic of Kazakhstan about conducting an investigation and providing information about the procedural decision made on the application filed in 2019 by Amirkhanov Y.A. was considered by the leadership of the Almaty Police Department.

During the investigation it was established that on September 26, 2019, the appeal of Amirkhanov Y.A., regarding the unlawful actions of employees of "Eximbank of Kazakhstan" Klebanov A.Y., Kan S.V., and Prikhozhan D.A. was registered in the KUI DP of Almaty at #. 197500030026278.

On September 26, 2019 for inc. 4-4-13/12894-I the abovementioned material was sent to the PD of Medeu district to make a procedural decision.

On the same day, in the PD of Medeu district, the material was registered in the KUI at # 197500030026278 and submitted for consideration to the investigator of the PD of the district Bakytuly B., who decided to leave the material without consideration and write off to the "nomenclature case"(order).

In case of disagreement with the provided answer, you have the right to appeal in accordance with the procedure established by law.

Deputy Chief                    (signed)                    Abdrakhmanov R.T.

Ex: Serikbekova B.D.
inc. 1-ZHT-A-4621
phone. 254-42-03

**[A-154]**



| | |
|---|---|
| **АЛМАТЫ ҚАЛАСЫНЫҢ ПОЛИЦИЯ ДЕПАРТАМЕНТІ** | **ДЕПАРТАМЕНТ ПОЛИЦИИ г.АЛМАТЫ** |
| 050012,Алматы қаласы,Масанчи көшесі,57-а тел.: 8 (727) 2 54 40 06, факс: (727)254 42 81 | 050012, город Алматы, улица Масанчи, 57-а тел.: 8 (727) 2 54 40 06, факс: (727) 254 42 81 |

20 <u>02</u> ж. <u>25.04</u> № <u>1-4-12/2043-4</u>



Адвокату
**Нурканову Н.У.**
в интересах Амирханова Е.А.
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
г.Нур-Султан   ул.Иманова   д.10
кв.3
+7701-640-37-79

Ваша жалоба в адрес Министерства внутренних дел РК о проведении проверки и предоставления информации о принятом процессуальном решении по поданному в 2019 году заявлению Амирханова Е.А. рассмотрена руководством Департамента полиции города Алматы.

В ходе проверки установлено, что 26.09.2019 года обращение Амирханова Е.А. касательно неправомерных действий сотрудников «Эксимбанк Казахстана» Клебанова А.Я., Кан С.В. и Прихожан Д.А. зарегистрировано в КУИ ДП г.Алматы за №197500030026278.

26.09.2019 года за исх.4-4-13/12894-И вышеуказанный материал направлен в УП Медеуского района для принятия процессуального решения.

В этот же день, в УП Медеуского района материал зарегистрирован в КУИ за №197517030020735, и передан на рассмотрение следователю УП района Бакытулы Б., которым принято решение об оставлении материала без рассмотрения и списании в номенклатурное дело (наряд).

В случае несогласия с предоставленным ответом Вы вправе обжаловать в установленном законом порядке.

**Заместитель начальника**                                             **Р. Абдрахманов**

*Исп.Серихбекова Б.*
*Вх. 1-14970*
*254-42-03*

# Exhibit 8

**ATTACHMENT # 8**

**Ministry of Finance of the Republic of Kazakhstan**
**Financial Monitoring Committee**
**Department of Economic Investigations**
**of Almaty city** (blank)
**127 Zhibek Zholy Ave., Almaty, 050000**
**Tel.: 8 (727)279-26-56B Fax: ; (.27)279-35-40**

DEI-1-06-10/6633 from 13.09.2019

**To the Deputy Chief DP in Almaty**
**Police Colonel**
**Adilov S.A.**
**050012, Almaty, 55 Masanchi str.**

**For information:**
**Gr. Amirkhanov E.A.**
**050020, Almaty, Dostyk ave., 291/16**

The material of KUI No. 197500120003272 is under consideration of DEI of Almaty city according to the statement of Amirkhanov Y.A. on the unlawful actions (assignment or embezzlement of entrusted property) by the officials of "Eximbank Kazakhstan" JSC Klebanov A.Y., Kan S.V., and Prikhozhan D.A.

As it follows from the statement that by unlawful actions the damage was caused to Eximbank Kazakhstan JSC, while the interests of the state are not affected.

According to Article 187 Part 4-1 of the Criminal Procedure Code of the Republic of Kazakhstan , a preliminary investigation on the criminal offenses stipulated in in Article 7 189 of the Criminal Code of the Republic of Kazakhstan is conducted by the internal affairs bodies, in case of damage to the state – by the economic investigation service.

In accordance with Article 186, part 1, § 2 of the CPC of the Republic of Kazakhstan, the registered statements or reports on a criminal offense are subject to transfer for investigation to another criminal prosecution agency depending on its exclusive jurisdiction.

Based on the above, the material of the KUI No. 197500120003272 dated September 12th 2019 on Amirkhanov Y.A.'s statement is sending for control and consideration on the merits.

The second addressee is noticed for information.

Appendix: Materials of KUI No. 197500120003272 on "1" t, according to the lists.

Deputy Head              (signed)                                    T.Kayypbergen

Ex: Nurkalyk K.
Phone: 8 7272792656

(signed – 3 signatures)

Case 1:23-cv-02399-LDH-CLP   Document 6-4   Filed 04/21/23   Page 1 of 1 PageID #: 206

ҚАЗАҚСТАН РЕСПУБЛИКАСЫНЫҢ
ҚАРЖЫ МИНИСТРЛІГІ
ҚАРЖЫ МОНИТОРИНГІ КОМИТЕТІ
АЛМАТЫ ҚАЛАСЫ БОЙЫНША
ЭКОНОМИКАЛЫҚ ТЕРГЕУ ДЕПАРТАМЕНТІ



МИНИСТЕРСТВО ФИНАНСОВ
РЕСПУБЛИКИ КАЗАХСТАН
КОМИТЕТ ФИНАНСОВОГО МОНИТОРИНГ
ДЕПАРТАМЕНТ ЭКОНОМИЧЕСКИХ
РАССЛЕДОВАНИЙ ПО ГОРОДУ АЛМАТЫ

050000, Алматы қаласы, Жібек жолы даңғылы, 127
тел.:8 (727) 279-29-56, факс:8 (727) 279-35-40

050000, город Алматы, пр. Жібек жолы, 127
тел.:8 (727) 279-26-56, факс:8 (727) 279-35-40

ДЭР-1-06-10/ 6633 /от 13 / 09 /2019г.

Заместителю начальника
ДП по г. Алматы
полковнику полиции
**Адилову С.А.**
*050012, г.Алматы, ул. Масанчи 55*

*Для сведения:*

гр. Амирханову Е.А.
*050020, г.Алматы, пр. Достык, 291/16*

В производстве ДЭР по г.Алматы находится материал КУИ №197500120003272 по заявлению гр. Амирханова Е.А. по факту незаконных действий *(присвоения или растраты вверенного чужого имущества)* со стороны должностных лиц АО «Эксимбанк Казахстан» *Клебанова А.Я., Кан С.В. и Прихожана Д.А.*

Из сути заявления следует, что противоправными действиями ущерб причинен АО «Эксимбанк Казахстан», при этом интересы государства не затронуты.

Согласно ст.187 ч.4-1 УПК РК по делам об уголовных правонарушениях, предусмотренных ст.189 УК РК, предварительное расследование проводится органами внутренних дел, в случае причинения ущерба государству – службой экономических расследований.

В соответствии со ст.186 ч.1 п.2 УПК РК, передаче по подследственности подлежат зарегистрированные заявления или сообщения об уголовном правонарушении, когда производство расследования по уголовному делу относится к исключительной подследственности другого органа уголовного преследования.

На основании изложенного, для проведения проверки и рассмотрения по существу направляется материал КУИ №197500120003272 от 12.09.2019 года по заявлению Амирханова Е.А.

Второму адресату сообщается для сведения.

*Приложение: материалы КУИ 197500120003272 на «1» т., согласно описи.*

Заместитель руководителя                                    Т. Қайыпберген

исп. Нуркалык К.
тел. 87272792656

8300-п

# Exhibit 9

**ATTACHMENT # 9**

**MINISTRY OF INTERNAL AFFAIRS**
**ALMATY POLICE DEPARTMENT (blank)**
**050012, Almaty, 57 Masanchi Street**
**Phone.: 8 (727) 2-54-06, fax 8 (7272)254-42-81**

*2019.26.11.    # 4-4-12/16269-4*

To Nurkanov N.U.
Nur-Sultan city
Imanov Street, 7, appt. 28

Dear Nazymbek Umirzakovich!

The Department considered an appeal regarding the submission of information on the appeal of Amirkhanov Y.A., on the fact of unlawful actions and embezzlement of funds, in particular large scale, by officials of "Eximbank Kazakhstan" JSC Klebanov A.Y., Kan S.V. and Prikhozhan D.A.

On November 14th,2019, your appeal was submitted to the KUI of the PD of Almaty city at # 197500030031799 (inc. No. 4-4-13/15427) and for investigation and consideration on the merits was transferred by territoriality to the PD of the Bostandyk district of the PD of Almaty city.

In this regard, for all information you can contact with the head of the PD of the Bostandyk district, Utebaev D.O. (office phone 254-47-00) or the deputy chief for investigative work, Kasymbaev A. (office phone 254-47-03)

In case of disagreement with the results of consideration of the appeal in accordance with Article 100 Criminal Procedure Code of the Republic of Kazakhstan (appeal against decisions and actions of authorities and officials) you have the right to appeal with the procedure established by law.

Acting head of the ID PD Almaty city          (signed)              Aukhadiev D.G.

Ex.: S.Khamitbekov
phone.: 272-33-95

ІШКІ ІСТЕР МИНИСТРЛІГІ

**АЛМАТЫ ҚАЛАСЫНЫҢ ПОЛИЦИЯ ДЕПАРТАМЕНТІ**

МИНИСТЕРСТВО ВНУТРЕННИХ ДЕЛ

**ДЕПАРТАМЕНТ ПОЛИЦИИ г.АЛМАТЫ**

050012, Алматы қаласы, Масаншы көшесі, 57-а
тел.: 8 (727) 2 54 40 06, факс: (727)254 42 81

050012, город Алматы, улица Масанчи, 57-а
тел.: 8 (727) 2 54 06, факс: 8 (727) 254 42 81

2019 ж. _96.11_   № _4-4-13/15271-1_

**Нурканову Н.У.**
*г.Нур-Султан, улица Иманова, дом 7, квартира 28.*

### Уважаемый Назымбек Умирзакович!

Департаментом рассмотрено обращение касательно предоставления информации по обращению Амирханова Е.А., по факту незаконных действий и хищения денежных средств, в особо крупном размере, со стороны должностных лиц АО «Эксимбанк Казахстан» Клебанова А.Я., Кан С.В. и Прихожан Д.А.

14.11.2019 г. Вше обращение внесено в КУИ ДП г.Алматы за №197500030031799 *(исх. №4-4-13/15427)* и для проведения проверки и рассмотрения по существу передано по территориальности в УП Бостандыкского района ДП г.Алматы.

В этой связи по всем интересующим вопросам Вы можете обратиться к начальнику УП Бостандыкского района Утебаеву Д.О. *(раб.тел.: 254-47-00)* или к заместителю начальника по следственной работе Касымбаеву А. *(раб.тел.: 254-47-03)*.

В случае несогласия с результатами рассмотрения обращения в порядке статьи 100 *(обжалование решений и действий органов и должностных лиц)* Уголовно-Процессуального кодекса Республики Казахстан Вы вправе обжаловать его в установленном законом порядке

*С уважением*

**И.О. начальника СУ ДП г.Алматы**                                    **Аухадиев Д.Г.**

*Исп.: С.Хамитбеков*
*Тел.: 272-33-95*

# Exhibit 10

**ATTACHMENT # 10**

Out #.: 41/12-11-1228 from 02/21/2020

**POLICE DEPARTMENT**
**BOSTANDYK DISTRICT OF ALMATY CITY**
**,Almaty, Radostovets str., 205, phone: 8 (727)2-54-47-38**

Stamp
№ 41/12-11-1228
"21"   02. 2020

To  Nurkanov N.U.
NurSultan city
Imanov str., 10, apt. 3

**NOTIFICATION**

We inform you that your application submitted to the office of the Police Department of Bostandyk district of Almaty  city incoming # 3T-N-334 dated 13.03.2020 has been received and considered in full. You will be additionally informed about the decision taken.

Acting Head of the OD of the Bostandyk district
of Almaty city
Senior Police Lieutenant
*(Stamp)*

Tokseitov A.

3T-N-334 from 13.02.2020

№ исх: 41/12-11-1228   от: 21.02.2020

**УПРАВЛЕНИЕ ПОЛИЦИИ**
**БОСТАНДЫКСКОГО РАЙОНА ГОРОДА АЛМАТЫ**

*г.Алматы ул. Радостовца, 205, тел: 8(727)2-54-47-38*

гр. Нурканову Н.У.
г. Нур-Султан,
ул. Иманова д. 10, кв. 3

*21 02 2020*
*41/12-11-1228*

**У В Е Д О М Л Е Н И Е**

    Уведомляем Вас, о том, что Ваше заявление поданное в канцелярию УП Бостандыкского района г. Алматы за входящим № ЗТ-Н-334 от 13.02.2020 г. нами получено и рассмотрено в полном объеме. О принятом решении, Вам будет сообщено дополнительно.

**И.О. начальника ОД УП Бостандыкского района г. Алматы**
**старший лейтенант полиции**               **Токсеитов А.**

*ЗТ-Н-334 от 13.02.2020г.*

*27.02.2020 ЕСЭДО ГО (версия 7.22.1)*

# Exhibit 11

**ATTACHMENT # 11**

**"Eximbank Kazakhstan" JSC**
**(blank)**

**"Eximbank Kazakhstan" JSC**
**Republic of Kazakhstan**
**Almaty, Bogenbai batyr str., 80**

**# LC 303**
**"24" 02 2021**

**To the attorney at law of the Kostanay**
**Regional Bar Association**
**Nurkanov N.U.**
**(in the interests of Amirkhanov Y.A.)**

The Liquidation Commission of Eximbank Kazakhstan JSC (hereinafter referred to as the Bank), having considered your appeal dated January 25, 2021 w/n, informs the following.

The information contained in your appeal has been taken into account.

At the same time, the Bank sent a request to the Police Department of the Bostandyk district of Almaty city with a request to provide information on the progress of the investigation of the criminal case No. 197514031005879 under Article 389 part 1 of the Criminal Code of the Republic of Kazakhstan, initiated at the request of Amirkhanov Y.A. to the Prosecutor General's Office of the Republic of Kazakhstan on the embezzlement of money by Klebanov A.Y., Kan S.V. and Prikhozhan D.A. in particularly large amounts from Eximbank Kazakhstan JSC.

We will inform you about the results of consideration of our appeal additionally.

**Chairman of**
**Liquidation Commission**
**Eximbank Kazakhstan JSC**                                    **D.Zinullina**

(Signature, seal)



**ЭКСИМБАНК**
ҚАЗАҚСТАН

AҚ «Қазақстан Эксимбанкі»
Қазақстан Республикасы, 050010
Алматы қ., Бегенбай батыр көшесі. 80

АО «Эксимбанк Казахстан»
Республика Казахстан, 050010
г.Алматы, ул.Богенбай батыра, 80

Eximbank Kazakhstan JSC
050010, Republic of Kazakhstan
80, Bogenbai Batyr str., Almaty

№ _____

«___» _____ 2021 г.

Адвокату Костанайской областной
Коллегии адвокатов
Нурканову Н.У.
(в интересах Амирханова Е.А.)

Ликвидационная комиссия АО «Эксимбанк Казахстан» (далее – Банк), рассмотрев Ваше обращение от 25 января 2021 б/н, сообщает следующее.

Информация, изложенная в Вашем обращении, принята к сведению.

Вместе с тем, Банк направил запрос в Управление полиции Бостандыкского района г.Алматы с просьбой предоставить информацию о ходе расследования уголовного дела № 197514031005879 по статье 389 часть 1 Уголовного Кодекса Республики Казахстан, возбужденного по заявлению Амирханова Е.А. в Генеральную прокуратуру Республики Казахстан о хищении Клебановым А.Я., Кан С.В. и Прихожан Д.А. денежных средств в особо крупных размерах из АО «Эксимбанк Казахстан».

О результатах рассмотрения нашего обращения сообщим Вам дополнительно.

Председатель
Ликвидационной комиссии
АО «Эксимбанк Казахстан»                                        Д.Зинуллина

Исп.: Нурфазылова К.М.
☎.: 8(727) 266 37 43

# Exhibit 12

Case 1:23-cv-02399-LDH-CLP     Document 6-4     Filed 04/21/23     Page 23 of 46 PageID #: 217

**ATTACHMENT # 12**

**ALMATY CITY PROSECUTOR'S OFFICE**
**BOSTANDYK DISTRICT PROSECUTOR'S OFFICE**
**050059, Almaty city**
**Zheltoksan street, 189**
**Phone. 8 (727) 265-04-21, fax 8 (7127) 265-04-50**
**www.almaty.prokuror.kz**

24.02.2021     # 2-17-21-01325

**To Nurkanov N.**
**in the interests of Amirkhanov Y.**
**Imanov str., 19, apt.3,**
**Nur-Sultan city**

Your appeal on control of the legality of interrupting the terms of the pre-trial investigation has been considered by the district prosecutor's office.

The study found that on December 12th 2019, the investigator of the OD Police Department of Bostandyk district of Almaty city based on the results of the investigation of criminal case No. 197514031005879, decided to interrupt the terms of the pre-trial investigation on the basis of §1 of Part 7 Article 45 of the Criminal Procedural Code of the Republic of Kazakhstan.

However, the criminal investigation authority in violation of the requirements of Article 24 of the CPC of the Republic of Kazakhstan, has not taken all the measures provided by the law for a comprehensive, complete and unbiased investigation of the circumstances required and sufficient for the appropriate resolution of the case.

In this regard, the district prosecutor's office, taking into account your arguments, on February 24th 2021 canceled the decision on interrupting the terms of the pre-trial investigation on the criminal case and the case was directed to the Police Department of Bostandyk district of Almaty city for the organization of an additional investigation.

Based on the results of the investigation and the execution of the instructions by criminal investigation authority, a procedural decision will be made, which you will be informed about.

At the same time, be advised that as a participant of the criminal process in accordance with Article 99 of the CPC of the Republic of Kazakhstan, you have the right to apply to the person conducting the pre-trial investigation with petitions for the investigative actions required.

If you disagree with this answer, you have the right to appeal it in accordance with the procedure established by law.

District Prosecutor                                          S. Keldibekov

Ex. Sybanbayev B.
Plone: 265-03-04

The document was signed by: Keldibekov Sayan Shaimuratovich, 24.02.2021. 14:35:52
The document is signed by EDS

Note: The response to the appeal was sent using an electronic digital signature through the service "Registered hybrid dispatch with notification of receipt" within the framework of the Memorandum of Mutual Cooperation concluded between the Prosecutor General's Office of the Republic of Kazakhstan and "Kazpost" JSC.

In accordance with paragraph 12) of Article 1 of the Law of the Republic of Kazakhstan "On Electronic Document and Electronic Digital Signature" (hereinafter - the Law), an electronic document is a document in which information is presented in electronic digital form and certified by means of an electronic digital signature.

According to paragraph 1 of Article 7 of the Law, an electronic document that meets the requirements of the Law and is certified by an electronic digital signature of a person authorized to sign it is equivalent to a signed document in a paper form.

Case 1:23-cv-02399-LDH-CLP   Document 6-4   Filed 04/21/23   *Attachment 13* Page 29 of 46 PageID #: 123

АЛМАТЫ ҚАЛАСЫНЫҢ
ПРОКУРАТУРАСЫ

БОСТАНДЫҚ АУДАНЫНЫҢ
ПРОКУРАТУРАСЫ

ПРОКУРАТУРА
ГОРОДА АЛМАТЫ

ПРОКУРАТУРА
БОСТАНДЫКСКОГО РАЙОНА

050059, Алматы қаласы,
Желтоксан көшесі, 189 үй
тел.: 8 (727) 265-04-21, факс: 8 (727) 265-04-50
www.almaty.prokuror.kz

050059, город Алматы,
ул. Желтоксан, дом 189
тел.: 8 (727) 265-04-21, факс: 8 (727) 265-04-50
www.almaty.prokuror.kz

24.02.2021   № 2-17-21-01325

Нурканову Н.
в интересах Амирханова Е.
ул. Иманова, д.10, кв.3,
г. Нур-Султан

Ваше обращение о проверки законности прерывания сроков досудебного расследования, прокуратурой района рассмотрено.

Изучением установлено, что 08.12.2019 года дознавателем ОД УП Бостандыкского района г. Алматы по результатам расследования уголовного дела №175140310058779 принято решение о прерывании сроков досудебного расследования на основании п.1 ч.7 ст.45 Уголовно-процессуального кодекса Республики Казахстан.

Однако, органом уголовного преследования в нарушении требований ст.24 УПК РК, не приняты все предусмотренные законом меры для всестороннего, полного и объективного исследования обстоятельств, необходимые и достаточные для правильного разрешения дела.

В этой связи, прокуратурой района с учетом Ваших доводов постановление о прерывании сроков досудебного расследования по уголовному делу 24.02.2021 года отменено и дело направлено в ОД УП Бостандыкского района г. Алматы для организации дополнительного расследования.

По результатам расследования и исполнения указаний органом уголовного преследования будет принято процессуальное решение, о котором, Вы будете уведомлены.



Документ подписан ЭЦП

Документ подписан Келдібеков Саят Илиярұлы, 24.02.2021 14:35:52

Вместе с тем, разъясняю. что Вы как участник уголовного процесса в порядке ст.99 УПК РК, имеете право обращаться к лицу, осуществляющему досудебное расследование с ходатайствами о производстве необходимых следственных действий.

В случае несогласия с данным ответом, Вы вправе обжаловать его в установленном законом порядке.


Прокурор района                                              С. Кельдибеков


Исп. Сыбанбаев Б.
тел: 265-03-04

*Примечание:* Ответ на обращение направлен с использованием электронной цифровой подписи посредством услуги «Заказное гибридное отправление с уведомлением о получении» в рамках Меморандума о взаимном сотрудничестве, заключенного между Генеральной прокуратурой Республики Казахстан и АО «Казпочта».

В соответствии с пп.12) ст.1 Закона Республики Казахстан «Об электронном документе и электронной цифровой подписи» (далее – Закон) электронный документ – документ, в котором информация представлена в электронно-цифровой форме и удостоверена посредством электронной цифровой подписи.

Согласно п.1 ст.7 Закона электронный документ, соответствующий требованиям Закона и удостоверенный посредством электронной цифровой подписи лица, имеющего полномочия на его подписание, равнозначен подписанному документу на бумажном носителе.

# Exhibit 13

**ATTACHMENT # 13**

**Department of State Finance of Almaty city**

from Attorney at law Rakhimbayev Marat Alimovich,
Law Firm No. 1 of the Almaty City Bar Association,
state license 19022637 dated 18.11.2019.
notice of protection (representation) No. 51 dated 4.06.2022

legal address: Almaty, Zhibek Zholy str.,
house 64/47, office 613 (attorneys at law)
mob. 8-776-300-98-57, e-mail address: msabdl@mail.ru
in the interests of Amirkhanov Y.A.

On May 17, 2022, the Prosecutor General's Office of the Republic of Kazakhstan, in order to properly assess the arguments about bringing "Eximbank" JSC (hereinafter the Bank) to bankruptcy by withdrawing funds abroad, sent a statement by Amirkhanov Y.A. to your address on the fact of embezzlement of the Bank's funds by Kan S., Klebanov A. and other persons, for conduct of appropriate audit.

In connection with the order on providing qualified legal assistance to Amirkhanov Y.A., I am requesting to attach notification # 51 of June 4, 2022 to the audit materials and report on the results of the audit.

At the same time, we inform you that Amirkhanov Y.A., as the initiator of the application, is ready to assist in conducting of an unbiased audit and provide all necessary materials.

*Appendix: Lawyer's notification # 51 dated 06/24/2022,*
*a copy of the lawyer's certificate.*

**Lawyer of the Law Firm No1 ACBA**                    **M.Rakhimbayev**

**ATTACHMENT # 13/1**

Outgoing number: undecipherable

**MINISTRY OF FINANCE OF REPUBLIC OF KAZAKHSTAN**
**STATE FINANCE COMMITTEE**
**DEPARTMENT OF STATE FINANCE  OF ALMATY CITY (BLANK)**

**To the lawyer of the law firm**
**No. 1 AGKA**
**Rakhimbaev M.A.**
**8-776-300-98-57**
**msabdl@mail.com**

The Department of State Finance of Almaty city, having considered your application inc. # ZHT-R-5135 dated 06.06.2022, reports the following.

According to subparagraph 22) of Article 1 of the Law of the Republic of Kazakhstan "On Rehabilitation and Bankruptcy" (hereinafter referred to as the Law), the authorized body in the field of rehabilitation and bankruptcy (hereinafter referred to as the authorized body) is a state body that carries out state regulation in the field of rehabilitation and bankruptcy (with the exception of state-owned enterprises, institutions, banks, insurance (reinsurance) organizations and accumulative pension funds).

Based on the above, in accordance with article 15 of the Law the control over the bank is not within the competence of the authorized body.

In accordance with subparagraph 5) of paragraph 2 of Article 22 of the Administrative Procedural and Procedural Code of the Republic of Kazakhstan (hereinafter- the APPC), you have the right to appeal the decision (administrative act) or administrative action (inaction) of officials in accordance with the procedure provided for in Article 91 of the APPC.

**Deputy head**                                                          Kazieva O.N.

**Ex.Rakhmanov T.**
**tel: 272-17-86**

**The file signature is correct. The document was signed by KAZIEVA ORYNKUL NURLANOVNA**

Департамент государственных
доходов по городу Алматы

от адвоката **Рахимбаева Марата Алимовича,**
ЮК №1 Алматинской
городской коллегии адвокатов,
гос. лиц.19022637 от 18.11.2019 г.
уведомление о защите (представительстве) №51 от 4.06.2022 г.
*юр. адрес: г.Алматы, ул. Жибек жолы, дом 64/47, офис 613 (адвокаты)*
*моб. 8-776-300-98-57, электронный адрес: msabdl@mail.ru*
**в интересах Амирханова Е.А.**

   17 мая 2022 года Генеральной прокуратурой Республики Казахстан в целях надлежащей оценки доводов о доведении АО «Эксимбанк» *(далее Банк)* до банкротства, путем вывода денежных средств за рубеж, в Ваш адрес направлено заявление Амирханова Е.А. по факту хищении Кан С., Клебановым А. и другими лицами денежных средств Банка для проведения соответствующей проверки.
   В связи с принятием поручения об оказании квалифицированной юридической помощи Амирханову Е.А., прошу приобщить к материалам проверки уведомление №51 от 4 июня 2022 года и сообщить о результатах проверки.
   Одновременно сообщаем, что Амирханов Е.А. как инициатор заявления, готов оказать содействие в проведении объективной проверки и предоставить необходимые материалы.

   *Приложение: уведомление адвоката №51 от 4.06.2022 г., копия удостоверения адвоката.*

**Адвокат ЮК №1 АГКА                                    М.Рахимбаев**

ҚАЗАҚСТАН РЕСПУБЛИКАСЫ ҚАРЖЫ
МИНИСТРЛІГІ МЕМЛЕКЕТТІК
КІРІСТЕР КОМИТЕТІНІҢ
АЛМАТЫ ҚАЛАСЫ БОЙЫНША
МЕМЛЕКЕТТІК КІРІСТЕР
ДЕПАРТАМЕНТІ



МИНИСТЕРСТВО ФИНАНСОВ
РЕСПУБЛИКИ КАЗАХСТАН КОМИТЕТ
ГОСУДАРСТВЕННЫХ ДОХОДОВ
ДЕПАРТАМЕНТ ГОСУДАРСТВЕННЫХ
ДОХОДОВ ПО ГОРОДУ АЛМАТЫ

---

050000, Алматы қаласы, Абылай хан даңғылы, 93/95
тел.:8 (727) 267-69-42, факс:8 (727) 272-45-10

050000, город Алматы, пр. Абылай хана, 93/95
тел.:8 (727) 267-69-42, факс:8 (727) 272-45-10

**Адвокату ЮК
№ 1 АГКА
Рахимбаеву М.А.**
*8-776-300-98-57
msabdl@mail.com*

Департамент государственных доходов по городу Алматы, рассмотрев Ваше обращение за вх.№ ЖТ-Р-5135 от 06.06.2022 года, сообщает следующее.

Согласно подпункта 22) статьи 1 Закона Республики Казахстан «О реабилитации и банкротстве» (*далее - Закон*) уполномоченный орган в области реабилитации и банкротства (*далее – уполномоченный орган*) – государственный орган, осуществляющий государственное регулирование в области реабилитации и банкротства (за исключением казенных предприятий, учреждений, банков, страховых (перестраховочных) организаций и накопительных пенсионных фондов).

На основании вышеизложенного, в соответствии со статьей 15 Закона осуществление контроля за банком в компетенцию уполномоченного органа не входит.

В соответствии с подпунктом 5) пункта 2 статьи 22 Административного процедурно-процессуального кодекса Республики Казахстан (*далее-АППК*), Вы вправе обжаловать принятое решение (административный акт), либо административное действие (бездействие) должностных лиц в порядке, предусмотренном статьей 91 АППК.

**Заместитель руководителя**                    **Казиева О.Н.**

*исп..Рахманов Т.
тел: 272-17-86*

Подпись файла верна. Документ подписан(а) КАЗИЕВА ОРЫНКУЛЬ НУРЛАНОВНА

# Exhibit 14

[A-179]

**ATTACHMENT # 14**

6000—1-20-00-3g/3650 (2)

**RESOLUTION**

August 03, 2020                                                    Nur-Sultan city

Judge of the Judicial Board for Civil Cases of the Supreme Court of the Republic of Kazakhstan T. Ibrashev, having previously considered the petition of the representative of a third person Zhaksylykova L.S. – Rakhmetzhanov M.S. on the revision of the decision of the Medeu District Court of Almaty dated August 02, 2019, the decision of the judicial board for civil cases of the Almaty City Court dated January 14, 2020
according to the material on the claim of Klebanov Alexander Yakovlevich to change the method and execution procedure of the decision of the Medeu District Court of Almaty dated January 29, 2019,

**ESTABLISHED:**

The requirements are motivated by the fact that Amirkhanov Y.A. does not take measures to implement the above-mentioned court decision.
By the decision of the Medeu District Court of Almaty dated August 02, 2019, left unchanged by the resolution of the Judicial Board for Civil Cases of the Almaty City Court dated January 14, 2020, the Klebanov A.Y.'s claim was satisfied.
The method and execution procedure of the decision of the Medeu District Court of Almaty dated January 29, 2019 in a civil case on the claim of Klebanov A.Y., Kan S.V., JSC "Central Asian Power and Energy Company" to Amirkhanov Y.A. on forcing to fulfill the conditions of the Agreement of the compensation of damages dated July 23, 2018, by applying foreclosures on property, in the form of a land plot located at the address:
291/16 Dostyk Avenue, Almaty, with cadastral number 20:315:934:028;
a private house with all auxiliary buildings located at the address: 291/16 Dostyk Avenue, Almaty, with a cadastral number 20:315:934:028:1/ Ah;
apartments at the address: Almaty city, 9A Shashkina Street, apartment 17;
non-residential premises, at the address: Astana city, Yesil district, Mangilik El Street, house 28, office 7;
and also for all movable and immovable property, whatever it is represented and wherever it is located, owned by Amirkhanov Y.A., and Zhaksylykova L.S., with the subsequent transfer of the proceeds to the benefit of "Eximbank of Kazakhstan" JSC

In the petition, the petitioner not agreeing with the judicial acts that took place in the case, asks them to cancel, to refuse satisfying the claim, pointing out to the misinterpretation of the range of circumstances relevant to the case, significant violations the norms of substantive and procedural law by the courts.
Having studied the arguments of the petition, the judge considers that the judicial acts being appealed are not subject to revision on the followings.
In accordance with part 5 of Article 438 of the Civil Procedural Code of the Republic of Kazakhstan (hereinafter referred to as the CPC), the grounds for the review of judicial acts that have entered into force in cassation are substantial violations of the norms of substantive and procedural law that led to the issuance of an illegal judicial act.

6001-20-00-3g/3650

No such violations were committed by the courts in the case.

It follows from the contested judicial acts that the claim of Klebanov A.Y., Kan S.V., and JSC "Central Asian Power and Energy Company" is partially satisfied by the above court decision.

The court ordered Amirkhanov Y.A. to buy out (acquire ownership) of shares in the authorized capitals of legal entities that are borrowers (debtors) of "Eximbank Kazakhstan" JSC, obliged Amirkhanov E.A. to ensure the fulfillment of obligations of "Eximbank Kazakhstan" JSC to the state, quasi-public sector and other creditors/depositors; obliged Amirkhanov Y.A. to pledge to "Eximbank Kazakhstan" JSC the property (movable and immovable), including those belonging to the right of joint ownership with his spouse, to ensure the fulfillment of the obligations of legal entities-borrowers of "Eximbank Kazakhstan" JSC according to the list in the Appendix 1 to the Agreement on the Procedure of Compensation of Damages dated July 23, 2018 years.

The counterclaims of Amirkhanov Y.A., in the claim of Zhaksylykova L.S., in the claims of the founders of "IPointKazakhstan" LLP, "DanPartners" LLP, "IFMGroup" LLP, "Avangard Alatau" LLP, "Aveloncompany" LLP, "AlatakAztEkhnoKom" LLP, "Investment Technologies Company" LLP, "InterServisReserv" LLP, "Trusttechnoinvest" LLP were refused.

According to the claims of the liquidation commission of "Eximbank of Kazakhstan"JSC on debt collection, the decisions of the SMEC of Almaty partially determined the debts of the companies in which Amirkhanov Y.A. was obliged to pay off.

As of April 25, 2019, the debt according the court decisions amounted to: 29,019,904 US dollars and 8,934,822,900.08 tenge.

Taking into account that the court decision of January 29, 2019, which entered into force, was not executed by the debtor, moreover, his is in a wanted list, the local courts came to the proper conclusion about satisfaction of Klebanov's claim.

The norms of substantive and procedural law, namely Article 246 of the CPC and Article 40 of the Law of the Republic of Kazakhstan "On Enforcement Proceedings and the status of bailiffs", have been applied reasonably.

The arguments of the petition are not sound, since the court decision of January 29, 2019, which entered into force, has already assessed similar arguments of Zhaksylykova L.S. regarding the fact that she did not consent to the provision of common property as collateral.

The arguments of the petition cannot be taken into account, since they do not refute the conclusions of the courts, they do not contain new facts and justifications.

There are no grounds to transfer the petition for consideration at the session of the cassation instance of the court.

Guided by subparagraph 2) Part 1 of Article 444 of the CPC, the judge

**RULED:**

To refuse to transfer the petition of the representative of a third party Zhaksylykova L.S. – Rakhmetzhanov M.S. on the revision of the decision of the Medeu District Court of Almaty dated August 02 2019, the decision of the judicial board for civil cases of the Almaty City Court dated January 14, 2020 for consideration at the court session of the cassation instance of the Supreme Court of the Republic of Kazakhstan.

A copy of the resolution to be sent to the person who filed the petition.

Judge                                                        T. Ibrashev
The copy is correct
Judge                                                        T. Ibrashev

6001-20-00-3g/3650

6001-20-00-3г/3650 (2)

**ПОСТАНОВЛЕНИЕ**

03 августа 2020 года                                     город Нур-Султан

Судья судебной коллегии по гражданским делам Верховного Суда Республики Казахстан Т. Ибрашев,

предварительно рассмотрев ходатайство представителя третьего лица Жаксылыковой Л.С. – Рахметжанова М.С. о пересмотре определения Медеуского районного суда города Алматы от 02 августа 2019 года, определения судебной коллегии по гражданским делам Алматинского городского суда от 14 января 2020 года

по материалу по ходатайству Клебанова Александра Яковлевича об изменении способа и порядка исполнения решения Медеуского районного суда города Алматы от 29 января 2019 года,

**УСТАНОВИЛ:**

Требования мотивированы тем, что Амирханов Е.А. не предпринимает мер по исполнению вышеуказанного решения суда.

Определением Медеуского районного суда города Алматы от 02 августа 2019 года, оставленного без изменения определением судебной коллегии по гражданским делам Алматинского городского суда от 14 января 2020 года, ходатайство Клебанова А.Я. удовлетворено.

Изменен способ и порядок исполнения решения Медеуского районного суда города Алматы от 29 января 2019 года по гражданскому делу по иску Клебанова А.Я., Кан С.В., АО «Центрально-Азиатская топливно-энергетическая компания» к Амирханову Е.А. о понуждении исполнить условия Соглашения о порядке возмещения ущерба от 23 июля 2018 года, путем обращения взыскания иа имущество, в виде земельного участка, расположенного по адресу: город Алматы, проспект Достык 291/16, с кадастровым номером 20:315:934:028;

частного дома со всеми вспомогательными строениями, расположенного по адресу: город Алматы, проспект Достык 291/16, с кадастровым номером 20:315:934:028:1/А;

квартиры по адресу: город Алматы, улица Шашкина дом 9А, квартира 17;

нежилого помещения, по адресу: город Астана, р-н Есиль, улица Мәңгілік Ел, дом 28, помещение 7;

а также на все движимое и недвижимое имущество в чем бы оио не выражалось и где бы не находилось, принадлежащее на праве собственности Амирханову Е.А., и Жаксылыковой Л.С. с последующей передачей вырученных денежных средств в пользу АО «Эксимбанк Казахстана».



Документ подписан Ибрашев Т.А, 06.08.2020



6001-20-12/3ж/7794

В ходатайстве заявитель, не соглашаясь с состоявшимися по делу судебными актами, просит их отменить, в удовлетворении ходатайства отказать, указывая на неправильное определение круга обстоятельств имеющих значение для дела, существенные нарушения судами норм материального и процессуального права.

Изучив доводы ходатайства, судья считает, что обжалуемые судебные акты пересмотру не подлежат по следующим основаниям.

В соответствии с частью 5 статьи 438 Гражданского процессуального кодекса Республики Казахстан (далее – ГПК) основаниями к пересмотру в кассационном порядке вступивших в законную силу судебных актов являются существенные нарушения норм материального и процессуального права, которые привели к вынесению незаконного судебного акта.

Таких нарушений судами по делу не допущено.

Из оспариваемых судебных актов следует, что вышеуказанным решением суда иск Клебанова А.Я., Кан С.В., и АО «Центрально-Азиатская топливно-энергетическая компания» - удовлетворен частично.

Суд обязал Амирханова Е.А. осуществить выкуп (приобрести в свою собственность) доли участия в уставных капиталах юридических лиц, являющихся заемщиками (должниками) АО «Эксимбанк Казахстан»,

обязал Амирханова Е.А. обеспечить исполнение обязательств АО «Эксимбанк Казахстан» перед государственным, квазигосударственным сектором и иными кредиторами/вкладчиками;

обязал Амирханова Е.А. передать в залог АО «Эксимбанк Казахстан» имущество (движимое и недвижимое) в том числе, принадлежащее на праве общей совместной собственности с его супругой, в обеспечение исполнения обязательств юридических лиц-заемщиков АО «Эксимбанк Казахстан» по перечню согласно приложению 1 к Соглашению о порядке возмещения ущерба от 23 июля 2018 года.

В удовлетворении встречного иска Амирханова Е.А., в иске Жаксылыковой Л.С., в исках учредителей ТОО «IPointKazakhstan», ТОО «DanPartners», ТОО «IFMGroup», ТОО «Авангард Алатау», ТОО «Авелонкомпани», ТОО «АлатауКазТехноКом», ТОО «Инвестиционные технологии компани», ТОО «ИнтерСервисРезерв», ТОО «ТрастТехноИнвест» - отказано.

По искам ликвидационной комиссии АО «Эксимбанк Казахстана» о взыскании задолженности, решениями СМЭС города Алматы, частично определены задолженности компаний, доли участия в которых Амирханов Е.А. был обязан выкупить.

По состоянию на 25 апреля 2019 года задолженность по решениям судов составила: 29 019 904 долларов США и 8 934 822 900,08 тенге.

Принимая во внимание, что вступившее в законную силу решение суда от 29 января 2019 года должником не исполнено, более того объявлен его розыск, местные суды пришли к правильному выводу об удовлетворении ходатайства Клебанова А.Я.

Документ подписан Ибраев Т.А., 06.09.2020



6001-20-12/3ж/7794

Case 1:23-cv-02399-LDH-CLP    Document 6-4    Filed 04/21/23    Page 38 of 46 PageID #: 232





Нормы материального и процессуального права, а именно статья 246 ГПК и статья 40 Закона Республики Казахстан «Об исполнительном производстве и статусе судебных исполнителей», применены обоснованно.

Доводы ходатайства не состоятельны, поскольку во вступившим в законную силу решении суда от 29 января 2019 года уже дана оценка аналогичным доводам Жаксылыковой Л.С. касательно того, что она не давала согласие на предоставление в залог общего имущества.

Доводы ходатайства не могут быть приняты во внимание, поскольку не опровергают выводы суда, новых фактов и обоснований они не содержат.

Оснований к передаче ходатайства для рассмотрения в судебном заседании кассационной инстанции не имеется.

Руководствуясь пунктом 2) части 1 статьи 444 ГПК, судья

ПОСТАНОВИЛ:

В передаче ходатайства представителя третьего лица Жаксылыковой Л.С. – Рахметжанова М.С. о пересмотре определения Медеуского районного суда города Алматы от 02 августа 2019 года, определения судебной коллегии по гражданским делам Алматинского городского суда от 14 января 2020 года для рассмотрения в судебном заседании кассационной инстанции Верховного Суда Республики Казахстан отказать.

Копию постановления направить лицу, подавшему ходатайство.

Судья                    Т. Ибрашев

Копия верна
Судья                    Т. Ибрашев

# Exhibit 15

**ATTACHMENT # 15**

**Links to 2018 year publications**

1.
https://tengrinews.kz/kazakhstan_news/erkyin-amirhanov-chto-izvestno-o-zaderjannom-millionere-344907/

2.
https://ru.sputnik.kz/20180523/knb-biznesmen-amirhanov-arest-5730750.html

3.
https://www.zakon.kz/4994219-kak-vyvodili-i-na-chto-tratili-dengi.html

4.
https://kz.kursiv.media/2018-05-25/zaderzhannyy-oligarkh-erkyn-amirkhanov-proigral-svoe-delo-v-sude/

5.
https://nomad.su/?a=13-201911110007

6.
https://t.me/s/kompromatkz?q=Амирханов+

Kompromat.KZ

---

**Еркын Амирханов о своем деле, и о том что он осел, но не сел**

*"Потом пути разошлись, сейчас осел, занимаюсь бизнесом, но большую часть времени читаю и отдыхаю. После моего ареста изменил отношение не только к образу жизни, но и к людям."*

Известный своим поистине копперфильдовским исчезновением Еркын Амирханов и предшествовавшем тому арестом вкратце поделился к Kompromat.kz некоторыми фактами из прошлого. В частности, покинувший территорию Республики Казахстан Еркын Амирханов рассказал, что причиной ареста стало желание его бизнес-партнеров отжать его долю, а также нежелание некоторых нечестных на руку людей отдавать долги.

Подробности — https://bit.ly/2HjspNw

Компромат.KZ

**Еркын Амирханов о своей новой жизни и старых связях**

Еркын Амирханов уехал и живет тихо, не собираясь ни мстить, ни мирится. Его новая жизнь устраивает полностью. Уголовное дело было предлогом отжать бизнес.

1.3K 08:51

Kompromat.KZ
@kompromatkz

| 2.01K | 46 | 7 | 485 |
|---|---|---|---|
| Subscribers | Photos | Videos | Links |

Собрание компромата Казахстана. Здесь хранится все, что нелицеприятным образом характеризует бизнесменов, силовиков, политиков и государственных деятелей нашей страны.

Для связи: kompromatkz@protonmail.com

DOWNLOAD TELEGRAM

About Blog Apps Platform

следствия. Отменить принятые по ним незаконные решения и организовать проведение качественного досудебного расследования.

5.    Принять меры, направленные на признание незаконными Договоров передачи Клебанову А.Я. и Кану С.В., принадлежащих Амирханову Е.А. 31% акций АО «ЦАТЭК» и покупки им 23,8% «пустых» акций АО «Эксимбанк Казахстан».

6.    Принять меры, направленные на возмещение Амирханову Е.А. стоимости 31% акций, захваченных у него Клебановым А.Я. и Каном С.В. в результате их преступных действий в сговоре с руководством и сотрудниками КНБ РК.

О результатах рассмотрения настоящей жалобы сообщить мне в установленный законом срок.


**Приложение:** копии 2-х заявлений Амирханова Е.А. в ГП РК от 28.01.2019 года, ответ следователя Антикоррупционной службы за № 3-2-11/2530 от 26 апреля 2019 года, уведомление КФМ от 30.04.2019 года, ответ КФМ от 05.06.2019 года, ответ начальника Службы уголовного преследования ГП РК от 07.08.2019 года, письмо и.о. начальника СУ ДП г.Алматы от 26.11.2019 года, ответ прокурора Бостандыкского района г.Алматы от 24.02.2021 года, ответы председателя Ликвидационной комиссии АО «Эксимбанк Казахстан» от 24.02.2021 года и 28.06.2021 года,
Заключения специалистов специализированного почерковедческого и психологического исследований на 20-ти листах;


Адвокат:        Н. Нурканов

31.03.2022 11:39:55

**ТАЛОН**
(отрывной талон)

2200000000010019685
(уникальный номер талона)

Нурканов Назымбек Умрзакович
(фамилия, инициалы либо наименование заявителя)

(Количество листов) _6_

(Количество листов приложения) _38_

(Прочие приложения)____

**Принято**
(должность, фамилия и инициалы)
«__» ____ 20__
_____
(подпись)
Генеральная прокуратура РК   010000, Республика Казахстан,
город Нур-Султан, пр.Мәңгілік ел,14   8 (7172) 71-28-68, call-c
enter 115
(наименование субъекта, адрес и служебный телефон)

Решение по обращению будет принято в сроки,
установленные законодательными актами
Республики Казахстан
                Исполнитель: Байнеева Нәзира Әкімбеккызы

# Exhibit 2

Attachment # 2

**PROSECUTOR GENERAL'S OFFICE**
**REPUBLIC OF KAZAKHSTAN**
**010000, Nursultan city, Mangilik El Avenue, 14**
**Tel.: 8 (7172) 71-28-68, fax: (7172)30-18-65**
**www.prokuror.kz**

20.05.2022 # 2-011522-22-41224

**To the attorney Nurkanov N.U.**
Imanov str. 10, apt3, Nur-Sultan city

The Prosecutor General's Office has considered your complaint about the failure to take measures on the statements of Amirkhanov E. on the raider seizure of his property.

In 2018, the National Security Committee (NSC) conducted a pre-trial investigation against Amirkhanov E. and Nurtazin E. under Article 253 Part 6 of the Criminal Code (commercial bribery on a particularly large scale). The reason for its registration were the statements from TSoy E. and Khvan S.

In connection with the withdrawal of their statements by these persons, on August 3, 2018, the criminal case was terminated according to § 5 of Part 1 of Article 35 of the Criminal Procedural Code (CPC).

This decision was made in accordance with the requirements of Article 33 of the CPC and currently there are no grounds for its cancellation.

By the decision of the Medeu District Court of Almaty city dated January 29, 2019, the claim of Klebanov A., Kan S. and "CAPEC", JSC on the fulfillment by Amirkhanov E. of the terms of agreement on compensation of the damages dated July 23, 2018 was partially satisfied (in regards to the obligation of buying out the shares in the charter capitals of legal entities - borrowers of the Bank it's refused).

The judicial act has entered into legal force. The terms of its appeal and protest have expired.

At the same time, in accordance with Article 438 Part 6 of the CPC, the right is retained for Amirkhanov E. to appeal to the Chairman of the Supreme Court with a petition for revision of the court's decision.

On September 27, 2019 the Amirkhanov E.'s statement on embezzlement of the Bank's funds by Kan S., Klebanov A. and other persons was left without consideration and written off in the nomenclature case by the investigator of the Medeu district Department of Police.

This decision was made due to the absence of an act confirming the damage caused, as required by the Article 179 of the CPC.

At the same time, in order to properly assess the arguments about bringing the Bank to bankruptcy by transferring funds abroad, the materials were sent to the Department of State Finance of Almaty city on May 17, 2022 for conducting an appropriate audit.

Pre-trial investigations against Yerzhan Amirkhanov were not registered.

According to the statement of Amirkhanov E. about the illegal actions of officers of NSC and other persons, the anti-corruption agency conducted a pre-trial investigation, which was terminated on May 6, 2019 according to § 2 of Part 1 of Article 35 of the CPC (absence of corpus delicti).

In order to meet the requirements of article # 24 of the CPC, on May 17 this year, the Prosecutor General's Office canceled the decision on termination.

The criminal case has been sent to the Anti-Corruption Agency of the Republic of Kazakhstan to conduct an additional investigation and make a reasoned procedural decision. The course of investigation has been taken under control.

At the same time, be advised that in accordance with article 99 of the CPC, you have the right to apply to the officer conducting the pre-trial investigation with petitions on the procedural actions or making procedural decisions to establish the circumstances relevant to the case.

Deputy Chief
of Criminal Prosecution Office                                    B.Mazhrenov

ex. Bekmagambetov N.
ph. 71-26-04

*The document was signed by: Majrenov Birzhan Baltabaevich 20.05.2022 17:43:10*

GPO10926947KZ (2/4)

Note: The response to the appeal was sent using an electronic digital signature through the service "Registered hybrid dispatch with notification of receipt" within the framework of the Memorandum of Mutual Cooperation concluded between the Prosecutor General's Office of the Republic of Kazakhstan and "Kazpost" JSC.

In accordance with paragraph 12) of Article 1 of the Law of the Republic of Kazakhstan "On Electronic Document and Electronic Digital Signature" (hereinafter - the Law), an electronic document is a document in which information is presented in electronic digital form and certified by means of an electronic digital signature.

According to paragraph 1 of Article 7 of the Law, an electronic document that meets the requirements of the Law and is certified by an electronic digital signature of a person authorized to sign it is equivalent to a signed document in a paper form.

GPO10926947KZ (2/4)



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

| Almaty | Houston | | |
|--------|---------|--|--|
| Astana | London | 101 Park Avenue | **Telephone +1 212 696 6000** |
| Beijing | Mexico City | New York, New York 10178-0061 | **Facsimile +1 212 697 1559** |
| Bogotá | Milan | | www.curtis.com |
| Brussels | Muscat | | |
| Buenos Aires | Paris | | **Joseph D. Pizzurro** |
| Dubai | Riyadh | | Tel: +1 212 696 6196 |
| Frankfurt | Rome | | Fax: +1 917 368 8996 |
| Geneva | Washington, D.C. | | E-Mail: jpizzurro@curtis.com |

August 4, 2023

**VIA ECF**

Honorable LaShann DeArcy Hall
U.S. District Court Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:  *Yerkyn v. National Security Committee of the Republic of Kazakhstan, et al.,*
> **No. 23-cv-2399-LDH (E.D.N.Y.): Defendant National Security Committee of**
> **the Republic of Kazakhstan's Pre-Motion to Dismiss Letter**

Dear Judge DeArcy Hall:

Pursuant to Section III(A) of the Court's Individual Practices, we submit this letter on behalf of Defendant National Security Committee of the Republic of Kazakhstan ("NSC") to apprise the Court that NSC intends to file a motion to dismiss the above-referenced case for lack of jurisdiction under the Foreign Sovereign Immunities Act ("FSIA").

Plaintiff Amirkhanov Yerkyn is a citizen of Kazakhstan who allegedly owned an interest in a Kazakhstan corporation, Central-Asian Power-Energy Company JSC ("CAPEC"). *See* Dkt. No. 6 at ECF 8. Plaintiff alleges that Defendants Klebanov Alexandr Yakovlevich and Kan Sergey Vladimirovich (the "Individual Defendants") are fellow citizens of Kazakhstan who were Plaintiff's business partners at CAPEC. *Id.* at ECF 3-5. Plaintiff alleges that the Individual Defendants used their influence with the NSC to have Plaintiff arrested and prosecuted in Kazakhstan as part of a scheme to take control of Plaintiff's interests in CAPEC. *See id.* at ECF 5; Dkt. No. 6-1 at ECF 2. Plaintiff alleges that, during his detention in the criminal case, he entered into agreements with the Individual Defendants whereby he transferred his interests in CAPEC to the Individual Defendants in exchange for cash and an interest in a subsidiary of CAPEC, Eximbank Kazakhstan JSC ("Eximbank"). Dkt. No. 6-1 at ECF 4. In addition, Plaintiff alleges that he filed criminal complaints in Kazakhstan that Plaintiff claims were not adequately investigated or prosecuted by NSC and other authorities in Kazakhstan. Dkt. No. 6 at ECF 9-13.



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

NSC's Pre-Motion Letter, No. 23-cv-2399-LDH
August 4, 2023
Page 2

Plaintiff commenced this action on March 22, 2023 and filed the Amended Complaint on April 21, 2023. The Amended Complaint seeks an order declaring illegal both Plaintiff's agreements with the Individual Defendants and certain unspecified decisions of the Kazakhstan courts. Dkt. No. 6 at ECF 6. Plaintiff is also seeking damages against all three Defendants. *Id.* On June 26, 2023, Plaintiff filed an affidavit of service alleging that the original complaint was personally served on a NSC officer on June 5, 2023. Dkt. No. 11.[1]

NSC is a special state body of Kazakhstan directly subordinated and accountable to the President of Kazakhstan and indisputably qualifies as a "foreign state" as defined in the FSIA. *See* 28 U.S.C. § 1603. NSC is thus presumptively immune from the jurisdiction of U.S. courts. *See* 28 U.S.C. § 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). To overcome that presumptive immunity, Plaintiff must establish the substantive requirements of one of the FSIA's enumerated exceptions to jurisdiction immunity. *See* 28 U.S.C. §§ 1605-1607. Satisfying those substantive requirements is a prerequisite to the exercise of subject matter and personal jurisdiction in any action against a foreign state. 28 U.S.C. § 1330. Here, the Amended Complaint does not invoke any of the FSIA's exceptions to jurisdictional immunity. As explained below and in NSC's forthcoming motion, none apply. Therefore, the case must be dismissed for lack of subject matter and personal jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and (2).

Plaintiff cannot establish jurisdiction under the FSIA's commercial activity exception because NSC's alleged conduct is sovereign, not commercial, in nature. The FSIA defines "commercial activity" by reference to "the nature … [of the activity] rather than by reference to its purpose." 28 U.S.C. § 1603(d). And the Supreme Court has repeatedly held that, "the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce." *Nelson*, 507 U.S. at 360-61 (quoting *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992)) (emphasis in original). Here, Plaintiff alleges, at best, an abuse of police powers. But the Supreme Court held in *Nelson* that such abuses of police powers are quintessentially sovereign, not commercial, and therefore cannot support jurisdiction under the commercial activity exception. *See* 507 U.S. at 361-63; *see also Community Finance Grp., Inc. v. Republic of Kenya,* 663 F.3d 977, 981 (8th Cir. 2011) ("The decisions regarding whether or how to investigate an allegedly fraudulent commercial transaction between private parties, … enforce criminal laws, and seize property during criminal investigations are governmental rather than commercial activities.").[2]

The FSIA's tort exception, 28 U.S.C. § 1605(a)(5), is also inapplicable. Plaintiff's claims arise out of his alleged prosecution in Kazakhstan, and the tort exception explicitly states that it does not apply to "any claim arising out malicious prosecution, [or] abuse of process". 28 U.S.C. § 1605(a)(5)(B). The tort exception also states that it does not apply to claims based on the

---

[1] The FSIA provides foreign sovereign defendants, such as NSC, 60 days from the date of service to respond to a complaint. 28 U.S.C. § 1608(d). Thus, even ignoring Plaintiff's failure to comply with the FSIA's strict requirements for service of process, this letter is timely. *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048 (2019).

[2] While *Nelson* and its progeny alone foreclose the application of the FSIA's commercial activity exception, Plaintiff cannot establish any jurisdictionally relevant nexus to the United States as required Section 1605(a)(2).



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

NSC's Pre-Motion Letter, No. 23-cv-2399-LDH
August 4, 2023
Page 3

performance of a discretionary function, and a foreign state's decisions on whether and how to conduct a criminal investigation and prosecution fall squarely within that discretionary function exemption. *See* 28 U.S.C. § 1605(a)(5)(A). Thus, to the extent Plaintiff's claims are based on the allegedly inadequate investigation and prosecution of the criminal complaints he filed in Kazakhstan, such claims would be barred under the discretionary function exemption.[3]

The FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3), also does not apply. While the Amended Complaint repeatedly refers to a seizure of Plaintiff's property, Plaintiff alleges that his property was taken by his business partners, the Individual Defendants, not NSC. Because NSC did not expropriate any of Plaintiff's property, the expropriation exception does not apply.[4]

Accordingly, for at least the foregoing reasons, this case must be dismissed with prejudice for lack of subject matter jurisdiction under the FSIA.

While the undersigned counsel is currently unavailable for a pre-motion conference before August 14, 2023 due to scheduling conflicts, NSC is prepared to file its motion papers without a pre-motion conference. If the Court believes that such a conference would be beneficial, the undersigned counsel can be available after August 14, 2023. Plaintiff has been served with copies of this letter via mail and email to the addresses listed in the Amended Complaint.

NSC reserves all rights and defenses, including any rights, protections and immunities accorded under the FSIA.

Respectfully submitted,

*/s/ Joseph D. Pizzurro*
Joseph D. Pizzurro

---

[3] Furthermore, the tort exception applies only where "entire tort" – meaning both the wrongful conduct and the resulting injury – occurred in the United States. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 (1989). Here, all of the alleged conduct took place in Kazakhstan, and any alleged injury to Plaintiff would have been suffered in Kazakhstan.

[4] In any event, Plaintiff cannot establish the requisite jurisdiction nexus with the United States under Section 1605(a)(3). Because Plaintiff is a citizen of Kazakhstan, the so-called "domestic takings rule" also precludes the application of the expropriation exception in this case. *See Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 743 F. App'x 442, 447 (D.C. Cir. 2018).

# KIRSCH & NIEHAUS

PAUL R. NIEHAUS
950 THIRD AVENUE, SUITE 1900
NEW YORK, NY 10022
O: (646) 415-7530
D: (212) 631-0223
M: (917) 882-7178
PAUL.NIEHAUS@KIRSCHNIEHAUS.COM
KIRSCHNIEHAUS.COM

August 15, 2023

**VIA ECF**
The Honorable LaShann DeArcy Hall
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    *Yerkyn v. Yakovlevich, et al.*
> Case No.: 23-cv-2399-LDH (E.D.N.Y.)

Dear Judge DeArcy Hall:

We represent Defendants Alexander Yakovlevich Klebanov ("Mr. Klebanov") and Sergey Vladimirovich Kan ("Mr. Kan", together with Mr. Klebanov, the "Individual Defendants")[1] in the above-referenced action. We write pursuant to this Court's Individual Rule III(A)(i) to request a pre-motion conference in advance of an anticipated motion to dismiss for lack of jurisdiction. In short, the Individual Defendants have not been properly served, and this Court has neither personal jurisdiction over the Individual Defendants, nor subject matter jurisdiction over the claims alleged.

*Allegations*

Plaintiff Yerkyn Amirkhanov is a citizen of the Republic of Kazakhstan who allegedly owned an interest in a Kazakhstan corporation, Central-Asian Power-Energy Company JSC ("CAPEC"). *Am. Compl., Dkt. 6 p. 8.* The Individual Defendants are fellow citizens of Kazakhstan who Plaintiff accuses of conspiring with the National Security Committee of the Republic of Kazakhstan ("NSC") to deprive Plaintiff of his interests in CAPEC. *Am. Compl., Dkt. 6 p. 5.* Plaintiff claims that he was coerced into signing over his CAPEC interests while under criminal investigation in Kazakhstan. *Id.* Plaintiff asks this Court to (i) void and set aside the agreements he signed relinquishing his ownership interests in CAPEC; (ii) "cancel the illegal decisions taken by the courts of the Republic of Kazakhstan"; and (iii) award him and his wife a total of $165 million in damages. *Id. p. 6.* Plaintiff bases his claims on alleged "violations of [his] rights and freedoms as a citizen of the Republic of Kazakhstan" as "guaranteed to [him] by the Constitution of the Republic of Kazakhstan". *Id. p. 5.*

---

[1]    The complaint in this matter appears to identify individuals by their family surname first, their given name second, and middle name third. For purposes of this letter, we use the English convention of given name first, middle name second, and family surname last.

*Procedural Background*

      Plaintiff claims to have filed a similar case with the Supreme Court of the United States on June 12, 2020. *Am. Compl., Dkt. 6 p. 8.* The status of that case is not alleged. Plaintiff further claims to have filed numerous lawsuits and appeals in Kazakhstan, involving no fewer than seven Kazakhstani state authorities. *Id.* Those suits and appeals appear to be ongoing. *Id.*

      In this action, Plaintiff alleges subject matter jurisdiction based solely on diversity of citizenship. *Am. Compl., Dkt. 6 p. 3.* Plaintiff alleges no basis for federal question jurisdiction, and marked that section of the *pro se* complaint form as "N/A." *Id.* Plaintiff makes no allegations regarding the Court's personal jurisdiction over any Defendant. *Id.* Plaintiff identifies no specific cause of action, other than violation of the Kazakhstan Constitution. *Id. p. 5.* Finally, Plaintiff has filed Proofs of Service claiming to have served the Amended Complaint on Mr. Klebanov by sending it via DHL overnight courier to an address in France, and on Mr. Kan by e-mail and text message. *Proof of Service, Dkt. 16; Letter to Court, Dkt. 18.*

*Arguments for Dismissal*

      This matter is subject to dismissal pursuant to, at least, Fed. R. Civ. P. 12(b)(1), (2), (5), and (6). To wit, the Court lacks subject matter jurisdiction, the Court lacks personal jurisdiction over the Individual Defendants, the Amended Complaint was not properly served on the Individual Defendants, and the Amended Complaint fails to state a claim upon which this Court may grant relief.

*The Court Lacks Subject Matter Jurisdiction.* As noted, the sole alleged basis for subject matter jurisdiction is diversity of citizenship. *Am. Compl., Dkt 6 p. 3.* However, the Plaintiff clearly and on multiple occasions admits that he and each of the Individual Defendants are citizens of Kazakhstan. *Id. p. 4, 5, 8.* Second Circuit law is clear that federal courts do not have diversity jurisdiction over a suit by a non-citizen permanent resident and a foreign citizen. *Corporacion Venezolana de Formento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980)("the presence of aliens on two sides of a case destroys diversity jurisdiction"); *Tagger v. Strauss Group Ltd.*, 951 F.3d 124, 127 (2d Cir. 2019) (a foreign citizen who is a permanent resident of the United States is "an alien for purposes of diversity jurisdiction"). [2]

*The Court lacks Personal Jurisdiction.* The Amended Complaint states no express basis for the Court's jurisdiction over the Individual Defendants, and even the most charitable reading of the Amended Complaint does not reveal any basis. None of the alleged actions occurred in New

---

[2]     The original Civil Cover Sheet accompanying the Complaint marks Diversity as the sole basis for subject matter jurisdiction. *Civ. Cov. Sheet I, Dkt. 1 p. 8.* A second cover sheet, likely created by the *pro se* office, lists Federal Question as the basis for jurisdiction and lists 42 U.S.C. § 1983 as the relevant federal statute. *Civ. Cov. Sheet II, Dkt. 1-1.* However, nothing in the Amended Complaint identifies Section 1983 as the basis for jurisdiction, or alleges any acts that could conceivably fall within Section 1983, which requires an act taken under the "color of [law] of any State or Territory, or the District of Columbia." 42 U.S.C. § 1983.

York, and neither Individual Defendant is alleged to have systematic contacts in New York or specific contacts with New York related to Plaintiff's claims. *See Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 74 (2d Cir. 2018) (must be "causal relationship" between defendant's contacts with the United States and the episode in suit, and claim must "arise from the defendant's purposeful contacts with the forum."). Even had Plaintiff alleged that extra-forum acts caused harm within New York (and he has not), to satisfy due process a defendant's conduct must be "expressly aimed" at the forum in question. *Id., citing Calder v. Jones*, 465 U.S. 783, 789 (1984). Here, not only has Plaintiff not alleged that the Individual Defendants "expressly aimed" their conduct at New York, he specifically alleges that the purported harm (transfer of his stake in CAPEC) occurred in Kazakhstan. *Am. Compl. Dkt. 6 pp. 5, 8.*

*The Individual Defendants were not properly served.* On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5), the plaintiff bears the burden of showing that a defendant was properly served. *Khan v. Khan*, 360 Fed. App'x 202, 203 (2d Cir. 2010). Service on an individual in a foreign country may be effected by an internationally agreed means for service, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, or as prescribed by the foreign country's law for service in an action in that foreign country's courts of general jurisdiction. Fed. R. Civ. P. 4(f)(1), (f)(2)(A). Here, Plaintiff has not even claimed to have served the Individual Defendants through means authorized by the Hague Convention, i.e., through a "Central Authority" established by a foreign state pursuant to the Convention. Nor has Plaintiff established that service was properly effected pursuant to the laws of Kazakhstan, France, or any "otherwise-applicable" law. *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017).

*The Amended Complaint Fails to State a Claim upon which Relief can be Granted.* In addition to failing on jurisdictional grounds, the Amended Complaint fails to identify any specific cause of action (except unspecified purported violations of Kazakhstan law), and appears to be barred by collateral estoppel in light of the previous decisions of various Kazakhstani courts and agencies. *See Yukos Cap. S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289, 295 (S.D.N.Y. 2013) (collateral estoppel applies to judgments issues by courts of foreign countries). In the unlikely event that the Court determines that it has jurisdiction over this matter, the Individual Defendants are prepared to address this issue in depth.

      The Individual Defendants therefore respectfully request either a pre-motion conference with the Court, or permission to file a motion to dismiss on the grounds set forth herein.

                               Respectfully Submitted,
                               *s/ Paul R. Niehaus*
                               Paul R. Niehaus
                               *Attorney for Defendants Alexander Yakovlevich Klebanov and Sergey Vladimirovich Kan*

cc:  Yerkyn Amirkhanov
     *Plaintiff, pro se*
        *By ECF*

**[A-199]**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
:
AMIRKHANOV YERKYN,                                               :
                                         Plaintiff,             :
:
          - against -                                           :        **Case No. 23-cv-2399-LDH**
:
KLEBANOV ALEXANDR YAKOVLEVICH,                                  :
KAN SERGEY VLADIMIROVICH, AND                                  :
THE NATIONAL SECURITY COMMITTEE OF                             :
THE REPUBLIC OF KAZAKHSTAN.                                    :
:
                                         Defendants.            :
--------------------------------------------------------------- X

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2023, I caused a copy of the foregoing document to be

served on the *pro se* Plaintiff in accordance with Federal Rule of Civil Procedure 5(b)(C) and

Judge DeArcy Hall's Individual Practice II(A)(2) by email at yerkyn.amirkhanov@gmail.com

and via certified mail through certified mail at the address below:

Amirkhanov Yerkyn
815 Avenue U, Fl. 2
Brooklyn, NY 11223.

Plaintiff listed the mail and email addresses above in the Amended Complaint.

                                                  */s/ Joseph D. Pizzurro*
                                                  JOSEPH D. PIZZURRO

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
                                                                :
AMIRKHANOV YERKYN,                                              :
                                       Plaintiff,               :
                                                                :
                  - against -                                   :     **Case No. 23-cv-2399-LDH**
                                                                :
KLEBANOV ALEXANDR YAKOVLEVICH,                                  :
KAN SERGEY VLADIMIROVICH, AND                                   :
THE NATIONAL SECURITY COMMITTEE OF                              :
THE REPUBLIC OF KAZAKHSTAN.                                     :
                                                                :
                                       Defendants.              :
-------------------------------------------------------------- X

## AFFIDAVIT OF SERVICE

JEAN MARIE LAMBERT, deposes and states that I am over eighteen years of age and am not a party to this action.

On August 10, 2023, I served the Court's Order of August 10, 2023 upon Plaintiff, Amirkhanov Yerkyn by depositing a true copy of the Order and a cover letter, copies of which are attached to this Affidavit, in an official depository under the exclusive care and custody of the United States Postal Service via First Class Mail to the below address:

> Amirkhanov Yerkyn
> 815 Avenue U, Fl. 2
> Brooklyn, NY 11223.

Plaintiff listed this address in the Amended Complaint. The receipt for the mailing with tracking is also attached.

_JEAN MARIE LAMBERT_

Sworn to before me on this
August 11, 2023

_____
NOTARY PUBLIC

MARICELA ZAPIAN
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires Oct 19, 2025

Case 1:23-cv-02399-LDH-CLP    Document 19    Filed 08/11/23    Page 2 of 4 PageID #: 296



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

| | | | |
|---|---|---|---|
| Almaty | Houston | | **Telephone +1 212 696 6000** |
| Astana | London | 101 Park Avenue | **Facsimile +1 212 697 1559** |
| Beijing | Mexico City | New York, New York 10178-0061 | www.curtis.com |
| Bogotá | Milan | | |
| Brussels | Muscat | | **Jean Marie Lambert** |
| Buenos Aires | Paris | | Tel: +1 551 556 3614 |
| Dubai | Riyadh | | Fax: +1 917 368 8996 |
| Frankfurt | Rome | | E-Mail: jlambert@curtis.com |
| Geneva | Washington, D.C. | | |

August 10, 2023

<u>**VIA MAIL**</u>

Amirkhanov Yerkyn
815 Avenue U, Fl. 2
Brooklyn, NY 11223

> **Re:** ***Yerkyn v. National Security Committee of the Republic of Kazakhstan, et al.,***
> ***No. 23-cv-2399-LDH (E.D.N.Y.)***

Dear Mr. Yerkyn:

Pursuant to the Court's instructions please see the order attached.

Respectfully,

*/s/ Jean M Lambert*
Jean M. Lambert

# [A-202]

297

NPROSE,PROSENEF

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:23-cv-02399-LDH-CLP

Yerkyn v. Yakovlevich et al

Assigned to: Judge LaShann DeArcy Hall

Referred to: Magistrate Judge Cheryl L. Pollak

Cause: 42:1983 Civil Rights Act

Date Filed: 03/28/2023

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 08/10/2023 | | ORDER: On or before August 15, 2023, pro se Plaintiff is directed to file a letter either opposing both Defendant National Security Committee of Kazakhstan's request 15 for pre-motion conference or advising the Court that it does not intend to oppose the motion. Any letter response must not exceed three (3) pages and must include a summary of the arguments to be set forth in opposition and contain sufficient legal authority. Defense counsel is respectfully directed to mail a copy of this order to pro se Plaintiff and file proof of service via ECF. Ordered by Judge LaShann DeArcy Hall on 8/10/2023. (CG) (Entered: 08/10/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/10/2023 16:55:45 | | | |
| PACER Login: | cm000222 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:23-cv-02399-LDH-CLP Start date: 8/10/2023 End date: 8/10/2023 |
| Billable Pages: | 1 | Cost: | 0.10 |



**UNITED STATES POSTAL SERVICE.**

CARDISS COLLINS
433 W HARRISON ST FL LBBY
CHICAGO, IL 60699-9208
(800)275-8777

08/10/2023                              05:41 PM

---

| Product | Qty | Unit Price | Price |
|---------|-----|-----------|-------|
| PM Express 1-Day | 1 | | $28.75 |

Flat Rate Env
    Brooklyn, NY 11223
    Flat Rate
    Signature Requested
    Scheduled Delivery Date
        Fri 08/11/2023 06:00 PM
    Money Back Guarantee
    Tracking #:
        EI063214890US

| | | | |
|---|---|---|---|
| Insurance | | | $0.00 |

    Up to $100.00 included

| Return Receipt | | | $3.55 |

    Tracking #:
        9590 9402 7645 2122 2959 00

| Total | | | $32.30 |

---

| Grand Total: | | | $32.30 |

---

Credit Card Remit                       $32.30
    Card Name: VISA
    Account #: XXXXXXXXXXX3403
    Approval #: 04253D
    Transaction #: 503
    AID: A0000000031010        Chip
    AL: VISA CREDIT
    PIN: Not Required      CHASE VISA

---

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
https://www.usps.com/help/claims.htm
or call 1-800-222-1811

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                               :
AMIRKHANOV YERKYN,                                             :
                                    Plaintiff,                 :
                                                               :
                - against -                                    :   **Case No. 23-cv-2399-LDH**
                                                               :
KLEBANOV ALEXANDR YAKOVLEVICH,                                 :
KAN SERGEY VLADIMIROVICH, AND                                  :
THE NATIONAL SECURITY COMMITTEE OF                             :
THE REPUBLIC OF KAZAKHSTAN.                                    :
                                                               :
                                    Defendants.                :
------------------------------------------------------------- X

### AFFIDAVIT OF SERVICE

State of New York          )
Country of New York        )  ss.:

ANN JOLIE JOFFRION, deposes and states that I am over eighteen years of age, am not

a party to this action and am an employee at Curtis, Mallet-Prevost, Colt & Mosle, LLP.

On August 23, 2023, I served the Court's Scheduling Order of August 22, 2023 upon

Plaintiff, Amirkhanov Yerkyn by depositing a true copy of the Order and a cover letter, copies of

which are attached to this affidavit, in an official depository under the exclusive care and custody

of the United States Postal Service via First Class Mail to the below address:

    Amirkhanov Yerkyn
    815 Avenue U, Fl. 2
    Brooklyn, NY 11223.

Plaintiff listed the address in the Amended Complaint. The receipt for the mailing is also

attached.

                             ANN JOLIE JOFFRION

Sworn to before me on this
August 23, 2023

NOTARY PUBLIC

                         GRACE E. CONDRO
                 Notary Public, State of New York
                     No. 02CO6398589
                 Qualified in New York County
                Commission Expires 09/30/20_25_



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

| | | | |
|---|---|---|---|
| Almaty | Houston | | **Telephone +1 212 696 6000** |
| Astana | London | | **Facsimile +1 212 697 1559** |
| Beijing | Mexico City | 101 Park Avenue | www.curtis.com |
| Bogotá | Milan | New York, New York 10178-0061 | |
| Brussels | Muscat | | |
| Buenos Aires | Paris | | **Joseph D. Pizzurro** |
| Dubai | Riyadh | | Tel: +1 212 696 6196 |
| Frankfurt | Rome | | Fax: +1 917 368 8996 |
| Geneva | Washington, D.C. | | E-Mail: jpizzurro@curtis.com |

August 23, 2023

**VIA MAIL**

Amirkhanov Yerkyn
815 Avenue U, Fl. 2
Brooklyn, NY 11223

      **Re:**    *Yerkyn v. National Security Committee of the Republic of Kazakhstan, et al.,*
              **No. 23-cv-2399-LDH (E.D.N.Y.)**

Dear Mr. Yerkyn:

    Pursuant to the Court's instructions please see the order attached.

                    Respectfully,

                    */s/ Joseph D. Pizzurro*
                    Joseph D. Pizzurro

NPROSE,PROSENEF

## U.S. District Court
### Eastern District of New York (Brooklyn)
### CIVIL DOCKET FOR CASE #: 1:23-cv-02399-LDH-CLP

Yerkyn v. Yakovlevich et al                        Date Filed: 03/28/2023
Assigned to: Judge LaShann DeArcy Hall             Jury Demand: None
Referred to: Magistrate Judge Cheryl L. Pollak     Nature of Suit: 440 Civil Rights: Other
Cause: 42:1983 Civil Rights Act                    Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 08/22/2023 | | SCHEDULING ORDER: Defendants' requests for a pre-motion conference 15 and 21 are DENIED. The parties shall brief Defendants' motion to dismiss in accordance with this Court's Individual Rules and Practices. Defendants shall serve Plaintiff with an omnibus motion to dismiss on or before September 22, 2023. Plaintiff shall serve Defendants with any opposition papers on or before October 20, 2023. Defendants shall serve any reply on or before November 17, 2023. The opening brief and opposition brief shall each be no more than 30 pages, and the reply shall be no more than 15 pages. As a courtesy, unless objected to by the parties, the Court asks that the parties file the motion only once it is fully briefed. Defendants shall provide the Court with a courtesy copy of the filed, stamped, fully briefed motion, within two business days of filing. Memoranda of law and courtesy copies shall comply with this Court's Individual Rules and Practices. Defense counsel is respectfully directed to mail a copy of this order to pro se Plaintiff and file proof of service via ECF. Ordered by Judge LaShann DeArcy Hall on 8/22/2023. (CG) (Entered: 08/22/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/23/2023 10:15:56 | | |
| **PACER Login:** cm000222 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 1:23-cv-02399-LDH-CLP Start date: 8/22/2023 End date: 8/22/2023 |
| **Billable Pages:** 1 | **Cost:** | 0.10 |





UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                                                 :
AMIRKHANOV YERKYN,                                               :
                                       Plaintiff,                :
                                                                 :
               - against -                                       :     **Case No. 23-cv-2399-LDH**
                                                                 :
KLEBANOV ALEXANDR YAKOVLEVICH,                                   :
KAN SERGEY VLADIMIROVICH, AND                                    :
THE NATIONAL SECURITY COMMITTEE OF                               :
THE REPUBLIC OF KAZAKHSTAN.                                      :
                                                                 :
                                       Defendants.               :
---------------------------------------------------------------- X

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY,** that on September 21, 2023 I caused copies of the cover letter,

the Notice of Defendants' Omnibus Motion to Dismiss, the Memorandum of Law in Support of

Defendants' Omnibus Motion to Dismiss with Exhibit A, and the unpublished cases cited in the

Memorandum, to be served on Plaintiff via USPS Certified First-Class Mail with return receipt

and via FedEx overnight shipping to:

     Amirkhanov Yerkyn
     815 Avenue U, Fl. 2
     Brooklyn, NY 11223.

I also caused copies of the same documents to be served via email to Plaintiff at

yerkyn.amirkhanov@gmail.com.

Dated:  New York, New York
       September 22, 2023

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By: *s/ Kevin A. Meehan* _____
    Kevin A. Meehan
    101 Park Avenue
    New York, New York 10178
    (212) 696-6000

    *Attorneys for Defendant National Security*
    *Committee of the Republic of Kazakhstan*

**ORIGINAL**



**Yerkyn Amirkhanov**
815 Avenue U, Floor 2
Brooklyn, NY 11223
Tel (347) 216-9564
E-mail: Yerkyn.Amirkhanov@gmail.com

Hon. LaShann DeArcy Hall
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

*Dated: October 17th, 2023*

Re:     *Yerkyn v. Yakovlevich et. al., Docket #: 23-CV-02399(LDH) (CLP)*

Dear Judge DeArcy Hall,

I am the Plaintiff in *Yerkyn v. Yakovlevich et. al., Docket #: 23-CV-02399 (LDH) (CLP).* I am writing to request a 60-day extension of time because my response to the motion to dismiss is due on October 20th, 2023, and I need to find an attorney to help me respond. I have asked the attorneys on the other side for the defendants for an extension, but they have said No.

The Defendants hired big law firms to represent them, and they made very long arguments in the memorandum of law motion to dismiss. I am not sure of the law and arguments made in it and it require the benefit of a lawyer to formulate a response properly.

I respectfully request 60 days because of the complexity of my case. This is my first request for an extension of time. The motion they wrote is very complicated, and I do not want to lose my rights because I do not know the law or have missed something.

There are no other due dates in the case. Please grant the extension of time up to December 20th, 2023 for me to find a lawyer that can help me in stopping the motion to dismiss.

Thank you for your consideration.

Sincerely,

Yerkyn Amirkhanov

1

Cc: **Defendants via Counsel**

Paul R. Niehaus
Kirsch & Niehaus PLLC
950 3rd Avenue
Suite 1900
New York, NY 10022
212-631-0223
Fax: 212-624-0223
Email: paul.niehaus@kirschniehaus.com
*Counsel for Defendants Klebanov Alexandr Yakovlevich
and Kan Sergey Vladimirovich*

Joseph Pizzurro
Kevin Meehan
Curtis, Mallet-Prevost, Colt & Mosle, LLP
101 Park Avenue
Ste 35 Floor
New York, NY 10178
212-696-6196
Email: jpizzurro@curtis.com
Email: kmeehan@curtis.com
*Counsel for
National Security Committee of Kazakhstan*

Case 1:23-cv-02399-LDH-CLP     Document 28     Filed 11/17/23     Page 1 of 2 PageID #: 324

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                                   :
AMIRKHANOV YERKYN,                                                 :
                                    Plaintiff,                     :
                                                                   :
              - against -                                          :   **Case No. 23-cv-2399-LDH**
                                                                   :
KLEBANOV ALEXANDR YAKOVLEVICH,                                     :
KAN SERGEY VLADIMIROVICH, AND                                      :
THE NATIONAL SECURITY COMMITTEE OF                                 :
THE REPUBLIC OF KAZAKHSTAN.                                        :
                                                                   :
                                    Defendants.                    :
                                                                   :
------------------------------------------------------------------ X

**NOTICE OF DEFENDANTS' OMNIBUS MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

**PLEASE TAKE NOTICE**, that upon the accompanying Memorandum of Law in Support

of Defendants' Omnibus Motion to Dismiss dated September 22, 2023, and all other prior

pleadings and proceedings herein, Defendant National Security Committee of the Republic of

Kazakhstan ("NSC") and Defendants Klebanov Alexandr Yakovlevich, Kan Sergey

Vladimirovich (the "Individual Defendants"), by their attorneys, herby move this Court before the

Honorable LaShann DeArcy Hall of the United States District Court for the Eastern District of

New York at 225 Cadman Plaza East, Courtroom 4H North, Brooklyn, New York, 11201 for an

Order dismissing Defendant NSC for lack of subject matter and personal jurisdiction pursuant to

Federal Rules of Civil Procedure 12(b)(1)-(2) and the Foreign Sovereign Immunities Act,

28 U.S.C. § 1602 *et seq.*, and dismissing the Individual Defendants pursuant to Federal Rules of

Civil Procedure 12(b)(1), (2), and (5) for lack of subject matter and personal jurisdiction and for

improper service of process, and for such relief as this Court deems just and proper.

Served: New York, New York
        September 22, 2023

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By:  *s/ Joseph D. Pizzurro*
Joseph D. Pizzurro
101 Park Avenue
New York, New York 10178
Tel.:  (212) 696-6000
Fax:  (212) 697-1559
Email: jpizzurro@curtis.com

*Attorneys for Defendant National Security
Committee of the Republic of Kazakhstan*

-and-

KIRSCH & NIEHAUS, PLLC

By: *s/ Paul R. Niehaus*
Paul R. Niehaus
950 Third Avenue, Suite 1900
New York, New York  10022
Tel.: (212) 631-0223
Fax: (212) 624-0223
Email: paul.niehaus@kirschniehaus.com

*Attorneys for Defendants Klebanov
Alexandr Yakovlevich and Kan Sergey
Vladimirovich*



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

| | | | |
|---|---|---|---|
| Almaty | Houston | | **Telephone +1 212 696 6000** |
| Astana | London | | **Facsimile +1 212 697 1559** |
| Beijing | Mexico City | 101 Park Avenue | www.curtis.com |
| Bogotá | Milan | New York, New York 10178-0061 | |
| Brussels | Muscat | | |
| Buenos Aires | Paris | | **Joseph D. Pizzurro** |
| Dubai | Riyadh | | Tel: +1 212 696 6196 |
| Frankfurt | Rome | | Fax: +1 917 368 8996 |
| Geneva | Washington, D.C. | | E-Mail: jpizzurro@curtis.com |

November 17, 2023

**VIA ECF**

Honorable LaShann DeArcy Hall
U.S. District Court Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:    *Yerkyn v. National Security Committee of the Republic of Kazakhstan, et al.,*
> **No. 23-cv-2399-LDH (E.D.N.Y.): Letter Regarding Defendants' Omnibus
> Motion to Dismiss**

Dear Judge DeArcy Hall:

We write on behalf of Defendant National Security Committee of the Republic of Kazakhstan ("NSC"), and Defendants Klebanov Alexandr Yakovlevich and Kan Sergey Vladimirovich (the "Individual Defendants") approve and join in this letter. Because Plaintiff has failed to serve Defendants with an opposition to the Omnibus Motion to Dismiss, the Defendants hereby submit this letter as their reply in support of that Motion in accordance with the Court's scheduling order, entered August 22, 2023.

On August 4, 2023, NSC filed a pre-motion letter pursuant to Section III(A) of the Court's Individual Practices setting forth the grounds upon which NSC intended to seek dismiss of this case – including lack of subject matter and personal jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). Dkt. No. 15. On August 15, 2023, the Individual Defendants filed a pre-motion letter setting forth the grounds upon which they intended to seek dismissal of this case. Dkt. No. 21. On August 16, 2023, Plaintiff Amirkhanov Yerkyn filed a response to the Defendants' pre-motion letters that attempted to answer Defendants' arguments for dismissal. Dkt. 22.

On August 22, 2023, the Court entered a scheduling order directing: (1) Defendants to serve an Omnibus Motion to Dismiss on Plaintiff by September 22, 2023; (2) Plaintiff to serve any opposition papers on Defendants by October 20, 2023; and (3) Defendants to serve any reply by

Case 1:23-cv-02399-LDH-CLP    Document 30    Filed 11/17/23    Page 2 of 2 PageID #:
393



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

NSC's Pre-Motion Letter, No. 23-cv-2399-LDH
November 17, 2023
Page 2

November 17, 2023. The undersigned served a copy of the Court's scheduling order on Plaintiff on August 23, 2023. Dkt. No. 23.

In accordance with the Court's scheduling order, Defendants served the Omnibus Motion to Dismiss on Plaintiff on September 21, 2023. Dkt. No. 24.

On October 16, 2023, Plaintiff contacted Defendants' counsel and requested a sixty-day extension of the deadline to respond to the Omnibus Motion in order to allow Plaintiff to obtain counsel. Defendants informed Plaintiff that they did not consent to the extension on the grounds that Plaintiff had already had ample time to retain counsel. Copies of the parties' correspondence is appended as Exhibit A hereto.

On October 18, 2023, Plaintiff filed a letter-motion for an extension of his deadline to respond to the Omnibus Motion. Dkt. No. 25. On October 20, 2023, the Individual Defendants filed an opposition to Plaintiff's requested extension. Dkt. No. 26. The Court has not granted Plaintiff's request for an extension. Plaintiff has not served any opposition to the Omnibus Motion, and no counsel has appeared in this case on behalf of Plaintiff. Thus, NSC hereby respectfully requests that Defendants' unopposed Omnibus Motion be granted and this case be dismissed with prejudice for lack of jurisdiction under the FSIA, and the Individual Defendants request that the Motion be granted for lack of personal and subject matter jurisdiction as to them.

NSC reserves all rights and defenses, including any rights, protections and immunities accorded under the FSIA.

Respectfully submitted,

_/s/ Joseph D. Pizzurro_
Joseph D. Pizzurro

cc:    Plaintiff Amirkhanov Yerkyn
       (via email and First Class Mail)

Case 1:23-cv-02399-LDH-CLP    Document 30-1    Filed 11/17/23    Page 1 of 5 PageID #: 394

# EXHIBIT A

**Meehan, Kevin A.**

| | |
|---|---|
| **From:** | Yerkyn Amirkhanov <yerkyn.amirkhanov@gmail.com> |
| **Sent:** | Monday, October 16, 2023 12:00 PM |
| **To:** | paul.niehaus@kirschniehaus.com; Pizzurro, Joseph D.; Meehan, Kevin A. |
| **Cc:** | Amirkhan Yerkyn |
| **Subject:** | Re: Yerkyn v. Yakovlevich et. al., Docket #: 23-Civ-02399(LDH) CLP) |
| **Attachments:** | ExtensionTime_101623.pdf; ATT00001.htm |

**\*\*\*EXTERNAL EMAIL\*\*\***
Dear Counsel,

I am seeking a 60 day extension of time to retain counsel and respond to your Omnibus Motion to dismiss.

Please see attached my proposed letter to Judge La Shann DeArcy Hall.
Please let me know as soon as possible where you consent, and if you do not please let me know the reason so I can address it in the letter.

Yerkyn Amirkhanov
815 Avenue U, Floor 2
Brooklyn, NY 11223
Tel (347) 216-9564
E-mail: Yerkyn.Amirkhanov@gmail.com

Hon. LaShann DeArcy Hall
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

*Dated: October 16th, 2023*

**Re:**   *Yerkyn v. Yakovlevich et. al., Docket #: 23-Civ-02399(LDH) CLP)*

Dear Judge DeArcy Hall,

I am the Plaintiff in the above-referenced action and write to request a 60-day extension of time to respond to the Defendants' Motion to Dismiss.  I am writing according to Your Honor's Individual Rule I-E.  My response is due on October 20th, 2023 and I ask the Court to give my additional time to find an attorney to help me respond to the Motion to Dismiss.

The Defendants lengthy Memorandum of Law and the arguments made in it require the benefit of counsel to properly formulate a response. I request 60 days because of the complexity of this case. This is my first and only request for an extension of time. I contacted my adversary regarding the request and they *(consent?)* to the extension of time.

The request for the extension of time does not affect any other scheduled dates. I therefore respectfully request an extension of time up to December 20th, 2023 to respond to the Defendants Motion to Dismiss.

I thank the Court for consideration of this request.

Respectfully,

_____
Yerkyn Amirkhanov

1

**Meehan, Kevin A.**

| | |
|---|---|
| **From:** | Paul Niehaus <paul.niehaus@kirschniehaus.com> |
| **Sent:** | Tuesday, October 17, 2023 11:28 AM |
| **To:** | Pizzurro, Joseph D.; Yerkyn Amirkhanov |
| **Cc:** | Meehan, Kevin A.; Lambert, Jean |
| **Subject:** | RE: Yerkyn v. Yakovlevich et. al., Docket #: 23-Civ-02399(LDH) CLP |

***EXTERNAL EMAIL***
Mr. Amirkhanov,

The individual defendants likewise do not consent to your request for an adjournment, on the same grounds set forth in Mr. Pizzurro's e-mail.

Regards,
Paul Niehaus

# KIRSCH & NIEHAUS
_____

**PAUL R. NIEHAUS**
950 THIRD AVENUE, SUITE 1900
NEW YORK, NY 10022
O: (212) 631-0223
M: (917) 882-7178
PAUL.NIEHAUS@KIRSCHNIEHAUS.COM
KIRSCHNIEHAUS.COM

**From:** Pizzurro, Joseph D.
**Sent:** Tuesday, October 17, 2023 10:43 AM
**To:** Yerkyn Amirkhanov
**Cc:** Paul Niehaus ; Meehan, Kevin A. ; Lambert, Jean
**Subject:** Re: Yerkyn v. Yakovlevich et. al., Docket #: 23-Civ-02399(LDH) CLP

Dear Mr. Amirkhanov,

Our client, The National SecurityCommittee of the Republic of Kazakhstan, cannot consent to your request for an extension of time for you to respond to the motion to dismiss the complaint. While the ostensible reason for the request is to give you time to retain counsel, we note that it has already been over six and a half months since you filed your complaint, more than two months since you received our pre-motion letter laying out the basis for the motion and almost two months since the court set the briefing schedule for the motion. Therefor it is quite clear that you have had ample opportunity to retain counsel but you have waited until the last possible moment to ask for an extension. Furthermore the length of time you have requested makes it apparent that you still have not retained counsel. We believe it is time for this matter to be resolved.
Best Regards

Sent from my iPad

On Oct 16, 2023, at 12:01 PM, Yerkyn Amirkhanov <yerkyn.amirkhanov@gmail.com> wrote:

**[A-220]**

***EXTERNAL EMAIL***
Dear Counsel,

I am seeking a 60 day extension of time to retain counsel and respond to your Omnibus Motion to dismiss.

Please see attached my proposed letter to Judge La Shann DeArcy Hall.
Please let me know as soon as possible where you consent, and if you do not please let me know the reason so I can address it in the letter.

Thank you,
and
Best regards,

Yerkyn Amirkhanov
Mob.: +1 347 216 9564
E-mail: Yerkyn.Amirkhanov@gmail.com<mailto:Yerkyn.Amirkhanov@gmail.com>

---

This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system. Your privacy is very important to our firm.

Curtis, Mallet-Prevost, Colt & Mosle LLP (101 Park Avenue, New York, NY 10178)

---

## [A-221]

Case 1:23-cv-02399-LDH-CLP    Document 31    Filed 11/17/23    Page 1 of 2 PageID #: 399

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                                                     :
AMIRKHANOV YERKYN,                                                   :
                                        Plaintiff,                   :
                                                                     :
              - against -                                            :      __Case No. 23-cv-2399-LDH__
                                                                     :
KLEBANOV ALEXANDR YAKOVLEVICH,                                       :
KAN SERGEY VLADIMIROVICH, AND                                        :
THE NATIONAL SECURITY COMMITTEE OF                                   :
THE REPUBLIC OF KAZAKHSTAN.                                          :
                                                                     :
                                        Defendants.                  :
-------------------------------------------------------------------- X

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY,** that on November 17, 2023 I caused copies of the Defendants'

Reply Letter in support of their Omnibus Motion to Dismiss and the exhibit thereto to be served

on Plaintiff via USPS Certified First-Class Mail to:

     Amirkhanov Yerkyn
     815 Avenue U, Fl. 2
     Brooklyn, NY 11223.

I also caused copies of the same documents to be served via email to Plaintiff at

yerkyn.amirkhanov@gmail.com.

Dated:  New York, New York
        November 17, 2023

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By: *s/ Kevin A. Meehan*
    Kevin A. Meehan
    101 Park Avenue
    New York, New York 10178
    (212) 696-6000

    *Attorneys for Defendant National Security*
    *Committee of the Republic of Kazakhstan*

# SHPIGEL LAW P.C.

| Address | 1599 East 15th street,<br>Fifth Floor<br>Brooklyn, NY 11230 |
| Phone | 212-390-1913<br>646-355-0242 |

Dated: November 17th, 2023

Hon. LaShann DeArcy Hall
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Yerkin v. Yakovlevich et. al., Docket #: 23-Civ-02399(LDH)( CLP)*

Dear Judge LaShann DeArcy Hall,

The undersigned has been recently retained by the Plaintiff in the above-referenced matter. We are writing to request a pre-motion conference for leave to amend the complaint pursuant to Fed. R. Civ. Pro. 15 and for leave to conduct discovery limited to the issue of personal jurisdiction. We were only retained this Friday afternoon, and therefore will file a substantive pre-motion letter pursuant to Your Honor's Individual Rule III.A(1) & (3) in the week of November 20th, 2023.

We thank the Court for Consideration of this Request.

Respectfully Submitted,

*/s/ Irina Shpigel*
Irina Shpigel

# SHPIGEL LAW P.C.

| Address | 1599 East 15th street, Fifth Floor Brooklyn, NY 11230 |
| Phone | 212-390-1913 646-355-0242 |

Dated: November 24th, 2023

Hon. LaShann DeArcy Hall
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: _Yerkyn v. Yakovlevich, et al., Docket #: 23-Civ-02399 (LDH) (CLP)_

Dear Judge LeShann DeArcy Hall,

The undersigned was retained by the Plaintiff on November 17th, 2023. We are writing in furtherance of the letter filed on November 17th, 2023 (ECF 33), pursuant to Your Honor's Individual Rule III.A (1) & (3) for leave to file an Amended Complaint and for leave to conduct discovery limited to the issue of personal jurisdiction.

Pursuant to Rule 15 (B) "a party may amend its pleading once as a matter of course within… 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier". Here, the defendants served a Motion to Dismiss pursuant to Rule 12(b) on September 22, 2023, Plaintiff's time to file an amended pleading was October 13th, 2023. The Plaintiff's filed a letter motion seeking an extension of time to respond to the motion five (5) days after the deadline on October 18th, 2023.

Since the Plaintiffs filed this action pro se we respectfully ask the court to grant the Plaintiff leeway to allow the amendment of the complaint pursuant to Fed. R. Civ. Pro 15(b). Federal Courts often grant pro se litigants' extra leeway in meeting the procedural rules governing litigation". _See Enron Oil Corp. v. Diakuhara_, 10 F.3d 90 (2d Cir. 1993). The procedural rules are a mechanism in maintaining the "orderly and efficient administration of justice". _See_ 10 Charles A. Wright et al., Federal Practice and Procedure § 2693, at 477-79 (2d ed. 1983). However, the Court must maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard _See Merker v. Rice,_ 649 F.2d 171, 174 (2d Cir. 1981); _See also Gill v. Stolow_, 240 F.2d 669, 670 (2d Cir. 1957) ("general principles cannot justify denial of a party's fair day in court except upon a serious showing of willful default").

Moreover, if the Court declines to allow the Plaintiff to Amend the Complaint pursuant to Rule 15(a)(1)(B), the Court should allow an Amendment under Rule 15(a)(2), which provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Allowing Plaintiffs to file the Amended Complaint would serve justice and promote judicial efficiency. Further, there would be no substantial or undue prejudice, bad faith, undue delay, or futility.

Through the Amended Complaint, Plaintiff is seeking to add corporate Defendants, including Lodestar Corporation and others, and to assert breach of contract causes of action against Defendants and corporate entities controlled by Defendants. Plaintiff believes that, along with the original Defendants, these new Defendants have substantial contacts within the United States, and are liable to the Plaintiff for breach of contract.

There is no undue delay, bad faith, or dilatory motive by Plaintiff. Plaintiff seeks to file the Amended Complaint and it is supported by facts and information uncovered by Plaintiffs' counsel. Moreover, there will be no substantial or undue prejudice to the original Defendants, this case is only in the beginning stages and no discovery has even began. Likewise, there will be no futility resulting from Plaintiff's Amended Complaint. The new Complaint will allege a breach of contract and is based on diversity of citizenship pursuant to 28 USC §1332.

 Pursuant to our initial investigation and based on public sources Klebanov and Kan engage in significant business dealings globally, including within the United States. Additionally, Massimov, formerly the head of a security agency of Kazakhstan and currently on the terrorist list and incarcerated for treason, faces new charges related to bribery and corruption. Massimov also has substantial connections to the United States and will be named as a Defendant in connection with the breach of contract causes of action. Furthermore, Klebanov and Kan's adult children attend school in the United States and continue to live here, and the Defendants are known to frequently visit the U.S and have assets here.

The Plaintiff has engaged a private investigator to search for assets, considering the known tendency of oligarchs to utilize LLCs and offshore accounts for identity concealment; we

2

respectfully request that the Court grant us leave to file a motion to conduct jurisdictional discovery limited to the issue of the Court's personal jurisdiction over the Defendants.

Whenever a defendant raises lack of personal jurisdiction as an affirmative defense and the plaintiff demonstrates that its jurisdictional allegations can be supplemented through discovery, the law in this Circuit is well settled that Plaintiff has the right to conduct jurisdictional discovery. *See Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 757(S.D.N.Y. 2004), *citing* APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003). A plaintiff should be given "ample opportunity to secure and present evidence relevant to the existence of jurisdiction" through jurisdictional discovery. *Id.*

Here, although we have conducted research via public sources, we seek jurisdictional discovery related to the location where the Defendants and the proposed corporate Defendant Lodestar and its subsidiaries conduct business. We respectfully request that Plaintiff is allowed to conduct jurisdictional discovery prior to amending the complaint in order to screen out any meritless claims and to avoid the necessity of amending the complaint after jurisdictional discovery.

We thank the Court for consideration of this request.


                                        Respectfully Submitted,



                                        *Irina Shpigel*
                                        Irina Shpigel




    Cc: *all counsel via ECF*




                                        3

**1:23-cv-02399-LDH-CLP** Yerkyn v. Yakovlevich et al
LaShann DeArcy Hall, presiding
Cheryl L. Pollak, referral
**Date filed:** 03/28/2023
**Date terminated:** 09/30/2024
**Date of last filing:** 10/29/2024

## Docket Information and Related Docket Entries
## Case 1:23-cv-02399-LDH-CLP Document 99999

| | |
|---|---|
| **Filed:** | 12/01/2023 |
| **Entered:** | 12/01/2023 |
| **Entered By:** | Catherine Greenidge, |
| **Event Name(s):** | Scheduling Order |

**Full Docket Text:**
ORDER: Plaintiff is directed to file his motion to amend the complaint on or before December 29, 2023. Plaintiff is further directed to provide both a red-lined and a clean version of the proposed amended complaint as an attachment to the motion. Defendants response, if any, shall be filed by January 26, 2024. Plaintiff shall file any reply on or before February 9, 2024. The opening brief and opposition brief shall each be no more than 25 pages, and the reply shall be no more than 10 pages. As a courtesy, unless objected to by the parties, the Court asks that the parties file the motion only once it is fully briefed. Plaintiff shall provide the Court with a courtesy copy of the filed, stamped, fully briefed motion, within two business days of filing. Memoranda of law and courtesy copies shall comply with this Court's Individual Rules and Practices. Ordered by Judge LaShann DeArcy Hall on 12/1/2023. (CG)

### No Related Docket Entries

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/30/2024 08:11:27 | | | |
| **PACER Login:** | IrinaShpigel | **Client Code:** | |
| **Description:** | Related Transactions | **Search Criteria:** | 1:23-cv-02399-LDH-CLP |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**[A-228]**

**1:23-cv-02399-LDH-CLP** Yerkyn v. Yakovlevich et al
LaShann DeArcy Hall, presiding
Cheryl L. Pollak, referral
**Date filed:** 03/28/2023
**Date terminated:** 09/30/2024
**Date of last filing:** 10/29/2024

## Docket Information and Related Docket Entries
## Case 1:23-cv-02399-LDH-CLP Document 99999

**Filed:** 12/28/2023
**Entered:** 12/28/2023
**Entered By:** Michael Walker,
**Event Name(s):** Order on Motion for Extension of Time to File
**Full Docket Text:**
ORDER: Plaintiff's motion 37 to extend the deadline to file his motion to amend his complaint is GRANTED.
Plaintiff is directed to file his motion to amend the complaint on or before January 12, 2024. Plaintiff is further
directed to provide both a red-lined and a clean version of the proposed amended complaint as an attachment to
the motion. Defendants' opposition, if any, shall be filed on or before February 9, 2024. Plaintiff shall file any
reply on or before February 23, 2024. The opening brief and opposition brief shall each be no more than 25
pages, and the reply shall be no more than 10 pages. As a courtesy, unless objected to by the parties, the Court
asks that the parties file the motion only once it is fully briefed. Plaintiff shall provide the Court with a courtesy
copy of the filed, stamped, fully briefed motion, within two business days of filing. Memoranda of law and
courtesy copies shall comply with this Court's Individual Rules and Practices. Ordered by Judge LaShann
DeArcy Hall on 12/28/2023. (MFW)

---

### All Related Docket Entries

**Filed:** 12/26/2023
**Entered:** 12/26/2023
**Entered By:** Irina Shpigel,
**Event Name(s):** Motion for Extension of Time to File Document
**Full Docket Text for Document 37:**
Letter MOTION for Extension of Time to File *Motion to Amend Complaint* by Amirkhanov Yerkyn.
(Attachments: # 1 Proposed Order) (Shpigel, Irina)

---

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/30/2024 08:12:57 | | |
| **PACER Login:** | IrinaShpigel | **Client Code:** | |
| **Description:** | Related Transactions | **Search Criteria:** | 1:23-cv-02399-LDH-CLP |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# SHPIGEL LAW P.C.

| Address | 1599 East 15th street,<br>Fifth Floor<br>Brooklyn, NY 11230 |
| Phone | 212-390-1913<br>646-355-0242 |

---

Hon. LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East, 4H North
Brooklyn, New York 11201

Dated: February 21st, 2023

**Re:**     *Yerkin v. Klebanov et. al., Docket #: 23-Civ-02399(LDH)(CLP)*

Dear Judge DeArcy Hall,

The undersigned represents Plaintiff, Yerkin Amirkhanov. We respectfully submit this letter pursuant to Part I-E of the Court's Individual Practices to request that the deadline for Plaintiff's Reply be extended two weeks from Friday February 23rd, 2024 to Friday March 8th, 2024.

We previously requested a modification of the briefing schedule on 12/01/2023, which was kindly amended on 12/28/23. Pursuant to the briefing schedule, Plaintiff timely served the Motion on January 12th, 2024, and the Defendants' Opposition was served on February 9th, 2024. The Reply is due on February 23rd, 2024. Plaintiff respectfully requests an extension of time until March 8th, 2024 to file the Reply. This extension is necessary to ensure a thorough and comprehensive response to the extensive oppositions filed by both the NSC and the individual defendants. Moreover, the complexity of the Defendants' response necessitates two Replies to each of the Defendants.

This is our first request for an extension of time to file the Reply; and it will not impact any other scheduled court dates. The undersigned sought opposing counsel's consent by email on the morning of February 20th, 2023, however no response was provided.

We thank the Court for consideration of this request.

Respectfully Submitted.,

*/s/ Irina Shpigel*
Irina Shpigel

Cc: **All counsel of record via ECF**

## [A-230]

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

YERKYN AMIRKHANOV,

                          Plaintiff,

        v.

                                                    Docket #: 23-CV-2399(LDH)(CLP)

KLEBANOV ALEXANDR YAKOVLEVICH, KAN
SERGEY KAN VLADIMIROVICH, AND THE NATIONAL
SECURITY COMMITTEE OF THE REPUBLIC OF
KAZAKHSTAN,

                          Defendants.

---

### NOTICE OF MOTION

**PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law and Declaration of Irina Shpigel, executed on January 12, 2024, Plaintiff Yerkyn Amirkhanov ("Plaintiff"), by and through his undersigned attorneys, will move this Court, at the Courthouse located at 40 Foley Square, New York, New York, at a date and time to be determined by this Court, for an order pursuant to Federal Rule of Civil of Procedure ("FRCP") 15(a)(2) for leave to amend the complaint.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff is amenable to a return date convenient for the Court.

Case 1:23-cv-02399-LDH-CLP      Document 43      Filed 02/28/24      Page 2 of 2 PageID #: 424

Dated: New York, New York
January 12, 2024

*/s/Irina Shpigel*
Irina Shpigel

Shpigel Law, P.C.
*Attorneys for Plaintiff*
1599 East 15th Street, 5th Fl
Brooklyn, New York 11229
E-mail: ishpigel@iselaw.com
T 212-390-1913
F 646-355-0242